UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFRASTRUCTURE SERVICES LUXEMBOURG S.A.R.L. and ENERGIA TERMOSOLAR B.V.,<br><br>　　　　Petitioners<br><br>　　v.<br><br>THE KINGDOM OF SPAIN,<br><br>　　　　Respondent. | Civil Action No. 18-1753 (EGS) |

### MEMORANDUM OPINION AND ORDER

Petitioners Infrastructure Services Luxembourg S.A.R.L and Energia Termosolar B.V. bring this suit to enforce an arbitral award assessed against the Kingdom of Spain. That arbitral award, however, is subject to annulment proceedings before the International Centre for Settlement of Investment Disputes ("ICSID"). The ICSID has provisionally stayed the award and that stay will remain in force unless the annulment committee elects to discontinue it. *See* ICSID Convention art. 51(4). Spain has moved to stay these proceedings; and has also moved to dismiss this case. Petitioners have opposed the motion, and Spain has filed a reply. Upon consideration of Spain's motion to dismiss or, in the alternative, motion for stay, the response and reply thereto, the applicable law, and the entire record, the Court will **GRANT** Spain's motion for stay.

**I. Background**

The underlying controversy that led to the filing of this case stems from a cross-border investment in Spain's solar energy sector. In 2007, Spain established a special regime for investments in the field of photovoltaic energy that guaranteed certain producers fixed prices that would lead to a "reasonable return on their investments." *See* Arbitral Award, ECF No. 1-1 ¶¶ 91–95. Beginning in 2011, petitioners invested approximately €139.5 million in concentrated solar power projects in Spain. *Id.* ¶¶ 109-34, 359. Petitioners made these investments in reliance on financial incentives and inducements enacted by Spain to promote the development of renewable energy, including concentrated solar power projects, and to provide "legal certainty" to investors. *Id.* ¶¶ 91-108, 542.

A few years after the investments were made, however, Spain adopted new decrees to remedy unsustainable growth of a tariff deficit resulting from Spain's special regime. *See id.* ¶¶ 133–52. Petitioners claim, *inter alia*, that these new decrees were energy sector reforms that violated their right to fair and equitable treatment under Article 10(1) of the Energy Charter

Treaty ("ECT") to which the EU, Spain, Luxembourg and the Netherlands[1] are parties. *Id.* ¶¶ 359-60.

Petitioners invoked the dispute settlement provisions in Article 26 of the ECT, which provides that where "[d]isputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former" cannot be "settled amicably," an investor may submit such a dispute to arbitration pursuant to certain enumerated arbitral rules. These include arbitration before ICSID, an institution established pursuant to the Convention on Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 ("ICSID Convention") (D.E. 1-2). *See* ECT art. 26(2)-(4).

Petitioners submitted their dispute with Spain to ICSID arbitration. *See generally* Arbitral Award, ECF No. 1-1. Spain objected to the tribunal's jurisdiction on the ground that its offer to arbitrate in Article 26 of the ECT does not apply to investors from other EU Member States and is limited to investors from states that are not members of the EU. *See id.* ¶¶ 163-181. The arbitral panel ultimately found Spain liable for breach of the ECT by "failing to accord fair and equitable

---

[1] Petitioners Infrastructure Services Luxembourg S.A.R.L and Energia Termosolar B.V. are, respectively, Luxembourg- and Netherlands-based companies.

3

treatment to [petitioners'] investments." *Id.* ¶ 748(b). The tribunal initially awarded damages of €112 million but later reduced the award to €101 million. *See* Rectification Decision, ECF No 24-1 ¶ 40(b).

Seeking enforcement of the arbitral award, petitioners filed the petition before this Court. *See* Petition to Enforce ICSID Arbitration ("Petition"), ECF No. 1. Spain, for its part, has petitioned the ICSID for annulment of the arbitration award. *See* Notice of Application for Annulment ("Annulment Notice"), ECF No. 35-1 at 2.[2] The ICSID has provisionally stayed the award; and the stay will remain in force unless the annulment committee elects for it to be discontinued. *Id.; see also* ICSID Convention art. 51(4). Spain has also moved to dismiss the petition in this case, and in the alternative, to stay this case pending the outcome of the annulment proceedings. Resp't's Mot. to Dismiss, ECF No. 18-1.

## II. Legal Standard

Enforcement of ICSID awards in the United States is governed by 22 U.S.C. § 1650a, which implements the treaty obligations of the United States, as a contracting party to the ICSID Convention, to ensure that U.S. courts treat an ICSID

---

[2] When citing to electronic filings throughout this Memorandum Opinion the Court cites to the ECF header page number not the page number of the filed document.

award "as if it were a final judgment" of a state court. ICSID Convention, art. 54(1). Section 1650a provides, in relevant part, that "[t]he pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). The statute specifies that the FAA--which provides limited grounds for vacating or refusing confirmation of an ordinary arbitration award, 9 U.S.C. §§ 9-10--"shall not apply to enforcement of awards rendered pursuant to the convention," 22 U.S.C. § 1650a(a).

### III. Analysis

Spain has moved to stay this case pending the ICSID decision on Spain's petition to annul the arbitration award. Resp't's Mot. to Dismiss, ECF No. 18-1 at 44-48. A court's authority to stay proceedings stems from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). In considering a motion to stay, courts must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of*

*Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012)(quoting *Landis*, 299 U.S. at 254–55)(internal quotation marks omitted). The party seeking the stay has the burden of showing that the stay is needed and warranted. *Landis*, 299 U.S. at 255. In deciding whether to grant a stay, a court weighs "the benefits of a stay, the hardship to the movant of denying a stay, and any injury to the nonmovant from issuing a stay." *Hulley Enterprises, Ltd. v. Russian Fed'n,* 211 F. Supp. 3d 269, 277–80 (D.D.C. 2016).[3]

The Court agrees that Spain has met its burden for the issuance of a stay in this case. First, the benefits of the stay are readily apparent. Spain is entitled to request the award annulment within 120 days of the rectification decision, which it received on January 29, 2019. *See* ICSID Convention arts. 49, 52; *see also* Rectification Decision, ECF No. 24-1 at 1. The ICSID has received the request for annulment and provisionally stayed the arbitral award. *See* Notice of Annulment, ECF No. 35-

---

[3] Neither party challenges the Court's jurisdiction to enter a stay. However the Court notes that a stay of a petition to enforce an arbitral award is a non-merits issue that a court may consider prior to resolving the question of jurisdiction. *See Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) ("[C]ertain non-merits, nonjurisdictional issues may be addressed preliminarily because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'")(citation omitted); *see also Hulley*, 211 F. Supp. 3d at 277–80 (D.D.C. 2016)(deciding whether to stay petition to enforce arbitral decision prior to deciding the merits of jurisdictional arguments").

6

1. In light of the fact that the very award that the petitioners seek this court to enforce may be annulled by the ICSID, the Court finds that the most efficient and fairest course is to stay proceedings pending the "resolution of independent proceedings which bear upon" the resolution of this case. *See IBT/HERE Emple. Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005)(staying case when arbitrator's decision "may moot the defendants' motion to dismiss, or may resolved the issues raised in [the] lawsuit in their entirety."). Additionally, the stay conserves resources of both parties. Any decision on the merits by the Court would be subject to an appeal "with the associated delay and expense," and a stay also avoids the possibility of conflicting results between this Court's determination of enforcement and the ICSID's determination to annul the award. *See InterDigital Comms., Inc. v. Huawei Invest. & Holding Co.*, 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016)(staying case during the pendency of foreign proceedings); *see also Naegele v. Albers*, 355 F. Supp. 2d 129 (D.D.C. 2005)(stating that "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests")(citation omitted).

The hardship to Spain in denying the stay also militates in favor of granting a stay in this case. If the arbitral award is

enforced prematurely, and is later annulled, there will undoubtedly be litigation to recover any Spanish state assets that are seized during the pendency of the petition for annulment. For that reason, where "there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion" of annulment proceedings. *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 317 (2d Cir. 1998).

With respect to the injury to the nonmovant, petitioners argue that any delay in the entry of judgment would prejudice them because of other pending ICSID proceedings; and proceedings in the district courts to enforce arbitral awards previously granted by the ICSID. Pet'rs' Opp'n, ECF No. 19 at 58. However, there is no such injury in this specific case because the award has been provisionally stayed by the ICSID, and the stay may be extended until the end of the annulment proceedings. *See* Annulment Notice, ECF No. 35-1 at 2; *see also* ICSID Convention art. 51(4). Therefore, even if the Court were to enforce the arbitral award, petitioners will not have access to the award during this provisional stay. Additionally, there is nothing to suggest that Spain has initiated the annulment proceedings for the purpose of delaying the enforcement of the arbitral award.

8

Given the pendency of proceedings to annul the award the Court is being asked to enforce, and the provisional stay entered by the ICSID, the Court is persuaded, in an exercise of its judgment, after weighing the competing interests cited by the Supreme Court, that this petition should be stayed. *See*, *Landis,* 299 U.S. 248, 254-55. The Court of Appeals for the District of Columbia has warned against issuing immoderate and indefinite stays and therefore the Court will further order that the circumstances justifying this stay should be reviewed with regularity to avoid an unduly lengthy or indefinite stay. *See Belize*, 668 F.3d at 732-33 (stating a stay is immoderate and thus unlawful unless framed in a manner which ensures its force will be spent within reasonable limits). To that end, the Court will order the parties to provide regular status updates informing the Court of the status of the pending ICSID proceedings, including whether the ICSID has vacated the provisional stay.

**IV. Conclusion and Order**

For the foregoing reasons the Court **GRANTS** Spain's motion to stay. Accordingly, it is

**ORDERED** that this case is hereby **STAYED**; and it is

**FURTHER ORDERED** that the parties shall notify the Court within two business days of any ruling or development in the

annulment proceedings, including any change to the status of the provisional stay; and it is

**FURTHER ORDERED** that the parties shall file a joint status report on the status of the annulment proceedings, including the status of the provisional stay, by no later than September 30, 2019, if no notice on the annulment proceedings have been filed by that date.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            August 28, 2019**