IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., <br><br> *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br> *Respondent*. | **Civil Action No. 1:18-cv-01753-EGS** |

## Joint Status Report

Pursuant to the Court's minute order dated June 30, 2020, Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. and Respondent the Kingdom of Spain ("Spain") submit this joint status report recommending further proceedings.

**I.      Status of this Case and the ICSID Proceedings Related to this Case**

On July 27, 2018, Petitioners initiated this action seeking confirmation of a €112 million arbitral award, plus interest and costs (the "Award"), issued against Spain in proceedings before the International Centre for Settlement of Investment Disputes ("ICSID") pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention," ECF No. 1-2).  *See* ECF No. 1, at 9.

On December 28, 2018, Spain moved to dismiss the petition, or, in the alternative, to stay the action pending the outcome of further proceedings before ICSID, including a request by Spain for "rectification" of the Award, which was then pending before the ICSID tribunal that issued the Award (the "Tribunal").  *See* ECF No. 18.  On January 29, 2019, the Tribunal issued its rectification decision, which amended Petitioners' compensatory damages from €112 million

to €101 million.  ECF No. 24, at 2.  The parties completed briefing on Spain's motion to dismiss or stay on February 19, 2019.  *See* ECF No. 25.

On March 22, 2019, the European Commission (the "Commission") moved for leave to file an *amicus* brief in support of Spain.  *See* ECF No. 31.  In response, Petitioners moved for leave to file a supplemental brief, stating that they did not oppose the Commission's participation in this dispute as *amicus curiae*, so long as Petitioners were provided an opportunity to respond. ECF No. 32, at 1.  Spain filed a response to Petitioners' motion, noting that it did not oppose Petitioners' request to respond to the Commission's *amicus* brief so long as Spain had an opportunity to reply to Petitioners' supplemental brief.  ECF No. 33, at 1.  The parties completed briefing on Petitioners' motion on April 17, 2019.  *See* ECF No. 34.

On May 23, 2019, Spain submitted to ICSID an application for annulment of the Award pursuant to Article 52 of the ICSID Convention.  ECF No. 35, at 1.  That Article provides that "either party may request annulment of the award" on the grounds that the "Tribunal was not properly constituted"; the "Tribunal has manifestly exceeded its powers"; there "was corruption on the part of a member of the Tribunal"; there "has been serious departure from a fundamental rule of procedure"; or "the award has failed to state the reasons on which it is based."  ICSID Convention, art. 52(1).  Spain's application contained a request for stay of the enforcement of the Award pursuant to Article 52(5) of the ICSID Convention.  ECF No. 35-1, at 2.  Pursuant to the same Article, the filing of Spain's stay request triggered an automatic provisional stay of enforcement until the annulment committee could be constituted and could decide whether a stay should remain in place.

On August 28, 2019, the Court granted Spain's motion for a stay.  ECF No. 36, at 7. That same day, the Court denied by minute order the Commission's and Petitioners' motions for

leave as moot.  The Court did not decide Spain's motion to dismiss, which remains pending before this Court.

Since the Court's entry of a stay and in response to the Court's orders, the parties have continually apprised the Court of the ICSID proceedings related to this case.  On August 30, 2019, the parties notified the Court that, among other things, the *ad hoc* annulment committee (the "Committee"), which would consider Spain's Application for Annulment, had been constituted on August 19, 2019, and that the Committee would extend the provisional stay, which is automatically triggered when an application for annulment is filed, until the Committee reached a final decision on whether to continue the stay pending the completion of the annulment proceedings.  ECF No. 37, ¶¶ 2-3.

On September 30, 2019, the parties notified the Court that they had held their first session before the Committee, in which the parties made oral arguments in support of their completed briefing on whether the Committee should continue the provisional stay, and that the Committee set out a briefing schedule for the full annulment proceedings, including scheduling a hearing on the annulment in November 2020.  ECF No. 38, ¶¶ 1-2.

On October 22, 2019, the parties filed a Joint Status Report, notifying the Court that the Committee considering Spain's annulment application declined to continue the provisional stay of enforcement of the award, and attaching as Exhibit 1 the Committee's decision.  ECF No. 39.

On February 26, 2020, this Court issued a minute order directing the parties to file a joint status report no later than 14 days after a final ruling in the annulment proceedings.  The Court issued an additional minute order on June 30, 2020 directing the parties to file the instant Joint Status Report no later than July 14, 2020 recommending further proceedings.

The parties will complete briefing in September 2020, and a hearing on the annulment is scheduled for November 2020.

## II.     Parties' Position on Further Proceedings Before This Court

Counsel for the parties have discussed the subject of further proceedings before this Court, and the parties' positions are as follows.

### A.     Petitioners' Position

Petitioners' position is that now that a stay of enforcement is no longer in place pursuant to the ICSID Convention, proceedings before this Court should resume and this Court should proceed to resolve Spain's motion to dismiss and enter judgment in favor of Petitioners. To that end, Petitioners respectfully request that this Court lift the current stay of proceeding in this Court and enter an order specifying that within seven (7) days after the stay is lifted: (1) the parties shall file concurrent briefs of up to ten (10) pages addressing any intervening developments relevant to the resolution of Spain's motion to dismiss; and (2) the European Commission shall file a notice indicating whether it intends to renew its motion for leave to file an *amicus* brief in support of Spain. Should the Commission renew its motion, Petitioners will also renew their motion for leave to file a supplemental brief in response to the Commission's brief. This Court should then decide the motions for leave if they are renewed. Upon completion of any resulting supplemental briefing, the Court should decide Spain's motion to dismiss. And if that motion to dismiss is denied, the Court should immediately grant the Petition to Confirm Arbitral Award and enter judgment for Petitioners.

Maintaining a stay in this Court despite the absence of any stay of enforcement pursuant to the ICSID Convention would undermine the streamlined enforcement procedures that are critical to the ICSID Convention's comprehensive scheme. ICSID awards are "final" by design. ICSID Convention, art. 54(1). Unless "stayed pursuant to . . . th[e] Convention," the parties

must "abide by and comply with [their] terms." *Id.*, art. 53(1) (emphasis added). That is the regime Spain agreed to when it signed the Convention. There is no reason not to hold Spain to that promise. Spain is not "in financial distress or on the brink of insolvency," and Spain "willingly chose to undertake international obligations that may conflict with each other, [and] it cannot thereafter complain of prejudice once these conflicts arise." ECF No. 39, Ex. 1, ¶¶ 73, 76. Unlike the New York Convention, which allows courts to decide whether to stay enforcement pending proceedings to "se[t] aside" an award, N.Y. Convention, art. VI, the ICSID Convention unequivocally assigns that task to the annulment committee, ICSID Convention, art. 52(5). As a result, "if the [annulment] committee . . . declines to continue or to grant a stay," as it has done here, "the award is fully binding and enforceable." Schreuer, *The ICSID Convention: A Commentary*, art. 52 ¶ 581 (2nd ed., CUP: 2009). "[A]nnulment proceedings that are not accompanied by a stay of enforcement" are "neither a justification for non-compliance with the award nor a basis for domestic courts to withhold recognition or refuse enforcement." *Id.*

Indeed, the Federal Court of Australia recently reached the same conclusion on Petitioners' application for enforcement in that court. *Eiser Infrastructure Ltd v Spain* [2020] FCA 157 ¶ 5 (Feb. 24, 2020) (Austl.). The Australia court initially stayed the proceedings because of ICSID's automatic provisional stay, but once the annulment committee discontinued that stay, the court granted Petitioners' unopposed request to lift it and proceeded to evaluate Spain's claim that it was immune for enforcement. *Id.* ¶¶ 3, 34, 37-38. The court found that Spain was not immune, and that Petitioners were entitled to enforce the award as if it was a judgment of that court, even though the annulment committee had not reached a decision on the annulment. *Id.* ¶¶ 209, 211.

Even in the more permissive context of the New York Convention, the D.C. Circuit has made clear that a "carefully structured scheme for the enforcement of foreign arbitral awards" leaves no room for an open-ended stay. *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 733 (D.C. Cir. 2012). In *Belize*, the panel issued a writ of mandamus to compel a district court to proceed with enforcement of an arbitral award under the New York Convention, holding that the court exceeded its authority by staying enforcement outside of the narrow circumstances provided by the Convention and its implementing legislation. *Id.* at 731-33. Emphasizing federal courts' "'virtually unflagging obligation'" "'to exercise the jurisdiction given them,'" the panel explained that the Federal Arbitration Act alone "defined the district court's task": to "confirm the Final Award absent a finding that an enumerated exception to enforcement specified in the New York Convention applied." *Id.* at 733. Section 1650a's mandatory language—providing without any exception that an ICSID award "shall be enforced," 22 U.S.C. § 1650a(a)—makes this Court's duty to proceed with enforcement of an ICSID award even clearer than the obligation enforced by mandamus in *Belize*.

Further, there is no urgent need to maintain the stay. As the party seeking a stay, Spain has the burden "'make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to [someone] else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Spain cannot meet this heavy burden because at this stage, Petitioners have merely asked this Court to convert the Award into a judgment. If the Court enters that relief, enforcement is automatically stayed for 30 days, *see* Fed. R. Civ. P. 62(a), and Petitioners cannot levy upon Spain's assets until this Court enters an order upon determining that a "reasonable period of time has elapsed" without Spain paying the judgment. 28 U.S.C. § 1610(c). Spain can obtain a further automatic stay pending appeal under

Rule 62(b) by posting a bond for the amount of the judgment, ensuring payment if annulment is denied and the judgment is upheld on appeal.  And even if Spain refuses to post a bond, and Petitioners are successful in seizing one or more of Spain's U.S. assets, Spain still at that time can seek a stay of any turnover or sale of the asset.  The extremely speculative scenario—*i.e.*, that Spain will prevail on an annulment application but that before then, Petitioners will nevertheless somehow manage successfully to complete execution on Spain's assets and then refuse to return them to Spain—is no reason to delay entry of judgment in accordance with 22 U.S.C. § 1650a.

The Court's reasoning for the stay—that there would be no harm to Petitioners because enforcement was provisionally stayed—no longer applies.  ECF No. 36, at 8-9.  In fact, any delay in entering judgment would deeply prejudice and continue to harm Petitioners.  Spain is in ongoing breach of its obligation under the ICSID Convention to pay the Award, and further delay denies Petitioners the money to which it is entitled.  Spain is currently the respondent in over thirty ICSID arbitration proceedings, *see* ICSID, Cases, Advanced Search, http://tiny.cc/trxn2y, plus several more non-ICSID arbitration proceedings, *see* UNCTAD, Investment Dispute Settlement Navigator, http://tiny.cc/ra5fsz.  Several of those claimants are now seeking enforcement of their awards in U.S. courts.  It is black-letter law that "the first in time is the first in right," and thus "a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds."  *United States v. City of New Britain*, 347 U.S. 81, 85 (1954).  Any delay in the entry of judgment jeopardizes Petitioners' ability to obtain priority liens on Spain's assets that are available for execution, thereby warranting lifting of the stay.

B.     Spain's Position

Petitioners do not provide any compelling reason to reverse the order issued by the Court on August 28, 2019 staying this action pending the outcome of the ICSID annulment proceedings, which are proceeding apace. The sole basis for Petitioner's request is the October 21, 2019 decision of the ICSID Annulment Committee not to continue the ICSID stay of enforcement. But Petitioner's own actions belie the prejudice they now assert and the urgency they feign. The Parties submitted a joint status report on October 22, 2019 informing the Court of the ICSID Committee's decision. Petitioners made no request for relief at that time and have done nothing during the nine months since.

Even if Petitioners' request were timely, and it is not, Petitioners have not shown that the decision of the ICSID Committee is sufficient reason to lift the stay because the core of the Court's reasoning for the stay continues to apply in the present circumstances. The Court should reject this opportunistic attempt to change the status quo.

It is still the "most efficient and fairest course" to stay proceedings in this Court pending the resolution of the annulment proceedings before ICSID concerning the same award that Petitioners seek to enforce in this action. Court's Order (Aug. 28, 2019), p. 7 (granting stay). It remains true that "the stay conserves resources of both parties." *Id*. As the Court explained, "[a]ny decision on the merits by the Court would be subject to an appeal 'with the associated delay and expense.'" *Id.* (citing *InterDigital Comms., Inc. v. Huawei Invest. & Holding Co.,* 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016)(staying case during the pendency of foreign proceedings);*see also Naegele v. Albers,* 355 F. Supp. 2d 129 (D.D.C. 2005)(stating that "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests")(citation omitted)).

If the stay of this action were not continued, the possibility of conflicting results between this Court's determination of enforcement and ICSID's determination whether to annul the award would remain. *Id.* And any concern of an unduly long stay of this case has vanished with the efficient progress of the ICSID annulment proceedings. The hearing on the merits of Spain's annulment petition is scheduled for November 2-4, 2020, and a decision from ICSID will follow. ECF No. 38, ¶¶ 1-2.

The basis for Court's determination regarding hardship to Spain is also unchanged. It remains true that Spain would face a significant hardship if the award is enforced and later annulled. Spain would be forced to devote resources to recover any Spanish state assets that are seized during the pendency of the petition for annulment. Court's Order (Aug. 28, 2019), p. 7 (*citing See Europcar Italia, S.P.A. v. Maiellano Tours,* 156 F.3d 310, 317 (2d Cir. 1998) (When "there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion" of annulment proceedings.)). The recent ICSID decision annulling an award against Spain during the pendency of enforcement proceedings before this Court demonstrates that this is serious risk in the present case. *See Eiser Infrastructure Limited and Energia Solar Luxembourg Sarl v Kingdom of Spain,* 1:18-cv-01686-CKK, Minute Order, Jun. 29, 2020.  Lacking the prudence Spain urges on this Court, in *Eiser* the Federal Court of Australia imprudently lifted its stay of enforcement proceedings in Australia merely because the ICSID annulment committee had decided not to continue ICSID's provisional stay.  *Eiser Infrastructure Ltd v Spain* [2020] FCA 157 ¶¶ 3, 5, 34, 37-38. (Feb. 24, 2020) (Austl.).  The Australian court continued proceedings, found that Spain was not immune, and that Petitioners were entitled to enforce the award.  *Id.* ¶¶ 209, 211.  Four months later, the ICSID Tribunal annulled the *Eiser* award, rendering the Australian proceedings after the lifting

of the stay a waste of time for all involved and needlessly exposing Spain to attachment proceedings.

In contrast, Petitioners have not shown that they now face more hardship in light of the ICSID Committee's decision lifting the stay. Petitioners make the same argument as before -- that competing award-creditors could obtain priority liens over Petitioners if the stay is not lifted. But this professed concern remains unfounded. Indeed, Petitioners' request does not aim to avoid prejudice, but to gain advantage over other parties seeking to enforce awards against Spain in the United States. All of these parties have petitions pending before this Court and none of them is likely to reach a decision on enforcement any time soon. In *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain,* No, 1:18-cv-2254-JEB, a stay was issued, and this Court did not lift the stay of enforcement proceedings after the ICSID annulment committee lifted the stay of enforcement of the award. *See Masdar*, Order, Sept. 18, 2019 (ECF No. 29) and Exhibit 1 to Joint Status Report, May 26, 2020 (ECF No. 38). In *Novenergia II – Energy & Env't (SCA) v. Kingdom of Spain,* No. 1:18-cv-1148-TSC, and Foresight *Luxembourg Solar 1 S.A.R.L. et al v. Kingdom of Spain*, Case No. 1:20-cv-00925-TSC, the petitioners are subject to orders by the Svea Court of Appeal in Sweden that suspended the arbitral awards indefinitely.  Svea Hovrätt [Svea Court of Appeal] 2018-10-23 T 4658-18 (Swed.) (Renzler Decl. Ex. 2); *Foresight*, Declaration of James Hope, Apr. 17, 2019 (ECF No. 12). The Svea Court is adjudicating Spain's requests for annulment in *Novenergia* and *Foresight*. In light of the Swedish court's suspension of the award, this Court in *Novenergia* stayed the enforcement proceedings. *Novenergia*, Order, Jan. 27,2020 (ECF No. 43). Spain's motion for stay in *Foresight*, based on substantially the same reasons, is currently pending before the same judge of this Court.  *Foresight,* Opinion & Order, Mar. 30, 2020 (ECF No. 64). In *Eiser Infrastructure Limited and Energia Solar Luxembourg*

*Sarl v Kingdom of Spain,* 1:18-cv-01686-CKK, the ICSID annulment committee recently annulled the underlying arbitral award in its entirety. *Eiser*, Minute Order, Jun. 29, 2020. Not only is there no risk of enforcement in that case, but ICSID's decision there underscores the risks of premature enforcement here.

In sum, with all of the other awards having been annulled or stayed by ICSID, a foreign court, and/or this Court, there is no risk of other award-creditors running ahead of the Petitioners.

For these reasons, Spain respectfully requests that the Court reject the Petitioners' belated request that the Court reverse its prior decision and lift the stay of these proceedings. There was no reason to do this in October 2019, and there is no merit to Petitioners' current effort to seize on a nine-month old development that they viewed as a non-event when it occurred.

Dated: July 14, 2020                                    Respectfully submitted,

<u>/s/ Stuart F. Delery</u>                                         <u>/s/ Derek C. Smith</u>

Stuart F. Delery (D.C. Bar #449890)                 Derek C. Smith (D.C. Bar No. 468674)
sdelery@gibsondunn.com                              dcsmith@foleyhoag.com
Matthew McGill (D.C. Bar #481430)                   Lawrence H. Martin (D.C. Bar No. 476639)
mmcgill@gibsondunn.com                              lhm@foleyhoag.com
Matthew S. Rozen (D.C. Bar #1023209)                Nicholas M. Renzler (D.C. Bar No. 983359)
mrozen@gibsondunn.com                               nrenzler@foleyhoag.com
Ankita Ritwik (D.C. Bar #1024801)                   Diana Tsutieva (D.C. Bar No. 1007818)
aritwik@gibsondunn.com                              dtsutieva@foleyhoag.com
GIBSON, DUNN & CRUTCHER LLP                          FOLEY HOAG LLP
1050 Connecticut Avenue, N.W.                        1717 K Street, NW
Washington, DC  20036                                Washington, DC 20006-5350
Telephone:  202.955.8500                             Tel: 202-223-1200
Facsimile:  202.467.0539                             Fax: 202-785-6687

*Attorneys for Infrastructure Services*              Andrew Z. Schwartz (D.D.C. Bar No.
*Luxembourg S.A. R.L. and Energia*                     MA0017)
*Termosolar B.V.*                                    aschwartz@foleyhoag.com
                                                     Andrew B. Loewenstein (D.D.C. Bar No.
                                                       MA0018)
                                                     aloewenstein@foleyhoag.com
                                                     FOLEY HOAG LLP
                                                     Seaport West
                                                     155 Seaport Boulevard
                                                     Boston, MA 02210-2600
                                                     Tel: 617-832-1000
                                                     Fax: 617-832-7000

                                                     *Attorneys for the Kingdom of Spain*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 14, 2020, I caused the foregoing Joint Status Report to be filed with the Clerk for the U.S. District Court for the District of Columbia through the ECF system.  Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

/s/ Stuart F. Delery
Stuart F. Delery
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
sdelery@gibsondunn.com