IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., <br><br> *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br> *Respondent*. | Civil Action No. 1:18-cv-01753-EGS |

**Opposition to the European Commission's Motion for Leave to File *Amicus* Brief**

Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. (collectively, "Petitioners") respectfully oppose the motion by the European Commission (the "Commission") for leave to file an *amicus* brief on behalf of the European Union ("EU") in support of the Kingdom of Spain ("Spain"). *See* ECF No. 50. Petitioners have been waiting more than three years for Spain to pay the arbitral award at issue in this case (the "Award," ECF No. 1-1). Although the Award is governed by the ICSID Convention and its implementing statute, 22 U.S.C. § 1650a, which provide for streamlined enforcement of arbitration awards without allowing any defense to enforcement, ECF No. 19 ("MTD Opp."), at 8-10, this enforcement action has been pending since July 2018, *see* ECF No. 1, with little progress towards enforcement. Spain's motion to dismiss has been fully briefed since February 2019, but the action was stayed while Spain pursued a petition to annul the Award. Now that this petition has been denied, *see* ECF No. 46-1 ("Annulment Dec."), *all parties* agree that this Court should proceed to decide Spain's fully briefed motion to dismiss, *see* ECF Nos. 46, 47.

The Commission now proposes to further delay resolution of this litigation and distract this Court from its straightforward obligation to enforce the Award by filing an *amicus* brief devoted

1

mainly to issues that the ICSID Convention and Section 1650a make irrelevant to enforcement. But the EU has already spoken—through its highest court, the Court of Justice of the European Union ("CJEU")—on the main issue of EU law that the Commission proposes to address in its *amicus* brief. And there is no reason for this Court to consider that issue because—as Petitioners have argued throughout this litigation, *e.g.*, MTD Opp. 22—EU law has no bearing on the validity of the Award or this Court's duty and power to enforce it under *U.S. law*. The Commission has no special competence on the U.S. law—and, if necessary, international law—issues that will decide the outcome of this case. Further, Spain is a member of the Commission, and both are completely aligned on these issues, so it would be unfair and unnecessary to allow the Commission to come in at this late stage and try to cure the defects in Spain's arguments. This Court should therefore deny the Commission's request for leave to file an *amicus* brief. But if the Commission is allowed to file a brief, the Court should give Petitioners leave to file a response.

**1.** Petitioners hold a binding, final arbitration award against Spain issued under the ICSID Convention—the gold standard in investor-state arbitration. Spain exhausted the last available post-award remedy recognized by the ICSID Convention on July 30, 2021, when a three-member committee appointed by ICSID denied Spain's application to annul the Award. *See* Annulment Dec. The Award is therefore "final," "binding," and not "subject to any appeal or to any other remedy." ECF No. 1-2 ("ICSID Convention"), arts. 53, 54. The United States has a treaty obligation to enforce it. MTD Opp. 21. And the statute implementing that obligation requires this Court to give the Award "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," 22 U.S.C. § 1650a(a), without "permitt[ing] [Spain] to make substantive challenges to the award," *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 118 (2d Cir. 2017). *See* MTD Opp. 8-10.

Spain nonetheless seeks to collaterally attack the Award by arguing that its consent to

arbitration, expressed in Article 26(2) and (3)(a) of the Energy Charter Treaty ("ECT"), ECF No. 1-3, is invalid under EU law. *See* ECF No. 18-1 ("MTD"), at 19-23. It argues that applying Article 26 to intra-EU disputes is incompatible with EU law. *Id*. The arbitral tribunal—which has exclusive authority under the ICSID Convention to issue binding decisions about its own jurisdiction—already rejected that argument, holding that Spain had lawfully consented to arbitration, MTD Opp. 6-7, 16-17, and the ICSID annulment committee rejected Spain's challenge to that jurisdictional ruling in a reasoned decision, Annulment Dec. ¶¶ 126-30, 148-60. Spain nonetheless disputes these rulings, and in December 2018, it moved to dismiss this action on that basis. Spain argues that without an independent determination by this Court that Spain's consent to arbitration is valid, this Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and the Award is not entitled to full faith and credit. MTD 19-32.

Petitioners have opposed Spain's motion to dismiss on two principal grounds. *First*, as a matter of U.S. law, Spain's collateral attack on its agreement to arbitrate is not a valid basis for challenging jurisdiction under the FSIA or refusing to enforce the Award. MTD Opp. 11-21. *Second*, even if this Court were required to independently decide the validity of Spain's consent to arbitration, that issue would be governed not by EU law, but by international law, under which Spain's consent to arbitration is valid and binding. *Id*. at 28-35. As a fallback argument, Petitioners also initially disputed Spain's characterization of EU law. *Id.* at 23-28. But the CJEU has now spoken on that issue, holding on September 2, 2021 that *as a matter of* "*EU law*"—not U.S. law or customary international law, as relevant here—the ECT's dispute resolution mechanisms are not applicable to "intra-EU" disputes. *See Republic of Moldova v. Komstroy LLC*, Case C741/19, ECF No. 47-1 ("*Komstroy*"), ¶¶ 47-59.

**2.** The CJEU's decision in *Komstroy* eliminates any need for the Commission's participation as an *amicus*. The Commission bills itself as having "special expertise" in "matters

3

of EU law," and seeks deference for its position that "intra-EU arbitral awards like Petitioners' here are not enforceable anywhere in the EU." ECF No. 50 ("Mot. for Leave"), at 3-4. But the CJEU has already spoken on that issue, and the Commission's participation will add nothing.[1]

The question now before this Court is simply whether that interpretation of EU law has any relevance to the Court's jurisdiction under the FSIA or its ICSID Convention obligation to enforce the Award. Petitioners have already explained that it does not. MTD Opp. 10-22; ECF No. 49. As a matter of U.S. law, the D.C. Circuit has conclusively held that the "arbitrability of a dispute is not a jurisdictional question under the FSIA," and that where, as here, the parties have allowed the arbitral tribunal to "'rule on its own jurisdiction,'" "'a court possesses no power to decide the . . . issue.'" *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878 (D.C. Cir. 2021).

While the Commission disagrees with Petitioners on this issue of U.S. law, *see* Mot. for Leave 3; ECF No. 50-1 ("Proposed Br."), at 18-21, it offers no unique perspective on the issue. Spain has already addressed the issue in its motion to dismiss and reply brief, and it is free to respond to Petitioners' supplemental authorities on the issue, ECF No. 49, at any time.

To the extent the Commission also seeks to address the effect of the CJEU's ruling under international law, neither it nor the CJEU speak authoritatively on that issue. The ECT is an international agreement among the EU and 52 nations, which includes the EU, EU members, and many *non-EU* members. Unsurprisingly, then, the ECT provides that it is governed by "international law," not EU law. ECT, art. 26(6). The EU and Spain thus submitted to customary

---

[1] This case is thus differently situated than the prior decisions cited by the Commission—all issued prior to *Komstroy*—in which "[o]ther judges of this Court have granted the Commission leave to file amicus briefs." Mot. for Leave 4-5. Before *Komstroy*, the Commission had a clear interest in expressing its views on the open questions of EU law that would later be decided in *Komstroy*. As a result, the Commission's requests for leave to address those questions were largely unopposed. But now that the CJEU has spoken, the Commission's views are no longer needed, and its *amicus* brief would only contribute to delay.

international law, and under that body of law, the internal law of any one signatory of the ECT (which is all the EU is for this purpose) does not control the treaty's external effects.  MTD Opp. 28-35.  While the CJEU's rulings are *internally* binding on the courts of EU member states, the CJEU has no power to invalidate—or, equivalently, erase through interpretation—the treaty obligations of its members under international law.  *Id.* at 30-31.[2]

**3.** The Commission's proposed *amicus* brief should also be rejected because it seeks to raise issues that Spain has forfeited by failing to raise them in this litigation.  The Commission's main argument is that the ECT "must be interpreted as not applying to [intra-EU] disputes."  Mot. for Leave 3.  Spain, by contrast, has not contested in this Court the Tribunal's interpretation of the ECT as applying to this dispute by its plain terms.  Award ¶ 194.  Spain argues instead that this application is contrary to EU law and therefore "no[t] legally binding."  MTD 22.  The Commission's attempt to cast its attack on intra-EU arbitration as an *interpretation* of the ECT is thus not properly before this Court.  *See PPL Corp. v. Comm'r*, 569 U.S. 329, 343 n.6 (2013) (refusing to consider argument first raised by *amicus*).

**4.** The Commission, too, has forfeited the opportunity to raise these arguments by failing to properly raise them during the arbitration or during the ordinary course of briefing.

In the arbitration, the Tribunal granted the Commission leave to submit an *amicus* brief on the condition that the Commission provide a written undertaking that it would comply with any

---

[2] The Commission also briefly invokes the foreign sovereign compulsion doctrine, arguing that paying the Award would violate EU state aid law.  Proposed Br. 23-25.  But it offers no response to the myriad reasons why that doctrine does not apply, including:  (1) the ICSID Convention and its implementing statute do not permit defenses; (2) entering judgment to facilitate enforcement against U.S. assets would not "compel" Spain to do anything; (3) the sole purported source of the "compulsion" is Spain's own *voluntary* treaty commitments; and (4) there is no evidence Spain would be sanctioned even if payment violated EU law.  MTD Opp. 38-40.  The Commission's recycling of Spain's authorities to echo Spain's irrelevant assertions about EU state aid law adds nothing to this case and therefore does not warrant leave to file an *amicus* brief.

order by the Tribunal on the allocation of costs incurred in connection with the that brief.  Award ¶¶ 63-64.  The Commission declined.  Rather than provide the required undertaking, it notified the Tribunal that it would not submit an *amicus* brief, thus forfeiting its right to participate in the arbitration.  *Id.* ¶¶ 66-68.  Spain initially sought to annul the Award by arguing that the Tribunal wrongfully conditioned the Commission's *amicus* on an undertaking, but Spain later withdrew this challenge.  Annulment Dec. ¶ 187.

In the litigation, the Commission remained silent during the initial briefing on Spain's motion to dismiss.  An *amicus* usually must file its brief early enough to give the other side a chance to respond in the normal course of briefing.  Although this Court's rules do not specify time limits for filing an *amicus* brief, *see* LCvR 7(o)(3), the rules governing *amicus* participation in the federal courts of appeals and the U.S. Supreme Court—where *amicus* participation is more commonplace—do expressly address the timing of *amicus* briefs and illustrate this principle.  *See* Fed. R. App. P. 29(a)(6) (*amicus* briefs due 7 days after principal brief of party being supported); Sup. Ct. R. 37.3(a) (same).  These rules ensure that a party can respond to its opponent's *amici* without the need for additional briefing or delay.

Here, by contrast, the Commission waited nearly three months after Spain filed it motion to dismiss—and one month after the completion of briefing—to seek leave to submit its proposed *amicus* brief.  *See* ECF No. 31.  Had the Commission filed earlier, Petitioners could have filed a single, consolidated response to that brief and Spain's motion in January 2019.  Instead, the status of the Commission's brief, and Petitioners' right to respond remained unresolved until August 2019, when this Court entered a stay of these proceedings and denied as moot the Commission's request to file its *amicus* brief, and Petitioners' request for leave to respond.  ECF No. 36; Minute Order (Aug. 28, 2019).

The Commission's decision not to submit an *amicus* brief in the arbitration or timely file

its initial request for leave to participate in this litigation are reason enough, standing alone, to deny the Commission leave to file an *amicus* brief at this late stage. Petitioners should not have to incur the burden and expense of revisiting and rebriefing issues that were fully briefed more than two and a half years ago when the Commission has repeatedly passed up earlier opportunities to participate with the consent of the arbitration tribunal or by agreement of the parties.

5. In the alternative, if the Court allows the Commission to file its *amicus* brief, Petitioners should be permitted to file a response. The Commission's brief raises new arguments, *see supra* at 5, and introduces a number of new authorities that Spain did not cite in its briefs and that Petitioners have therefore had no opportunity to address.[3] Had the Commission timely filed its brief, Petitioners would have had a chance to respond to these arguments and authorities in the ordinary course of briefing. But due to the timing of the Commission's filing, Petitioners have had no opportunity to respond.

Petitioners therefore respectfully request that if the Commission's motion is granted, this Court permit Petitioners to file a supplemental brief, not to exceed 15 pages, in response to the Commission's *amicus* brief, within 21 days of the Court's decision on this motion.

## CONCLUSION

This Court should therefore deny the Commission's motion for leave to file an *amicus* brief. In the alternative, if the motion is granted, the Court should allow Petitioners to file a response.

---

[3] *See, e.g.*, *Khochinsky v. Republic of Poland*, 1 F.4th 1 (D.C. Cir. 2021); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576 (D.C. Cir. 2020); *Breard v. Greene*, 523 U.S. 371 (1998); *Hilton v. Guyot*, 159 U.S. 113 (1895); *Elcogás SA v. Administración del Estado*, 22 Oct. 2014, EU:C:2014:2314; *Barcelona Traction, Light & Power Co.* (Belg. v. Spain), 1970 I.C.J. 3 (Feb. 5).

Dated: October 1, 2021 Respectfully submitted,

/s/ Matthew McGill
Matthew McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Ankita Ritwik, D.C. Bar #1024801
aritwik@gibsondunn.com
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 1, 2021, I caused the foregoing Notice of Supplemental Authority to be filed with the Clerk for the U.S. District Court for the District of Columbia through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

  /s/ Matthew McGill
Matthew McGill
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mmcgill@gibsondunn.com