UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFRASTRUCTURE SERVICES LUXEMBOURG S.A.R.L. and ENERGIA TERMOSOLAR B.V.,<br><br>    Petitioners,<br><br>  v.<br><br>THE KINGDOM OF SPAIN,<br><br>    Respondent. | Civil Action No. 1:18-cv-1753 (EGS) |

**RESPONSE OF THE KINGDOM OF SPAIN TO
PETITIONERS' NOTICE OF SUPPLEMENTAL AUTHORITY (D.E. 48)**

The Kingdom of Spain ("Spain") hereby responds to the Notice of Supplemental Authority submitted by Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. (D.E. 48).

None of Petitioners' supplemental authorities permits the Court to abdicate its "affirmative" and "independent obligation" to "satisfy itself that it possesses subject-matter jurisdiction" under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, an obligation this Court recognized in *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 80-81 (D.D.C. 2006). To the contrary, the authorities confirm that the Court must determine that an arbitration agreement exists in order to exercise jurisdiction under either of the exceptions to Spain's sovereign immunity invoked by Petitioners – the FSIA's arbitration and waiver exceptions. As Spain has explained, the decision of the Court of Justice of the European Union ("CJEU") in *Republic of Moldova v. Komstroy LLC*, C.J.E.U. Case C-741/19, 2021, ECLI:EU:C:2021:655 (D.E. 47-1), establishes that, as a matter of law, no such arbitration agreement was formed between

Spain and Petitioners. D.E. 47. Petitioners do not dispute that the CJEU so held. Nor do Petitioners contest that the CJEU's ruling is dispositive of that issue. Instead, Petitioners mistakenly argue that their supplemental authorities allow the Court to disregard *Komstroy*. D.E. 48 at 4-9.

### 1. *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021)

Petitioners are wrong to rely on *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021), in seeking to overcome the established principle that, to exercise jurisdiction under the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), the Court must find that there is a "valid 'agreement ... to submit to arbitration.'" *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 794 F.3d 99, 102 (D.C. Cir. 2015); *see also Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015) ("If there is no arbitration agreement … the District Court lacks jurisdiction over the foreign state and the action must be dismissed."). Contrary to Petitioners' attempt to suggest otherwise, D.E. 48 at 8-9, *Stileks* does not require the Court to accept the arbitral tribunal's erroneous finding that Spain and Petitioners had entered into an arbitration agreement, a view that was subsequently – and authoritatively – held to be incorrect in *Komstroy*.

In *Stileks*, Moldova's challenge to the Court's subject matter jurisdiction turned on the arbitrability of the parties' underlying dispute, not whether an arbitration agreement had been formed. *See* 985 F.3d at 878. Specifically, Moldova argued that the underlying claims were not arbitrable because they did not concern a type of investment protected by the ECT. *Id*. at 875, 878. The Court rejected Moldova's arbitrability-based challenge because "the arbitrability of a dispute is not a jurisdictional question under the FSIA." *Id.* at 878.

Spain, by contrast, shows that this Court lacks subject matter jurisdiction because no arbitration agreement was ever formed. D.E. 47. *Stileks* confirms that the existence of such an

agreement is a "jurisdictional fact[] that must be established." 985 F.3d at 877 (citing *Chevron Corp.*, 795 F.3d at 204). And, unlike arbitrability, which can be resolved by an arbitrator, the predicate question of whether there is an arbitration agreement "must always be decided by the courts." *Nat'l R. Passenger Corp. v. Bos. & Me. Corp.*, 850 F.2d 756, 761 (D.C. Cir. 1988). The reason is straightforward: Where there is "an issue of formation, the court cannot be sure that the party resisting arbitration ever viewed the arbitrator as competent to resolve any dispute." *Id.* at 762. Thus, as the D.C. Circuit recently reaffirmed, "the threshold question 'whether a valid arbitration agreement exists'" is "necessarily for 'the court [to] determine[].'" *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 457 (D.C. Cir. 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)) (alterations in original).

Accordingly, *Stileks*' holding that the Court "must accept the arbitral tribunal's determination that [the claimants'] claim fell within the ECT" because – in their arbitration agreement – the parties had agreed to "arbitrate arbitrability," 985 F.3d at 879 (internal quotations omitted), D.E. 48 at 8-9, has no relevance here. Spain's challenge to subject matter jurisdiction is based on whether there is such an arbitration agreement, not whether the Parties' dispute is arbitrable under such an agreement.

### 2. *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019)

*Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019) ("*Tatneft II*") – a two-year-old *per curiam* decision rendered before the Court stayed the present proceedings – does not help Petitioners either. *Tatneft II* applied the Circuit Court's decision in *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999). *Tatneft II*, 771 F. App'x at 10. In *Creighton*, the Court declined to find a waiver of sovereign immunity where there was not both an arbitration agreement

and a treaty in force calling for the enforcement of arbitral awards. *Creighton*, 181 F.3d at 121-23. Consistent with *Creighton*, Spain has demonstrated that, for the waiver exception to apply to actions to enforce arbitral awards, there must be both a valid arbitration agreement and a treaty in force calling for the enforcement of arbitral awards. D.E. 18-1 at 35-36; D.E. 25 at 26-27.

Setting aside that the one-and-a-half page decision in *Tatneft II* lacks precedential value, *see* 771 F. App'x at 10; D.C. Cir. R. 36(e)(2), Petitioners misread the decision. They argue that it establishes that there does not need to be an arbitration agreement for the waiver exception to apply, and that entering into a treaty calling for the enforcement of arbitral awards is sufficient to establish a waiver. D.E. 48 at 6. The *per curiam* opinion did not address whether the parties had entered into an arbitration agreement, however, and the Court's silence on that issue does not support Petitioners' interpretation that an arbitration agreement is not needed for a court to conclude that a respondent State has waived its sovereign immunity. Indeed, in determining that Ukraine had waived its immunity, the district court decision affirmed by *Tatneft II* noted that Ukraine was both a signatory to the New York Convention and that it had "*agreed to arbitrate*." *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 192 (D.D.C. 2018) ("*Tatneft I*"), *aff'd* 771 F. App'x 9 (emphasis added).[1] Moreover, the D.C. Circuit had no occasion to decide whether both ratification of a treaty like the New York or ICSID Conventions and an agreement to arbitrate are needed to waive immunity. Contrary to Petitioners' assertion that Ukraine disputed the existence of a valid

---

[1] That both an arbitration agreement and ratification of a treaty calling for the enforcement of arbitral awards is required to satisfy the waiver exception is underscored by *Tatneft I*'s references to *Seetransport Wiling Trader v. Navimpex Centrala Navala*, 989 F.2d 572, 578 (2d Cir. 1993), and *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016), when discussing *Creighton*. *See* 301 F. Supp. 3d at 192. Both cited cases observed that the respondent State had entered into an arbitration agreement and was a party to a treaty calling for the enforcement of arbitral awards. *See* D.E. 25 at 26.

arbitration agreement on appeal, *see* D.E. 48 at 6, Ukraine actually argued that the claims were not *arbitrable* – specifically, that the arbitration agreement that Ukraine entered into with Tatneft did not cover "fair-and-equitable treatment claims" and did not allow the arbitral tribunal to award compensation for losses suffered by Tatneft's subsidiaries.  Br. for Appellant, *Tatneft v. Ukraine*, No. 18-7057, Doc. ID 1748825, at 43, 46 (D.C. Cir. Sept. 4, 2018).  This is fundamentally different than arguing, as Spain does here, that the parties did not enter into an agreement to arbitrate.

### 3. *Kingdom of Spain v. Infrastructure Servs. Luxembourg S.A.R.L.*, [2021] FCAFC 3 (Feb. 1, 2021), and *Kingdom of Spain v. Infrastructure Servs. Luxembourg S.A.R.L.*, [2021] FCAFC 112 (June 25, 2021)

Finally, Petitioners' attempt to invoke the waiver exception derives no assistance from two Australian cases: *Kingdom of Spain v. Infrastructure Servs. Luxembourg S.A.R.L.*, [2021] FCAFC 3 (Feb. 1, 2021) (D.E. 48-2), and *Kingdom of Spain v. Infrastructure Servs. Luxembourg S.A.R.L.*, [2021] FCAFC 112 (June 25, 2021) (D.E. 48-3).  Both applied Australian law, not the FSIA.  D.E. 48 at 6-8.  They therefore do not support the proposition that Spain's ratification of the ICSID Convention is sufficient for it to have waived its sovereign immunity under the FSIA.  Petitioners fail to make any effort to justify their bald assertion that Australia's sovereign immunity law is "materially similar" to the FSIA.  D.E. 48 at 7.  Nor do the Australian decisions suggest that Australia's sovereign immunity law has an analogue to the FSIA's requirement that for there to be an implied waiver of sovereign immunity, there must be a valid arbitration agreement and a treaty in force calling for the enforcement of arbitral awards.

Dated: October 5, 2021               Respectfully submitted,

                                                  KINGDOM OF SPAIN

                                                  By its attorneys,
/s/ Nicholas M. Renzler
Derek C. Smith (D.C. Bar No. 468674)
dcsmith@foleyhoag.com
Lawrence H. Martin (D.C. Bar No. 476639)
lhm@foleyhoag.com
Nicholas M. Renzler (D.C. Bar No. 983359)
nrenzler@foleyhoag.com
Diana Tsutieva (D.C. Bar No. 1007818)
dtsutieva@foleyhoag.com
FOLEY HOAG LLP
1717 K Street, NW
Washington, DC 20006-5350
Tel:  202-223-1200
Fax: 202-785-6687

Andrew Z. Schwartz (D.D.C. Bar No. MA0017)
aschwartz@foleyhoag.com
Andrew B. Loewenstein (D.D.C. Bar No. MA0018)
aloewenstein@foleyhoag.com
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel:  617-832-1000
Fax: 617-832-7000

*Attorneys for Respondent*

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 5, 2021.

/s/ *Nicholas M. Renzler*
Nicholas M. Renzler