IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., <br><br>  *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br>  *Respondent*. |  Civil Action No. 1:18-cv-01753-EGS |

**Petitioners' Notice of Supplemental Authority**

Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. (collectively, "Petitioners") respectfully submit as supplemental authorities in support of their pending opposition to Spain's motion to dismiss and petition to enforce their Award, *see* ECF No. 19 ("MTD Opp."), two decisions of this Court—entered in materially identical arbitration enforcement actions against Spain—that reject many of the exact same arguments that Spain pressed in its motion here.  The decisions are:  (1) *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 1:19-cv-1618 (TSC), 2023 WL 2016932 (D.D.C. Feb. 15, 2023), a copy of which is attached hereto as Exhibit A; and (2) *9Ren Holding S.À.R.L. v. Kingdom of Spain*, No. 1:19-cv-1871 (TSC), 2023 WL 2016933 (D.D.C. Feb. 15, 2023), a copy of which is attached hereto as Exhibit B.

As here, *NextEra* and *9Ren* each involve actions by petitioners incorporated in European Union ("EU") member states to enforce arbitral awards issued against Spain pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention") and the Energy Charter Treaty ("ECT"), arising from Spain's

revocation of the same renewable energy subsidies on which Petitioners relied in investing in Spain.  *Compare* Ex. A at 3, *and* Ex. B at 3, *with* MTD Opp. 3-4.  As in this action, Spain opposed enforcement on several grounds:  (1) Arbitration between an EU member state and an investor of another EU member state is incompatible with EU law, so Spain's consent to arbitrate treaty disputes with the petitioners was void *ab initio*, and this Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") (the "intra-EU objection"), *compare* Ex. A at 7, *and* Ex. B at 6-7, *with* ECF No. 18-1 ("Spain Br.") at 19-28; (2) for the same reason, the awards are not entitled to full faith and credit, and therefore enforcement should be denied on the merits, *compare* Ex. A at 22-23, *and* Ex. B. at 20, *with* Spain Br. 29-34; and (3) enforcing the awards would violate the foreign sovereign compulsion doctrine because it would compel Spain to pay "state aid" in violation of EU law, *compare* Ex. A at 23-24, *and* Ex. B. at 20-21, *with* Spain Br. 34-35.

In *NextEra*, Spain raised these arguments in a motion to dismiss, as well as in opposing NextEra's motion for a preliminary injunction and temporary restraining order enjoining Spain from pursuing litigation in the Netherlands that would prevent NextEra from seeking to confirm its arbitral award in this Court.  *NextEra*, No. 1:19-cv-1618 (TSC) (D.D.C.), ECF Nos. 62, 81.  In a decision entered February 15, 2023, Judge Chutkan rejected Spain's intra-EU objection, found jurisdiction under the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), and denied the motion to dismiss.  *See* Ex. A at 7, 22-23, 29.[1]  The Court reserved a final ruling on Spain's other defenses, but addressed them in granting NextEra's request for a preliminary injunction, concluding that Spain was unlikely to succeed on any of those defenses.  *Id.* at 21-25, 28-29.  In *9Ren*, Spain's motion to dismiss is not yet fully briefed, but Spain raised the same arguments in opposing a

---

[1] Judge Chutkan also rejected Spain's *forum non conveniens* defense, which it has not raised here, as a "gymnastic but unavailing effort[] to circumvent" D.C. Circuit precedent.  Ex. A at 15-16.

motion for a similar preliminary injunction as in *NextEra*. *9Ren Holding*, No. 1:19-cv-1871 (TSC) (D.D.C.), ECF No. 55.  In another decision also entered February 15, 2023, Judge Chutkan again rejected Spain's intra-EU objection, found jurisdiction under the FSIA's arbitration exception, held that Spain was unlikely to succeed on any of its remaining defenses, and granted a preliminary injunction.  *See* Ex. B at 6-7, 12-13, 20-22, 25.

Those holdings rest on principles that are dispositive in this case.

Intra-EU objection:  In upholding its jurisdiction under the FSIA's arbitration exception, the Court squarely held that Spain's intra-EU objection had no bearing on the Court's jurisdiction.  The Court reasoned that the ECT's "terms facially create" an agreement to arbitrate, Ex. A at 8; Ex. B at 7, and Spain's objections under "EU law and the CJEU's *Achmea*" and *Komstroy* decisions—the same decisions Spain cites here, Spain Br. 11-15; ECF No. 47—did not undermine that unambiguous consent, Ex. A at 11; Ex. B. at 10.  Relying on *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205-06 (D.C. Cir. 2015), *LLC SPS Stileks v. Republic of Moldova*, 985 F.3d 871, 875-79 (D.C. Cir. 2021), and *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 273-75 (D.D.C. 2022)—the same decisions Petitioners cite to refute Spain's jurisdictional objection, MTD Opp. 19-20; ECF No. 48 at 8-9, No. 55, No. 61 at 2-3—the Court held that Spain's purported "lac[k]" of "a legal basis to enter or invoke an arbitration agreement is not a challenge to the jurisdictional fact of that agreement's existence but rather a challenge to that agreement's arbitrability."  Ex. A at 12-13; Ex. B. at 11.  It therefore raised only an "issue of the award's merits."  Ex. A at 14; Ex. B at 13.  Spain could not "deploy" that argument "as a backdoor challenge to FSIA jurisdiction."[2]  Ex. A at 14; Ex. B at 13.  Just so here.

---

[2] "Because the [C]ourt conclude[d] that it ha[d] jurisdiction under the arbitration exception, it d[id] not reach whether the waiver exception applies."  Ex. A at 7, 15 n.3; *see generally* Ex. B. at 6-13 (discussing arbitration but not waiver exception).  In *NextEra*, the Court suggested in *dicta* in a

The Court also held that Spain's intra-EU objection was unlikely to succeed on the merits. Given the "exceptionally limited" judicial review available of ICSID arbitral awards, the Court emphasized that its "perfunctory role" was limited to ensuring that "it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award." Ex. A at 21-22 (citations omitted); Ex. B at 19 (citations omitted). Those elements satisfied, "[t]hat ends the [C]ourt's inquiry; the Award must be enforced." Ex. A at 22; Ex. B at 19.

Moreover, in terms squarely applicable here, the Court held that Spain's "assertion that no valid arbitration agreement existed" did not undermine the "full faith and credit" owed to the awards. Ex. A at 22; Ex. B at 20. As the Court explained, "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided" by the arbitral tribunal. Ex. A at 22; Ex. B at 20. Accordingly, because the tribunal had considered Spain's arguments and upheld its own jurisdiction, the Court held that it could not second-guess the tribunal's determination, which was "due full faith and credit." Ex. A at 23; Ex. B at 20.

For the same reasons, the Court held that Spain was unlikely to prevail on its argument that each award "itself violates EU law" by compelling Spain to pay unauthorized state aid. Ex. A at 23; Ex. B at 20. That contention "'goes to the merits of the ICSID panel's determination' and must be taken up with the ICSID tribunal itself." Ex. A at 23 (quoting *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 285 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020)); Ex. B at 20 (quoting same). The Court emphasized that "[n]othing" in the ICSID Convention's implementing legislation "permits the [C]ourt to consider this issue." Ex. A at 23; Ex. B at 20. And to the extent

---

footnote that "the arbitration agreement's existence has implications for the FSIA's waiver exception as well." Ex. A at 7-8 n.1. For reasons Petitioners have explained, however, that is incorrect. *See* MTD Opp. 11-15. The waiver exception turns only on Spain's consent to *enforcement* in *the ICSID Convention*, not whether Spain consented to *arbitration* in *the ECT*.

the state aid issue implicates the doctrine of "foreign sovereign compulsion," the Court held that the doctrine was only a limited "shield" from liability available to private "antitrust defendants" asserting that their anticompetitive "acts were compelled by a foreign government." Ex. A at 24; Ex. B at 21; *see* MTD Opp. 38-40 (making similar point).  That doctrine had no purchase in *NextEra* or *9Ren*—and it has none in this case.

Immediate enforcement:  Finally, having denied Spain's motion to dismiss on jurisdictional grounds, the Court in *NextEra* also made several rulings that should clear the way to immediate entry of judgment on the merits here.  The Court held that by raising non-jurisdictional defenses in its motion to dismiss, Spain had "forego[ne] its entitlement to a threshold determination of immunity" and waived any argument that the Court must decide jurisdiction before reaching the merits.  Ex. A at 28 (citation omitted).  The Court also held that Spain had no possible merits defenses because the ICSID Convention's implementing legislation, 22 U.S.C. § 1650a, does not "permi[t]" any "substantive challenges to the award."  *See id.* (underscoring that under section 1650a, "there are not and will not be any merits to brief").

In light of these principles, once the Court determines that it has jurisdiction, it should proceed immediately to address and deny Spain's non-jurisdictional grounds for dismissal and to enter judgment for Petitioners in the amount and currency specified in the Award.  Judge Chutkan instead chose to wait for an appeal in *NextEra*.  Ex. A at 29.  But given section 1650a's inexorable command that the Court "shall" enforce the Award, this Court should not delay further.

Dated: February 22, 2023          Respectfully submitted,

/s/ Matthew McGill

Matthew McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Ankita Ritwik, D.C. Bar #1024801
aritwik@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V.*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 22, 2023, I caused a true and correct copy of the foregoing Notice of Supplemental Authority to be filed with the Clerk for the U.S. District Court for the District of Columbia through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

                                          /s/ Matthew McGill
                                            Matthew McGill