**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFRASTRUCTURE SERVICES LUXEMBOURG S.A.R.L. and ENERGIA TERMOSOLAR B.V.<br><br>                    Petitioners,<br><br>          v.<br><br>THE KINGDOM OF SPAIN,<br><br>                    Respondent. | Civil Action No. 1:18-cv-1753 (EGS) |

## RESPONSE OF THE KINGDOM OF SPAIN TO PETITIONERS' NOTICE OF SUPPLEMENTAL AUTHORITY (D.E. 68)

The Kingdom of Spain ("Spain") responds to the Notice of Supplemental Authority submitted by Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. on February 22, 2023, D.E. 68.  The decisions identified by Petitioners—*Nextera Energy Global Holdings B.V. v. Kingdom of Spain*, No. 1:19-cv-1618 (TSC), 2023 U.S. Dist. LEXIS 25862 (D.D.C. Feb. 15, 2023), and *9REN Holdings S.à.r.l. v. Kingdom of Spain*, No. 1:19-cv-1871 (TSC), 2023 U.S. Dist. LEXIS 25860 (D.D.C. Feb. 15, 2023)—are incorrect insofar as the court determined that it had jurisdiction under the arbitration exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(6).  The court also erred in its preliminary assessment of the merits of those actions.  Those decisions "have no precedential effect."  *Kalka v. Hawk*, 215 F.3d 90, 100 (D.C. Cir. 2000) (Tatel, J., concurring).  This Court should not rely on them in determining whether there is jurisdiction over this action or, if it eventually reaches the merits, whether the underlying arbitral award is entitled to full faith and credit.

There is, however, one respect in which the Court should follow Judge Chutkan's lead. Given the novelty and difficulty of the issues presented, and their far-reaching international and foreign relations implications, the Court should defer any ruling on jurisdiction or the merits until the Court of Appeals for the D.C. Circuit has reviewed the decisions in *Nextera* and *9REN*.[1]

## I.   The Court in *Nextera* and *9REN* Incorrectly Held That It Had Jurisdiction

This Court has an "affirmative" and "independent obligation" to "satisfy itself that it possesses subject-matter jurisdiction" under one of the FSIA's exceptions to immunity, *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 80-81 (D.D.C. 2006). Enforcing the FSIA's carefully drawn limits on subject matter jurisdiction is particularly important because its codification of sovereign immunity "both recognizes the 'absolute independence of every sovereign authority' and helps to 'induc[e]' each nation state, as a matter of 'international comity,' to 'respect the independence and dignity of every other,' including our own." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 179 (2017). *See also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990) ("more than the usual is required of trial courts" when resolving jurisdictional challenges under the FSIA).

To discharge the Court's obligation to assess subject matter jurisdiction under Section 1605(a)(6), the Court must determine, at the threshold, whether there is a "valid 'agreement ... to submit to arbitration.'" *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 794 F.3d 99, 102 (D.C. Cir. 2015); *see also Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015) ("If there is no arbitration agreement … the District Court lacks jurisdiction over the foreign state and the action must be dismissed."). As the petitioners in *Nextera* and *9REN* conceded, "an existing

---

[1] On March 16, 2023, Spain appealed both decisions. *Nextera*, D.E. 87; *9REN*, D.E. 61.

agreement is essential for jurisdiction under the arbitration exception." *Nextera,* 2023 U.S. Dist. LEXIS 25862, at *11; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *9.

In this case, as in *Nextera* and *9REN*, "the key issue is whether an agreement to arbitrate existed between Spain and [Petitioners]." *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *11; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *11. The Supreme Court distinguishes between disputes concerning "whether a valid arbitration agreement exists," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), and disputes concerning arbitrability, "that is, whether the[] arbitration agreement applies to the particular dispute," *id.* at 527. Disputes concerning the existence of an arbitration agreement must always be determined by a court. *Id.* at 530; *see Nat'l R. Passenger Corp. v. Bos. & Me. Corp.*, 850 F.2d 756, 762 (D.C. Cir. 1988) (where there is "an issue of formation, the court cannot be sure that the party resisting arbitration ever viewed the arbitrator as competent to resolve any dispute.") As the D.C. Circuit recently reaffirmed, "the threshold question 'whether a valid arbitration agreement exists'" is "necessarily for 'the court [to] determine[].'" *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 457 (D.C. Cir. 2021) (quoting *Henry Schein*, 139 S. Ct. at 530) (alterations in original); *see also Nat'l R. Passenger Corp.*, 850 F.2d at 761 (the existence of an arbitration agreement "must always be decided by the courts").

Spain has demonstrated that, as a matter of law, there is no valid arbitration agreement between Spain and the Petitioners. *See* D.E. 18-1 at 11-12, 19-23; D.E. 25 at 13-18; D.E. 47; D.E. 53; D.E. 59; D.E. 66. This point cannot be seriously disputed. Recent decisions of the Court of Justice of the European Union ("CJEU"), the highest court in the EU, make unmistakably clear that the arbitration provisions of Article 26 of the Energy Charter Treaty ("ECT") are categorically inapplicable to a dispute between one EU member State, such as Spain, and nationals of another

EU member State, such as Petitioners, who are entities from Luxembourg.  *See Slovak Republic v. Achmea B.V.*, CJEU Case C-284/16, 2018, ECLI:EU:C:2018:158, ¶ 60, D.E. 18-48 (treaties governing the EU "must be interpreted as precluding a provision in an international agreement concluded between Member States" under which "an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept"); *Komstroy LLC v. Republic of Moldova*, C.J.E.U. Case C-741/19, 2021, ECLI:EU:C:2021:655, ¶ 66, D.E. 47-1 ("Article 26(2)(c) ECT must be interpreted as not being applicable to disputes between a Member State and an investor of another Member State concerning an investment made by the latter in the first Member State.").  Put another way, under the controlling law, the Petitioners and Spain are legally barred from arbitrating *any* dispute under the ECT.  *See* D.E. 18-1 at 28-32; D.E. 25 at 13-18; D.E. 47; D.E. 50-1 at 17-25; D.E. 53; D.E. 59; D.E. 66.  Because the Court must find that there is a valid arbitration agreement in order to exercise jurisdiction under Section 1605(a)(6), and because there is no such agreement between Petitioners and Spain, Section 1605(a)(6) does not apply and this action must be dismissed for lack of subject matter jurisdiction.[2]

---

[2] There is also no jurisdiction under the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1). Assuming *arguendo* that exception could even conceivably apply here, *see* D.E. 18-1 at 33-34; D.E. 25 at 25-26, there would have to be "strong evidence" that Spain "intended to waive its sovereign immunity." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021). That intent could only possibly be demonstrated by the existence of a valid agreement to arbitrate and an applicable treaty in force calling for the recognition and enforcement of arbitral awards; a treaty alone would not suffice. *See* D.E. 18-1 at 33-37; D.E. 25 at 24-27. Because there is no valid arbitration agreement, Spain did not waive its immunity to suit in the United States. The Court in *Nextera* did not "reach whether the waiver exception applies." *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *10. However, it correctly observed that "a specific arbitration agreement remains a jurisdictional prerequisite under the waiver exception." *Id.* at *11 n.1. Though Petitioners would have this Court adopt the *Nextera* court's reasoning as to the arbitration exception, D.E. 68 at 3-5, they contend that the court's reasoning as to the waiver exception was "incorrect." *Id.* at 4 n.2.

In *Nextera* and *9REN*, the court reasoned that Article 26 of the ECT "facially create[d]" an agreement to arbitrate between Spain and the petitioners in those cases. *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *11; *9REN*, U.S. Dist. LEXIS 25860, at *9-10. In so doing, the court misapprehended how an agreement can be formed under the ECT and sidestepped the "harder question" of whether an "agreement to arbitrate existed as a legal matter." *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *11-12; *9REN*, U.S. Dist. LEXIS 25860, at *10.

Article 26 does not constitute an arbitration agreement. Rather, it contains the State's standing offer to arbitrate, which, if valid as to a particular investor, must then be accepted by the investor for there to be an agreement to arbitrate. *Infrared Envtl. Infrastructure GP Ltd. v. Kingdom of Spain*, Civil Action No. 20-817 (JDB), 2021 U.S. Dist. LEXIS 120489, at *5 (D.D.C. June 29, 2021).

More importantly, Section 1605(a)(6) does not task the Court with assessing whether *on the surface* there appears to be an agreement to arbitrate. Rather, in considering whether there is subject matter jurisdiction under this statutory exception to foreign sovereign immunity, the Court must determine whether there is *actually* a valid agreement to arbitrate. That issue cannot be avoided. The existence of a valid arbitration agreement is fundamental to the Court's power to adjudicate a case brought in the United States against a foreign sovereign in which the arbitration exception is invoked as the basis for subject matter jurisdiction.

The court's approach in *Nextera* and *9REN* runs afoul of *Helmerich & Payne.* There, the Supreme Court rejected the notion that, to establish subject matter jurisdiction under the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3), it is sufficient for the plaintiff to make a "non-

---

Spain incorporates by reference its prior arguments and otherwise reserves all rights regarding, *inter alia*, the inapplicability of the waiver exception.

frivolous claim of expropriation." *Helmerich & Payne*, 581 U.S. at 177.  The Supreme Court held that the "nonfrivolous-argument standard is not consistent with the statute.  Where, as here, the facts are not in dispute, those facts bring the case within the scope of the expropriation exception only if they do show (and not just arguably show) a taking of property in violation of international law." *Id*. at 187.  As the Supreme Court emphasized, "[s]imply making a nonfrivolous argument to that effect is not sufficient." *Id*.[3]

Similarly here, under the FSIA's arbitration exception, it is not enough for the Court to find that there is some facial indication of an agreement to arbitrate, without considering whether the purported agreement is valid.  That "harder question" must be answered, and must be answered definitively in Petitioners' favor before the Court can adjudicate the merits.

As the court in *Nextera* and *9REN* acknowledged, "'the existence of an arbitration agreement, an arbitration award and a treaty governing the award are all jurisdictional facts that must be established.'" *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *10-11 (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021)); *9REN*, 2023 U.S. Dist. LEXIS 25860, at *9.  Under D.C. Circuit authority, once a petitioner seeking to enforce an arbitration award rendered pursuant to an international investment treaty "ma[k]e[s] a prima facie showing that there was an arbitration agreement by producing the [treaty] and the notice of arbitration," "the burden shift[s] to [the respondent] to demonstrate by a preponderance of the evidence that the [treaty] and the notice to arbitrate d[o] not constitute a valid arbitration agreement." *Chevron*, 795 F.3d at 205.

---

[3] In so holding, the Court drew on its precedent in the context of the FSIA's immoveable property exception, 28 U.S.C. § 1605(a)(4).  It explained that in *Permanent Mission of India to United Nations v. City of New York*, 551 U.S. 193 (2007), it "did not simply rely upon a finding that the plaintiff had made a nonfrivolous argument that the exception applied," but instead required the factual allegations to show that, as required by the statute, "'rights in immoveable property situated in the United States are in issue." *Helmerich and Payne*, 581 U.S. at 179.

Yet the court in *Nextera* and *9REN* did not afford Spain the opportunity to demonstrate that the purported agreement was invalid.  It treated the facial appearance of an arbitration agreement as a "jurisdictional fact" that Spain was prohibited from rebutting by demonstrating "the lack of a legal basis for entering an agreement."  *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *17-18; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *15-16.

The court in *Nextera* and *9REN* based this approach on a flawed reading of *Chevron*, 795 F.3d 200, and *Stileks*, 985 F.3d 871.  It reasoned that "[t]he lesson of" these cases "appears to be this: The assertion that a party lacked a legal basis to enter or invoke an arbitration agreement is not a challenge to the jurisdictional fact of that agreement's existence but rather a challenge to that agreement's arbitrability."  *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *17-18; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *16.  This reads too much into these D.C. Circuit cases.  It also cannot be reconciled with the Supreme Court's decisions in *Helmerich & Payne* and *Henry Schein*, both of which post-dated *Chevron.*

At bottom, the court in *NextEra* and *9REN* conflated two issues: (1) whether the parties entered into a valid arbitration agreement and (2) assuming they did, whether they agreed to arbitrate a particular dispute.  If there is no valid agreement to arbitrate, then there is no issue of whether a particular dispute is arbitrable, by definition.[4]

_____

[4] The court in *Nextera* and *9REN* 's reference to an "agreement's arbitrability," *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *18; *9REN*, 2023 U.S. Dist. LEXIS 25860 at *16, obscures the issue that must be resolved under the FSIA.  Assuming hypothetically a valid agreement to arbitrate exists, there may be an issue whether a particular dispute is arbitrable.  The issue then is whether *the dispute*, not *the agreement*, is arbitrable (and possibly who determines whether the dispute is arbitrable).  But before a court can consider arbitrability, there must first be a valid arbitration agreement.  And in a case against a foreign sovereign under the FSIA, the arbitration exception in Section 1605(a)(6) requires the existence of a valid arbitration agreement as a predicate jurisdictional determination.  *See Chevron*, 795 F.3d 204-05.  There is no such agreement here, rendering moot any issue of arbitrability.

*Chevron* and *Stileks* do not teach the lesson the court in *NextEra* and *9REN* took from these cases.  The jurisdictional arguments of Ecuador and Moldova, respectively, as the D.C. Circuit assessed them, were not based upon the "lack[] [of] a legal basis to enter … an arbitration agreement," *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *20; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *15-16.  Unlike Spain—which has shown conclusively that no valid arbitration agreement could be concluded between Spain and Petitioners under the ECT (and thus a "lack[] [of] a legal basis")—the defendants in those cases each argued that the dispute in question was outside of the scope of an otherwise valid arbitration agreement.

In *Chevron*, Ecuador did not dispute that it could enter into an arbitration agreement with a U.S. investor under the U.S.-Ecuador bilateral investment treaty.  Instead, it argued that because "Chevron's claims [were] not covered by the BIT, … Ecuador never agreed to arbitrate with Chevron [because its investments allegedly were not covered by the treaty], and the District Court consequently lacked jurisdiction."  795 F.3d at 205. This, the D.C. Circuit held, was an "arbitrability question," *id*., because it concerned the scope of the agreement.  The Court rejected this argument and found it had jurisdiction because the U.S.-Ecuador bilateral investment treaty "includes a standing offer to all potential U.S. investors to arbitrate investment disputes, which Chevron accepted in the manner required by the treaty."  *Id*. at 206.

Likewise, in *Stileks*, Moldova did not dispute whether it could arbitrate disputes under the ECT with Ukrainian investors, but rather whether "it agreed to arbitrate th[e] particular dispute" with the claimant, 985 F.3d at 878.  According to the D.C. Circuit, this objection, too, concerned

"arbitrability," *id.* at 879, i.e., the scope of the agreement, which "is not a jurisdictional question under the FSIA," *id.* at 878.[5]

By contrast, Spain has demonstrated that as a matter of law—and as confirmed by multiple decisions of the EU's highest court—Spain could not have agreed to arbitrate with a Luxembourgish investor under the ECT, period.  Not just this particular dispute, but *any* dispute between an EU member State and an investor of another EU member State.  That goes to existence of the alleged arbitration agreement, not arbitrability of a particular dispute.  It distinguishes this case—and *Nextera* and *9REN*—from *Chevron* and *Stileks*.

The *Nextera* and *9REN* court also incorrectly relied on *Tethyan Copper Co. Pty. Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262 (D.D.C. 2022).  *See Nextera*, 2023 U.S. Dist. LEXIS 25862, at *18-19; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *16-17.  There, Pakistan argued that "it never agreed, under the [Australia-Pakistan bilateral investment] [t]reaty's terms, to arbitrate th[e] case at ICSID" because "it never provided [the] written consent" required thereunder.  *Tethyan*, 590 F. Supp. 3d at 273. The *Tetyhan* court should have resolved that challenge as part of its jurisdictional inquiry.  Regardless, unlike Spain here, Pakistan did not argue that under no circumstances could it ever have agreed to arbitrate with an Australian investor under the treaty and therefore there was no "legal basis to enter … an arbitration agreement," *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *20; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *15-16.  Instead, it argued that the necessary "written consent" was not present.  *Tethyan*, 590 F. Supp. 3d at 273. Whether Pakistan had given written consent to arbitrate a particular dispute with a particular

---

[5] Spain has previously addressed *Stileks* in its October 5, 2021 response to a prior notice of supplemental authority.  D.E. 52 at 2-3.

Australian investor is a fundamentally different question than whether Spain could consent as a matter of law to arbitrate with any Luxembourgish investor, including Petitioners.[6]

As illustrated by the D.C. Circuit's treatment of Belize's jurisdictional objection in *Belize Soc. Dev.*, 794 F.3d at 102-03, this Court is required to consider Spain's legal challenge to the existence of a valid arbitration agreement.  There, Belize argued that the arbitration "agreement [was] *void ab initio*" because "the Prime Minister [of Belize] lacked actual authority to execute" the agreement. 794 F.3d at 102.  Though that argument concerned a "lack[] [of] a legal basis to enter … an arbitration agreement," *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *20; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *20, the D.C. Circuit did not simply accept that there was a facial agreement to arbitrate.  Rather, it explained that to prevail on its jurisdictional argument, "Belize must show that the Prime Minister lacked authority to enter into the arbitration agreement." *Belize Soc. Dev.*, 794 F.3d at 102.  Because Belize "failed to do [so]," *id.*, the Court found that Section 1605(a)(6) applied, *id.* at 103.  By contrast, Spain has shown that the putative arbitration agreement was void *ab initio*.

By treating facial evidence of an arbitration agreement as sufficient to confer jurisdiction under Section 1605(a)(6) and declining to look beneath the surface and consider Spain's legal argument, the court in *Nextera* and *9REN* abdicated its jurisdictional responsibility.  Though the court acknowledged its duty to "decide [its] own jurisdiction," Ex. 1 at 49:17 (Transcript of Preliminary Injunction Hearing (Feb. 8, 2023), *Nextera*, D.E. 83), it improperly restricted the scope of the jurisdictional inquiry.  It then compounded the error by treating the legal validity of the purported agreement as an issue of arbitrability, which it treated as "an issue of the award's merits"

---

[6] Spain has previously addressed *Tethyan* in its April 6, 2022 response to another notice of supplemental authority.  D.E. 57.

that was insulated from review. *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *20; *see id.* at *32; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *18; *see id.* at *29. The Court thereby outsourced the determination of its own statutory jurisdiction, and of Spain's sovereign immunity from suit in the United States, to an ICSID tribunal, an international body.

This too cannot be squared with *Helmerich & Payne*. Insofar as the jurisdictional inquiry required under Section 1605(a)(6) may overlap with the merits, *Helmerich & Payne* directs the Court to "answer the jurisdictional question. If to do so, it must inevitably decide some, or all, of the merits issues, so be it." 581 U.S. at 178. Any such overlap does not relieve a U.S. court from its obligation to independently determine whether Section 1605(a)(6) applies. Any limitations on the Court's scope of review of the merits in an ICSID award enforcement action does not obviate the need for the Court to determine whether there is jurisdiction of the action in the first instance.

The court in *Nextera* and *9REN* also read the requirement of a valid agreement to arbitrate out of Section 1605(a)(6), contrary to prior D.C. Circuit decisions, *see Belize Soc. Dev.*, 794 F.3d at 102; *Chevron*, 795 F.3d at 205. The court's interpretation of the statute as only requiring a "facial agreement" would prevent foreign sovereigns from contesting jurisdiction in cases involving, for example, purported arbitration agreements that are forgeries, are procured by fraud or corruption, or were entered into by an *ultra vires* act (as Belize contended in *Belize Soc. Dev.*, 794 F.3d at 102). There is no indication that, in enacting Section 1605(a)(6), Congress intended the courts of the United States to blind themselves to valid legal challenges to the existence of arbitration agreements, regardless of whether the purported agreement calls for arbitration pursuant to a regime that would limit judicial review of issues of arbitrability or the merits.

## II.    Recognition and Enforcement Is Inappropriate, "Immediately" or In the Future

Petitioners are also incorrect in arguing that the recent decisions in *Nextera* and *9REN* "clear the way to immediate entry of judgment on the merits here." D.E. 68 at 5. Section A below

explains why this is wrong as a matter of procedure, and Section B explains why the award should never be recognized or enforced in the United States.

      A.     <u>"Immediate" Recognition and Enforcement Would Be Procedurally Improper</u>

Because Spain has appealed both decisions to the D.C. Circuit, *Nextera*, D.E. 87; *9REN*, D.E. 61, this Court should exercise its discretion to stay this action or otherwise defer ruling on Spain's pending motion to dismiss until the D.C. Circuit decides whether Section 1605(a)(6) applies in *Nextera* and *9REN*. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, Civil Action No. 1:19-cv-03783 (CJN), 2021 U.S. Dist. LEXIS 63261, at *7-8 (D.D.C. Mar. 31, 2021) ("In general, litigating essentially the same issues in two separate forums is not in the interest of judicial economy. These negative effects on judicial economy are even stronger when it is clear that the outcome of the other proceedings may affect this Court's determinations.") (internal quotations, brackets, ellipses and citations omitted). If the D.C. Circuit determines that Section 1605(a)(6) does not apply in *Nextera* and *9REN*, that will require this Court to reach the same conclusion here.[7]

Notably, in *Nextera*, Judge Chutkan chose not to resolve the merits, preferring instead to "give Spain a chance to appeal the court's rulings on the other motions, including the court's jurisdictional holdings." *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *42. Yet, the Petitioners in this case, while seeking to take advantage of the jurisdictional determinations in *Nextera* and *9REN*, would have this Court take a different tack than the court in *Nextera*, assuming this Court

---

[7] The D.C. Circuit will review the district court's jurisdictional determinations under the FSIA *de novo*. *Stileks*, 985 F.3d at 877.

agreed with the decisions in *Nextera* and *9REN* as to jurisdiction (which it should not). This Court should exercise at least the same restraint that the court in *Nextera* has in declining to decide the merits while the jurisdictional issue is on appeal, given the gravity, complexity and unusual nature of the issues raised in all these actions.

Regardless, if the Court does not defer its decision on Spain's motion to dismiss pending the appeals in *Nextera* and *9REN*, the Court should not proceed to "immediate entry of judgment on the merits," as Petitioners improperly request, D.E. 68 at 5. On the contrary, as Petitioners previously stated, the appropriate procedure would begin with "schedul[ing] oral argument for the motion to dismiss." D.E. 58 at 2. If the Court in deciding that motion were to determine that it has jurisdiction under the FSIA, that determination would be immediately appealable, as in *Nextera* and *9REN*, *see Princz v. Fed. Rep. of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993), and an interlocutory appeal would divest the Court of jurisdiction until the D.C. Circuit resolves the appeal, *see id*. Further, if the Court of Appeals were to affirm that hypothetical jurisdictional decision, it would be appropriate for this Court to stay the proceedings pending the resolution of a petition for a writ of certiorari and any subsequent proceedings in the Supreme Court. *See Philipp v. F.R.G.*, 436 F. Supp. 3d 61, 65-70 (D.D.C. 2020).

In all events, the Court would be able to enter judgment on the merits for Petitioners only after ruling on a motion for judgment on the pleadings or a motion for summary judgment. *See* D.E. 57 at 4. There is no such pending motion in this action.[8]

---

[8] By contrast, in *Nextera*, there is a pending summary judgment motion, Petitioners' Cross-Motion for Summary Judgment, *Nextera*, D.E. 70, and in *9REN*, the Court had ordered that a summary judgment motion be filed by March 24, 2023, *9REN*, Minute Order (Feb. 1, 2023).

B.     Recognition And Enforcement Would Be Inappropriate On The Merits

Procedural issues aside, neither recognition nor enforcement of the award in this action would ever be appropriate, including without limitation because (1) the award is not entitled to full faith and credit and (2) enforcing it would violate the foreign sovereign compulsion doctrine.[9]

1.     The Award Is Not Entitled to Full Faith and Credit

The ICSID statute directs the Court to treat the award as "a final judgment of a court of general jurisdiction of one of the several States."   22 U.S.C. § 1650a(a); *see Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1103 n.14 (D.C. Cir. 1982).  It is axiomatic that "full faith and credit need not be given" where the "court did not have jurisdiction over the subject matter or the relevant parties."  *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704-05 (1982); *see also V.L. v. E.L.*, 136 S. Ct. 1017, 1020 (2016); *Nevada v. Hall*, 440 U.S. 410, 421 (1979).  The tribunal that rendered the award lacked jurisdiction because Spain never entered into a valid arbitration agreement with Petitioners. D.E. 18-1 at 28-32.  Accordingly, the award is not entitled to full faith and credit.[10]

Spain is not precluded from challenging the tribunal's decision on jurisdiction.  In *Nextera* and *9REN*, the court relied on *Durfee v. Duke*, 375 U.S. 106 (1963) (a case Spain previously has cited, *see* D.E. 18-1 at 40), in determining preliminarily that it could not consider whether the tribunals had jurisdiction.  *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *32; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *29.  In *Durfee*, the Supreme Court stated, as a general rule, that "a judgment [of

---

[9] Spain has reserved all defenses to the Petition.  *See* D.E. 18-1 at 38 n.5.

[10] In addition, after improperly exercising jurisdiction over the dispute, the arbitral tribunal authorized state aid, something only the European Commission may do.  It thereby exceeded any authority it might otherwise have had under Article 26 of the ECT.  As an *ultra vires* decision, it is not entitled to full faith and credit.  *See* D.E. 18-1 at 41-42; D.E. 25 at 30.

a state court] is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee*, 375 U.S. at 111; *see* D.E. 68 at 4.  In applying this rule, this Court would be required to determine whether the issue of the tribunal's jurisdiction was "fully and fairly litigated" in the arbitration.  If it was not, then the Court would be required to consider that issue and decide whether the tribunal had jurisdiction.  Further, even if the Court were to conclude that the issue was "fully and fairly litigated" in the arbitration, the Supreme Court has recognized that the "general rule of finality of jurisdictional determinations is not without exceptions," *Durfee*, 375 U.S. at 114.

If the Court reaches the issue, it should find that the tribunal's jurisdictional determination is not entitled to full faith and credit.  Whether the tribunal had jurisdiction was not fully and fairly litigated in the arbitration because, *inter alia*, (a) the arbitral tribunal and the annulment committee refused to consider *Achmea*, ECLI:EU:C:2018:158, D.E. 48, and (b) the award and the decision on annulment were rendered before the CJEU issued *Komstroy*, ECLI:EU:C:2021:655, D.E. 47-1, which confirmed that the principles applied in *Achmea* apply to the ECT.  Moreover, even if the jurisdictional issue had been fully and fairly litigated, the general rule of finality does not apply, given that the award implicates Spain's sovereign immunity, infringes on governmental authority, has been eclipsed by an intervening legal development, and if recognized or enforced would have far-reaching foreign relations implications.

a.      The Tribunal's Jurisdiction Was Not Fully and Fairly Litigated

In *Achmea* the CJEU held that arbitration clauses in intra-EU international investment treaties are barred by the treaties governing the European Union.  D.E. 18-1 at 23-24 (citing *Achmea*, ECLI:EU:C:2018:158 at Dispositif, D.E. 18-48).  Though the tribunal had not yet rendered its award when the CJEU issued *Achmea*, it rejected Spain's application to submit the

*Achmea* decision.  D.E. 1-1 at ¶¶ 56, 58.  The tribunal thus failed to permit argument on, and consider, a then-recent decision of the highest court of the European Union that was directly on-point for Spain's jurisdictional defense.  By refusing to consider *Achmea*, the tribunal denied Spain a full and fair opportunity to litigate the issue of its jurisdiction.  It also deprived itself of the "capability to make an adequately informed determination of a question concerning its own jurisdiction," which permits the parties to "litigat[e] the question of the [rendering] court's subject matter jurisdiction in subsequent litigation," RESTAT. 2D OF JUDGMENTS § 12(3).  The ICSID annulment committee then tried to brush the issue aside, stating that the seminal decision in *Achmea* "would [not] have changed the Tribunal's overall analysis," D.E. 46-1 ¶ 206.[11]

The issue of the tribunal's jurisdiction also was not fully or fairly litigated in the arbitration because the award and annulment decision were rendered before the CJEU issued its judgment in *Komstroy*, ECLI:EU:C:2021:655, D.E. 47-1, which confirmed that the principles applied in *Achmea* apply to the ECT.  That judgment leaves no doubt whatsoever (not that there should have been any after *Achmea*) that an EU member State's putative offer to arbitrate in Article 26 of the ECT is invalid as to investors of other EU member States.  D.E. 47-1 at ¶ 66.  *Komstroy* eviscerates the tribunal's conclusion that Spain made, and Petitioners accepted, an offer to arbitrate under Article 26 of the ECT, *see* D.E. 1-1 at ¶ 230.  Without the benefit of *Komstroy* and its progeny, the

_____

[11] The tribunal also denied Spain's request to submit European Commission Decision 2017/7384, *State aid Case SA. 40348 – Spain: Support for electricity generation from renewable energy sources, cogeneration and waste*, Nov. 10, 2017, C(2017) 7384 final (EC) (D.E. 18-50)—a decision legally "binding on arbitral tribunals," *id.* at ¶ 166—which determined that Spain is prohibited from paying "any compensation which an Arbitration Tribunal were to grant" to investors like Petitioners, *id.* at ¶ 165.  D.E. 1-1 ¶¶ 51-53.  The annulment committee likewise gave this issue short shrift, surmising that "the statement of EU law in Decision 7384 … would [not] have changed the Tribunal's overall analysis."  D.E. 46-1 ¶ 206.  Thus, the state aid issue also was not fully and fairly litigated.

tribunal and the annulment committee were unable to fully consider the intra-EU issue as it has now been definitively resolved by the CJEU.

> b.      Exceptions to the Rule of Jurisdictional Finality Deprive the Tribunal's Jurisdictional Determination of Full Faith and Credit

Even if the Court were to conclude that the issue of the tribunal's jurisdiction was fully and fairly litigated in the arbitration, the Court should still refuse to apply the "general rule of finality of jurisdictional determinations," *Durfee*, 375 U.S. at 114. As the Supreme Court recognized in *Durfee*, this general rule is subject to exceptions. *Id.* And there are highly exceptional circumstances in this case.

One exception the Supreme Court identified in *Durfee* concerns the "[d]octrine[] of … sovereign immunity." 375 U.S. at 114. As the Federal Circuit has explained, "when the issuing court's [here, the arbitral tribunal's] lack of jurisdiction 'directly implicates issues of sovereign immunity,'" the "res judicata effect of a prior opinion" should be "overid[den]." *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1332 (Fed. Cir. 2004) (quoting *Int'l Air Response v. United States*, 324 F.3d 1376, 324 F.3d 1380 (Fed. Cir. 2003)); *see* D.E. 25 at 23-24. This exception is grounded in the principle that "[c]onsent alone gives jurisdiction to adjudge against a sovereign" and "[a]bsent that consent, the attempted exercise of juridical power is void." *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 513-14 (1940). In this case, the tribunal's lack of jurisdiction "directly implicates" Spain's sovereign immunity from the tribunal's adjudicatory power because that immunity could only have been abrogated by Spain's consent to arbitrate. Spain never gave that consent, as a matter of law. Accordingly, the award is not entitled to full faith and credit, regardless of whether the jurisdictional issue was fully and fairly litigated.

A jurisdictional determination also should not be treated as final "when 'allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of

government.'"  *Christopher Vill.*, 360 F.3d at 1330 (quoting Restat. 2d of Judgments § 12(2));
*Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988); *see* D.E. 25 at 23.  Here,
the tribunal adjudicated a dispute that can only legally be decided by the courts of the European
Union, thereby "substantially infring[ing] the[ir] authority," *Christopher Vill.*, 360 F.3d at 1330.
*See* D.E. 25 at 23.[12]

Another exception to the finality rule is when there is a "subsequent judicial
pronouncement[]" on a "'paramount question[] of constitutional law.'"  *Toms v. Office of the
Architect of the Capitol*, 650 F. Supp. 2d 11, 21 (D.D.C. 2009) (quoting *Hardison v. Alexander*,
655 F.2d 1281, 1289-90 (D.C. Cir. 1981)).  Such a pronouncement may "serve as a basis for
overriding the bar of res judicata."  *Id*.  In the words of the Restatement (Second) of Judgments:

> Although an issue is actually litigated and determined by a valid and
> final judgment, and the determination is essential to the judgment,
> relitigation of the issue in a subsequent action between the parties is
> not precluded … [where] [t]he issue is one of law and … a new
> determination is warranted in order to take account of an intervening
> change in the applicable legal context.

Restat. 2d of Judgments § 28(2)(b).

*Komstroy* is a subsequent judicial pronouncement—rendered after the award was issued—
concerning a paramount question of the constitutional law of the EU as set out in its governing
treaties.  It should thus "serve as a basis for overriding" any preclusive effect that the Court might
otherwise accord the tribunal's prior, erroneous jurisdictional decision.  Given the sensitive issue
of foreign relations that the Petition presents, this Court should be loathe to ignore this definitive

---

[12] In addition, by awarding state aid in an *ultra vires* manner, the tribunal infringed on the authority
of the European Commission.  D.E. 18-1 at 41-42; D.E. 25 at 30-31; D.E. 50-1 at 31-32.

ruling by the EU's highest court if it reaches the issue whether the tribunal properly exercised jurisdiction over the underlying dispute.

In sum, the tribunal's jurisdictional determination is not immune from scrutiny.  That determination is manifestly wrong under *Achmea* and *Komstroy*.  Consequently, the award is not entitled to full faith and credit.  *See Underwriters Nat'l Assurance Co.*, 455 U.S. at 704-05.

2.    The Foreign Sovereign Compulsion Doctrine Bars Recognition and Enforcement

A judgment in Petitioners' favor would also be unwarranted because granting such relief would violate the foreign sovereign compulsion doctrine.  D.E. 18-1 at 43-4.  The court in *Nextera* and *9REN* reasoned that the foreign sovereign compulsion doctrine is not applicable in *Nextera* and *9REN* because "th[ey] [are] not [] antitrust case[s]."  *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *34-35; *9REN*, 2023 U.S. Dist. LEXIS 25860, at *30.  However, that misses the mark.  Under European Commission Decision 2017/7384, Spain is prohibited from paying "any compensation which an Arbitration Tribunal were to grant" to investors like Petitioners.  *Id.* at ¶ 165 (D.E. 18-50).  *See also* European Commission Decision 2021/NN, *State aid Case SA. 54155—Arbitration award to Antin—Spain*, July 19, 2021 at 30 (D.E. 50-3) ("the Commission wishes to underline Spain's obligation not to pay the compensation [awarded by the tribunal to Petitioners] pending the Commission's formal investigation on the present measure [, i.e., the arbitral award].").

Where "conduct … has been compelled by [a] foreign government," a defendant is "entitled to assert the defense of foreign government compulsion."  *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*, 830 F.2d 449, 453 (2d Cir. 1987).[13]  While the doctrine has only

---

[13] Though the court in *NextEra* and *9REN* observed that "the D.C. Circuit has not adopted the doctrine," *Nextera*, 2023 U.S. Dist. LEXIS 25862, at *34; *9REN*, 2023 U.S. Dist. LEXIS 25860 at *30, neither the D.C. Circuit nor any other circuit has rejected it.

previously been applied in the antitrust context, it applies with equal force here.  Indeed, Section 441 of the Third Restatement of the Foreign Relations Law of the United States provides that it applies *"[i]n general*."  RESTAT. 3D OF FOREIGN RELATIONS LAW § 441(1) (emphasis added).  And for good reason:  The doctrine affords "protection from being caught between the jaws of [a U.S. court] judgment and the operation of laws in foreign countries."  *Id*., Reporter's notes 1.  It is a particular manifestation of the broader principle that the United States must "not take action that may cause the violation of another nation's laws."  *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1327 n.150 (D.C. Cir. 1980).  And here we are dealing with the laws of the entire European Union.  Should the Court reach the merits, it should respect this principle and deny the Petition.


Dated: March 24, 2023                          Respectfully submitted,

                                               KINGDOM OF SPAIN

                                               By its attorneys,
                                               /s/ Nicholas M. Renzler
                                               Derek C. Smith (D.C. Bar No. 468674)
                                               dcsmith@foleyhoag.com
                                               Diana Tsutieva (D.C. Bar No. 1007818)
                                               dtsutieva@foleyhoag.com
                                               FOLEY HOAG LLP
                                               1717 K Street, NW
                                               Washington, DC 20006-5350
                                               Tel:  202-223-1200

                                               Andrew Z. Schwartz (D.D.C. Bar No. MA0017)
                                               aschwartz@foleyhoag.com
                                               Andrew B. Loewenstein (D.D.C. Bar No. MA0018)
                                               aloewenstein@foleyhoag.com
                                               FOLEY HOAG LLP
                                               155 Seaport Boulevard
                                               Boston, MA 02210-2600
                                               Tel:  617-832-1000

Nicholas M. Renzler (D.C. Bar No. 983359)
nrenzler@foleyhoag.com
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: 212-812-0400

*Attorneys for Respondent*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 24, 2023.

<u>/s/ *Nicholas M. Renzler*                                     </u>
Nicholas M. Renzler