IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., <br><br> *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br> *Respondent*. | **Civil Action No. 1:18-cv-01753-LLA** |

## Joint Status Report

Pursuant to the Court's August 27, 2024 Minute Order, Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. and Respondent the Kingdom of Spain submit this joint status report regarding next steps for this case.

1. On September 13, 2023, this Court stayed this case pending the D.C. Circuit's resolution of *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 23-7031, *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 23-7032, and *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-7038.

2. This Court ordered the parties to meet and confer and, within ten days of the issuance of the *NextEra* mandate, propose next steps for this case, including a proposed briefing schedule, if necessary.

3. The D.C. Circuit issued the mandate in those appeals on December 10, 2024.

4. The parties met and conferred on December 13 and 17 to discuss next steps in light of the mandate's issuance. As detailed below, the parties disagree on whether this Court should lift the stay now or should keep the stay in place pending the disposition of Spain's forthcoming petition for certiorari in *NextEra*, *9REN*, and *Blasket*. The parties agree, however, on the next

steps for this case if the Court agrees with Petitioners and lifts the stay prior to the disposition of Spain's forthcoming petition for certiorari.

5.  If this Court lifts the stay, the parties respectfully propose that this Court order the parties to concurrently file supplemental briefs of no more than twenty (20) pages updating this Court on developments subsequent to this Court staying the case. The parties propose that this Court order the parties to file those supplemental briefs fourteen (14) days after this Court lifts the stay, but in no event earlier than January 24, 2025. The parties further propose that this Court order the parties to concurrently file replies of no more than ten (10) pages to the supplemental briefs fourteen (14) days after the initial supplemental briefs are filed.

6.  The parties respectfully submit that, with the supplementation described above, the parties' briefing on Spain's motion to dismiss will address and allow the Court to resolve all of arguments necessary for entry of judgment, whether in favor of Petitioners or Spain. If the Court grants Spain's motion to dismiss, that will fully dispose of this action. Alternatively, if the Court denies Spain's motion to dismiss, it should direct the parties to jointly file a proposed final judgment. Another Court in this district recently followed this approach in another case that likewise involved enforcement of an arbitral award pursuant to the ICSID Convention: Upon denying Spain's motion to dismiss, the Court granted summary judgment to the petitioner and ordered the parties to "jointly file a proposed final judgment" that "include[d] all elements included in the ICSID Award, including a current calculation of pre- and post-judgment interest" 30-days after its order. *Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2024 WL 4298808, at *14 (D.D.C. Sept. 26, 2024). The parties respectfully suggest that this Court follow the same course.

7. While the parties agree on the next steps this Court should take if it lifts the stay, the parties disagree on whether the Court should leave the stay in place. The parties' respective position on when this Court should lift the stay are set forth below.

### Petitioners' Position

8. The Court should lift the stay, resolve Spain's motion to dismiss, and enter judgment on Petitioners' arbitral award, as the ICSID Convention and its implementing legislation, 22 U.S.C. § 1650a, both contemplate. The D.C. Circuit held that the arbitration exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(6), conferred subject-matter jurisdiction on district courts to enforce arbitral awards—indistinguishable from the award Petitioners seek to enforce here—issued against Spain pursuant to the Energy Charter Treaty, notwithstanding the same "intra-EU objection" Spain raises here. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100-05 (D.C. Cir. 2024); ECF No. 18-1, at 19-29 (Spain's brief in support of its motion to dismiss). The Court also rejected Spain's *forum non conveniens* defense, *NextEra*, 112 F.4th at 1105, foreclosing Spain's identical defense here, ECF No. 18-1, at 34-35. The D.C. Circuit's decision leaves open only Spain's remaining "merits" arguments for dismissal under the ICSID Convention and 22 U.S.C. § 1650a. But those authorities do not permit courts "to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 514 (D.C. Cir. 2023). Even the "extremely limited" defenses to enforcement of an arbitration award under the Federal Arbitration Act are "unavailable to ICSID award-debtors in federal court enforcement proceedings." *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019) (quoting *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of*

*Venezuela*, 863 F.3d 96, 120-21 (2d Cir. 2017)).  This Court should therefore proceed to reject Spain's remaining arguments for dismissal and enter judgment in favor of Petitioners.

9.      Spain nonetheless seeks to stay this case while it seeks Supreme Court review of the D.C. Circuit's decision in *NextEra*.  But Spain declined to seek a stay of the D.C. Circuit's mandate, which now has returned jurisdiction to the district courts in the three cases on appeal.  Two of those cases are already proceeding apace.  *See* Mot. for Summary Judgment, *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, No. 1:19-cv-1618 (D.D.C. Dec. 12, 2024); Mot. for Summary Judgment, *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 1:19-cv-1871 (D.D.C. Dec. 17, 2024).  A stay in this case would disadvantage Petitioners vis-à-vis those claimants.  And Spain's decision to seek stays on a case-by-case basis, rather than seeking to stay the mandate—which would have effectively left in place the stay entered by this Court in this case and those entered by others in this district in the other ECT-arbitration-award enforcement actions pending against Spain—risks different judges reaching different results.  The inequity of Spain's decision to forego a request for an across-the-board stay to the D.C. Circuit in favor of piecemeal stay requests to each district court is a sufficient ground for this court to exercise its discretion to decline Spain's request to extend the stay.

10.     Regardless, Spain cannot meet its burden to continue the stay.  Any party—even a foreign state—that "seek[s] a stay" of a lawsuit against it while it petitions the Supreme Court for certiorari "must show that the stay is warranted upon consideration of four factors: (1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *de Csepel v. Hungary*, 2022 WL 3026998, at *2 (D.D.C. Aug. 1, 2022); *see also Kurd v. Republic of Turkey*, 630 F. Supp.

3d 164, 167-68 (D.D.C. 2022) (same); *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 185 F. Supp. 3d 233, 236 (D.D.C. 2016) (same).  None of those factors warrants a stay.

11.     *First*, Spain is not likely to "'prevail on the merits' of its petition for writ of certiorari." *Kurd*, 630 F. Supp. 3d at 168 (quoting *Cuomo v. United States NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985)).  The Supreme Court is not even likely to hear the case on the merits, much less reverse.

12.     In a thorough decision, the D.C. Circuit held that federal courts have jurisdiction over cases to confirm arbitration awards issued pursuant to the Energy Charter Treaty.  *See NextEra*, 112 F.4th at 1100-05.  That decision followed from the arbitration exception's plain text, which applies to awards issued pursuant to arbitration agreements made "for the benefit" of a private party, 28 U.S.C. § 1605(a)(6), and the Supreme Court's holding that an investment treaty's arbitration provision is "an already-binding arbitration contract" between nations, *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 41 (2014).  Spain petitioned for rehearing en banc, but it did not even attempt to identify a circuit split as to any aspect of the panel's holding on subject-matter jurisdiction.  The D.C. Circuit thus denied rehearing without any member of the court requesting a vote.  Spain allowed the mandate to issue without seeking a stay.

13.     The case for denying a stay here is thus even stronger than in *Kurd*, where the court held that Turkey was "unlikely to succeed before the Supreme Court"—and thus denied a stay—because the panel's decision was "comprehensive and well-reasoned," "no dissenting opinion" was filed, and "en banc consideration was denied."  630 F. Supp. 3d at 168.  Here, all of those factors are present, plus Spain's rehearing petition failed to identify a circuit split and did not even garner a single request for a vote.

14. Indeed, Spain's submission in this joint status report still identifies no circuit split on the D.C. Circuit's jurisdictional ruling. Spain does point to a purported split between the D.C. Circuit and the Second Circuit on its *forum non conveniens* defense, but any perceived daylight between those courts on that issue is unlikely to merit the Supreme Court's attention. The Court has twice rejected petitions for certiorari on that same, shallow, decades-old alleged conflict in the last seven years alone. *See Ukraine v. PAO Tatneft*, No. 22-19 (U.S. Oct. 3, 2022); *Government of Belize v. Belize Social Dev. Ltd.*, No. 15-830 (U.S. Jan. 9, 2017). Moreover, because that issue does not involve whether Spain "is entitled to sovereign immunity," Spain cannot establish "the irreparable injury of being forced to litigate despite being entitled to sovereign immunity" based on a petition for certiorari on that issue. *de Csepel*, 2022 WL 3026998, at *3.

15. Recognizing that its low likelihood of success dooms its stay request, Spain attempts to lower the burden and contends that in this "procedural posture" it must show only a "serious legal question" to justify a stay. That is not the law. There is no special, laxer test courts apply when a party seeks a stay pending potential Supreme Court review: in this posture, as in any, the party seeking a stay must show a likelihood of success, irreparable harm, and that the equities justify a stay. *See Nken v. Holder*, 556 U.S. 418 (2009). To be sure, courts in this district have continued to "analyze the factors on a sliding scale"—despite "the D.C. Circuit's … suggest[ing] … that *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)" forbids it. *Ala. Ass'n of Realtors v. U.S. Dep't of Health and Human Servs.*, 539 F. Supp. 3d 211, 213 (D.D.C. 2021) (discussing *Sherley v. Sebelius*, 644 F.3d 388, 392-92 (D.C. Cir. 2011)). And accordingly, courts have considered stay applications where the movant—like Spain—cannot show that they are more likely than not to win certiorari and then reversal, so instead attempts to show that they are likely enough to succeed because they have raised a "serious legal question." *de Csepel*, 2022 WL

3026998, at *2; *see also Philipp v. Federal Republic of Germany*, 436 F. Supp. 3d 61, 65 (D.D.C. 2020). But the party still needs to show at least *some* likelihood of success on the merits, and Spain cannot do that here because it has not articulated any plausibly cert-worthy question. Moreover, because it is an instantiation of the "sliding scale" approach, that lower standard can be used only if "the other factors *strongly favor* a stay," *Loving v. I.R.S.*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013) (emphasis added); *see also de Csepel*, 2022 WL 3026998, at *2. Here, they do not. *See infra* 7-9. Spain cannot carry its burden to show that it is likely to "prevail on the merits" of its petition for certiorari. *Kurd*, 630 F. Supp. 3d at 168.

16. *Second*, Spain cannot show that it *"will be irreparably harmed absent a stay." de Csepel*, 2022 WL 3026998, at *2. Spain asserts that its immunity would be "irretrievably lost if [it] is forced to litigate," *id.* at *3, but Spain's motion to dismiss is fully briefed, and any further briefing this Court may order would come only at Spain's own urging. Thus, the "concerns about requiring a foreign sovereign to incur the costs of litigation are not present here." *Kurd*, 630 F. Supp. 3d at 169; *see also Hulley Enterprises, Ltd. v. Russian Federation*, 2022 WL 1102200, at *8 (D.D.C. Apr. 13, 2022) (explaining that there was "little identifiable hardship" from proceedings that would have only "supplemental briefing" that was "neither required nor necessary"). Furthermore, any argument that Spain would be irreparably harmed by being forced to litigate "has considerably less force here, given that the litigation has been ongoing for [numerous] years already." *de Csepel*, 2022 WL 3026998, at *3.

17. *Third*, while Spain will not be harmed by proceeding, a stay will harm Petitioners by disadvantaging them relative to Spain's other creditors whose cases are not stayed. There are at least 15 Energy Charter Treaty enforcement actions against Spain in this district, one of which

has already reached judgment.[1]  Most were similarly stayed pending issuance of the D.C. Circuit's mandate in *NextEra*, *9REN*, and *Blasket*.  Now that the mandate has issued—again, without any attempt by Spain to stay it—*NextEra* and *9REN*, at least, are proceeding toward judgment.  And Spain's seeking individualized stays on a case-by-case basis will inevitably result in at least some cases now proceeding.  That disadvantages any petitioner whose case is stayed.  It is black-letter law that "'the first in time is the first in right,'" and "'a prior lien gives a prior claim.'"  *United States v. City of New Britain*, 347 U.S. 81, 85 (1954).  Any delay here jeopardizes Petitioners' ability to obtain priority liens on Spain's assets and prejudices their ability to enforce the Award.

18.     And to be clear, the stay Spain requests is a long one.  Spain has not yet filed its petition for certiorari.  Assuming it does not request an extension, its petition would be due on March 3, 2025, and so has no prospect of being granted and briefed this Term.  *See* S. Ct. R. 13.1, 13.3.  If the Supreme Court granted certiorari, the Court may not decide the case before June 2026.  During that time, other creditors could place liens on Spain's assets or Spain could funnel assets out of the country, frustrating enforcement altogether.

---

[1] *See JGC Holdings Corporation v. Kingdom of Spain* No. 1:23-cv-2701 (D.D.C. filed Sept. 15, 2023); *Swiss Renewable Power Partners S.A.R.L. v. Kingdom of Spain*, No. 1:21-cv-3249 (D.D.C. filed February 24, 2023); *Baywa R.E. v. Kingdom of Spain*, No. 1:22-cv-2403 (D.D.C. filed August 12, 2022); *RWE Renewables GMBH v. Kingdom of Spain*, No. 1:21-cv-03232 (D.DC. filed Dec. 9, 2021); *AES Solar Energy Coöperatief U.A. v. Kingdom of Spain*, No. 1:21-cv-3249 (D.D.C. filed December 10, 2021); *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 1:21-cv-2463 (D.D.C. filed September 20, 2021); *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 1:20-cv-1708 (D.D.C. filed June 23, 2020); *Watkins Holdings S.R.L. et al v. Kingdom of Spain*, No. 1:20-cv-1081 (D.D.C. filed April 24, 2020); *Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*, No. 1:20-cv-925 (D.D.C., transferred from S.D.N.Y. April 7, 2020); *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. 1:20-cv-817 (D.D.C. filed March 25, 2020); *RREEF Infrastructure (G.P.) Limited v. Kingdom of Spain*, No. 1:19-cv-3783 (D.D.C. filed December 19, 2019); *9Ren Holding S.A.R.L. v. Kingdom of Spain*, No. 1:19-cv-1871 (D.D.C. filed June 25, 2019); *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 1:19-cv-1618 (D.D.C. filed June 3, 2019); *Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*, No. 1:18- cv-1753 (D.D.C. filed July 27, 2018); *Novenergia II – Energy and Environment (SCA) v. Kingdom of Spain*, No. 1:18-cv-1148 (D.D.C. filed May 16, 2018).

19. Finally, the public interest counsels against a stay. Stays in arbitration enforcement cases are appropriate only if they further "the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 879 (D.C. Cir. 2021). Doubly so in ICSID cases, where courts must give the award "full faith and credit." 22 U.S.C. § 1650a(a). To whatever extent there is a public "interest in ensuring that foreign sovereigns are not inappropriately subjected to suit in the United States," that interest is not implicated here because it is not "inappropriate" to "subjec[t] [Spain] to suit based on specific facts and circumstances at issue in this case." *Kurd*, 630 F. Supp. 3d at 169.

**Spain's Position**

8. Petitioners insist that Spain, a foreign sovereign, be forced to litigate the merits of this action at the same time that the Supreme Court considers whether this Court even has subject-matter jurisdiction. That not only risks wasting judicial resources—it "frustrate[s] the significance and benefit of entitlement to [sovereign] immunity." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 584 (D.C. Cir. 2020) (citation omitted). After all, "consideration of the merits [is] itself an infringement on foreign sovereign immunity." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 864 (2008); *see also, e.g.*, *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990) (stressing that "sovereign immunity is an immunity from . . . [the] burdens of litigation" (citation omitted)). To "preserve the full scope of that immunity," *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000), this Court should keep the stay in place pending the Supreme Court's disposition of Spain's forthcoming petition for a writ of certiorari.

9.  Spain will timely file a petition for a writ of certiorari with the U.S. Supreme Court. Spain's petition will seek review of the D.C. Circuit's decision holding (1) that the FSIA's arbitration exception provides jurisdiction to confirm arbitral awards against Spain that were issued to EU nationals pursuant to the Energy Charter Treaty ("ECT") even though EU law bars Spain from agreeing to arbitrate such intra-EU disputes and (2) that *forum non conveniens* is categorically unavailable in proceedings to confirm a foreign arbitral award, even though the Second Circuit has held the opposite. *See Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 386 (2d Cir. 2011).

10. This Court has "broad discretion to stay all proceedings in a case while awaiting the outcome of other proceedings." *Faizi v. Garland*, No. 24-cv-839, 2024 WL 5075824, at *2 (D.D.C. Dec. 11, 2024); *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Courts consider four factors when exercising that discretion: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Philipp v. Fed. Republic of Germany*, 436 F. Supp. 3d 61, 65 (D.D.C. 2020) (quoting *Cuomo v. United States NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985)). All four factors weigh in favor of keeping the stay in place.

11. *First*, the merits of Spain's appeal weigh in favor of a stay. *Id.* Given the current "procedural posture," this factor can be satisfied so long as a "serious legal question is presented." *Id.* (citation omitted); *see also, e.g.*, *Republican Nat'l Comm. v. Pelosi*, No. 22-cv-659, 2022 WL 1604670, at *3 (D.D.C. May 20, 2022). A legal question is serious when it is "substantial" enough to constitute a "fair ground for litigation." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). Here, Spain's forthcoming petition presents not

one but two serious legal questions. Whether the FSIA's arbitration exception provides jurisdiction to confirm intra-EU ECT awards previously divided courts in this district and yielded hundreds of pages of briefing before the D.C. Circuit. *See Republican Nat'l Comm.*, 2022 WL 1604670, at *3 ("[c]haracteristics of a serious legal question include that the question is 'complicated'" and that there is "persuasive authority" supporting it (citations omitted)). And with respect to *forum non conveniens*, there is an entrenched circuit split over whether that doctrine is available in proceedings to confirm a foreign arbitral award. *See LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021) (recognizing split); *Figueiredo*, 665 F.3d at 390-91 (same). Accordingly, even if the D.C. Circuit's decision is as "well-reasoned" as Petitioners claim, this factor weighs in favor of keeping the stay in place. *See Philipp*, 436 F. Supp. 3d at 66.

12.    *Second*, in the absence of a stay, Spain will suffer irreparable harm by being forced to litigate this case before a court that may lack jurisdiction. As courts in this district have recognized, a foreign sovereign suffers irreparable harm when they are forced "to incur the time and expenses of litigation" in this context. *Philipp*, 436 F. Supp. 3d at 68 (D.D.C. 2020) (granting stay pending resolution of Germany's petition for certiorari). Petitioners attempt to minimize that harm by stressing that the parties are proposing only supplemental briefing on Spain's motion to dismiss, but that ignores that sovereign immunity is "an immunity from the burdens of becoming involved in *any* part of the litigation process." *Process*, 27 F.4th at 324 (emphasis added and citation omitted).

13.    *Third*, Petitioners will suffer no meaningful harm from keeping the stay in place. "[B]riefly staying this matter" while the Supreme Court considers Spain's "request for a writ of certiorari" poses no risk of weakening Petitioners' "position in this litigation," so this factor "weighs in favor" of keeping the stay in place. *See Philipp*, 436 F. Supp. 3d at 69. Petitioners

insist that the stay could be a "long one," but that's only true if the Supreme Court "grant[s] the petition for certiorari," which would only make it *more* appropriate to stay this case. Petitioners also contend that, if the stay remains in place, they risk being disadvantaged "relative to Spain's other creditors," like NextEra and 9REN, whose cases in this district are supposedly "proceeding toward judgment." Those concerns are misplaced—Spain will seek to stay all of the Energy Charter Treaty enforcement against it in this district pending resolution of Spain's forthcoming petition for a writ of certiorari.

14. *Finally*, there is a strong public interest in ensuring that Spain is not improperly subject to suit in the United States. As the Supreme Court has recognized, "[a]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983). Thus, as the United States itself explained in the proceedings before the D.C. Circuit, there is a strong federal "interest in ensuring that courts correctly interpret the Foreign Sovereign Immunities Act," U.S. Br. at 1, 2024 WL 402588, which weighs in favor of keeping the stay in place until the Supreme Court weighs in.

Dated: December 20, 2024

Respectfully submitted,

| | |
|---|---|
| /s/ *Benjamin W. Graham* | /s/ *Matthew McGill* |
| Jonathan M. Landy (D.C. Bar No. 467847) | Matthew McGill (D.C. Bar No. 481430) |
| Benjamin W. Graham (D.C. Bar No. 1044724) | mmcgill@gibsondunn.com |
| WILLIAMS & CONNOLLY LLP | Matthew S. Rozen (D.C. Bar No. 1023209) |
| 680 Maine Avenue, S.W. | mrozen@gibsondunn.com |
| Washington, DC 20024 | GIBSON, DUNN & CRUTCHER LLP |
| Tel.:  (202) 434-5000 | 1700 M. Street, N.W. |
| Fax:  (202) 434-5029 | Washington, DC 20036 |
| Email: jlandy@wc.com | Telephone: 202.955.8500 |
| | Facsimile: 202.467.0539 |
| *Attorneys for Respondent the Kingdom of Spain* | *Attorneys for Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V.* |

**CERTIFICATE OF SERVICE**

      I hereby certify that, on December 20, 2024, I caused the foregoing Joint Status Report to be filed with the Clerk for the U.S. District Court for the District of Columbia through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

/s/ *Matthew McGill*
Matthew McGill
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
mmcgill@gibsondunn.com