IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., *Petitioners*, v. Kingdom of Spain, *Respondent*. | **Civil Action No. 1:18-cv-01753-LLA** |

**<u>Petitioners' Supplemental Brief</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................... ii
INTRODUCTION .........................................................................................................................1
BACKGROUND ...........................................................................................................................2
ARGUMENT .................................................................................................................................4
    I.    *NextEra* Conclusively Resolves Spain's Subject-Matter Jurisdiction Argument ...............4
    II.   *JGC* Correctly Disposes Of Spain's Remaining Arguments ...............................................5
        A.  Spain's Foreign Sovereign Compulsion Argument Is Identical To The Argument Rejected In *JGC*, And Fails For The Same Reason .......................................................5
        B.  *JGC* Explains Why Spain's Challenges To The Tribunal's Jurisdiction Do Not Bear On Full Faith And Credit ......................................................................................7
CONCLUSION............................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blasket Renewable Investments, LLC v. Kingdom of Spain*,
 2024 WL 4298808 (D.D.C. Sept. 26, 2024) ........................................ 2, 4, 5, 6, 7, 8, 9, 10, 11

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
 456 U.S. 694 (1982) ........................................................................................................ 8, 9, 10

*NextEra Energy Global Holdings B.V. v. Kingdom of Spain*,
 112 F.4th 1088 (D.C. Cir. 2024) ........................................................................... 1, 3, 4, 5

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
 87 F.4th 510 (D.C. Cir. 2023) ............................................................................................ 2, 3, 8

**Statutes**

22 U.S.C. § 1650a .................................................................................................................. 2, 3, 6, 7

**Treaties**

ICSID Convention, art. 25 ............................................................................................................. 9

ICSID Convention, art. 41 .......................................................................................................... 8, 9

ICSID Convention, art. 53 ............................................................................................................. 7

ICSID Convention, art. 54 ............................................................................................................. 6

**Other Authorities**

Restatement (Third) of Foreign Relations Law § 441(1)(a) ........................................................ 7

**INTRODUCTION**

Pursuant to this Court's January 27, 2025 minute order, Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. ("Petitioners") respectfully submit this supplemental brief in support of their brief in opposition to the motion filed by Respondent the Kingdom of Spain ("Spain") to dismiss this arbitration award enforcement action. Spain's motion has been fully briefed since February 2019. *See* ECF No. 18-1 ("MTD"); ECF No. 23 ("MTD Opp."); ECF No. 25 ("MTD Reply"); ECF No. 50-1 ("*Amicus* Br."); ECF No. 61 ("Resp. to *Amicus* Br."); *see also* ECF Nos. 20, 21, and 22 (declarations in support of MTD Opp.).[1] This Court stayed this case from August 28, 2019 to January 28, 2022 and from September 13, 2023 to January 27, 2025, and the motion remains pending. The parties agree that Spain's motion "will address and allow the Court to resolve all of arguments necessary for entry of judgment." ECF No. 97, at 2 (joint status report). As Spain concedes, therefore, "if the Court denies Spain's motion to dismiss, it should direct the parties to jointly file a proposed final judgment." *Id.*

Since the most recent stay order, two recent decisions have rejected each of the arguments in Spain's motion to dismiss. In *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024)—which involved materially indistinguishable arguments by Spain to dismiss materially indistinguishable arbitration enforcement actions against it—the D.C. Circuit conclusively rejected Spain's objections to subject-matter jurisdiction under the Foreign

---

[1] Over the past six years, the parties have also filed numerous notices of supplemental authority and responses in connection with the pending motion to dismiss. Many of these notices relate to either: (1) Spain's request for a stay of enforcement, *see* ECF No. 35, which the Court lifted three years ago, *see* Jan. 28, 2022 Minute Order; or (2) the issue of subject-matter jurisdiction, which as explained herein, has been resolved by intervening D.C. Circuit precedent, *see* ECF Nos. 48, at 4-9; 52; 55; 57. The following notices of supplemental authority and responses relate to the portions of Spain's motion to dismiss that remain pending before this Court: ECF Nos. 24; 47; 48, at 1-4; 53; 54; 59; 60; 64; 65; 66; 67. Should the Court nonetheless conclude that any other notices of supplemental authority or responses thereto remain relevant at this stage, Blasket requests leave to respond to any new arguments in those filings to which it has not had an opportunity to respond.

Sovereign Immunities Act ("FSIA"). Then in *Blasket Renewable Investments, LLC v. Kingdom of Spain*, 2024 WL 4298808 (D.D.C. Sept. 26, 2024)—which involved closely overlapping defenses to another similar arbitration enforcement action against Spain—Judge Contreras rejected each of Spain's remaining arguments. This brief refers to Judge Contreras's decision as *JGC* (based on the name of the original petitioner, JGC Holdings Corp.) to avoid confusion with other arbitration enforcement cases against Spain in which Blasket is the petitioner.

This Court should follow *NextEra* and *JGC* and reject Spain's motion to dismiss and direct the parties to jointly file a proposed final judgment.

## BACKGROUND

This proceeding concerns enforcement of a €101 million plus interest arbitral award (the "Award") issued against Spain to the Petitioners, which are Luxembourg- and Netherlands-based companies. The arbitration was conducted pursuant to the Energy Charter Treaty ("ECT") by a tribunal (the "Tribunal") constituted by the International Centre for Settlement of Investment Disputes ("ICSID").

Because the Award was issued pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"), its enforcement is governed by 22 U.S.C. § 1650a, which provides that "[t]he pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). Under that standard, district courts are "'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award.'" *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023). Instead, "'they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award.'" *Id*. "As a result, a court may not deny a judgment full

2

faith and credit because 'it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits.'" *Id.* at 519; *see* MTD Opp. 16-18.

Spain has nonetheless raised three arguments for dismissal. *First*, it argues that this Court lacks subject-matter jurisdiction because Spain is immune from jurisdiction under the FSIA. MTD 19-28. The crux of that argument is that no valid arbitration agreement exists between Spain and Petitioners because European Union ("EU") law purportedly bars application of the ECT's arbitration provision to so called "intra-EU" disputes—*i.e.*, claims by EU investors against an EU member state. *Second*, Spain argues that enforcing the Award would violate the foreign sovereign compulsion doctrine because EU state-aid law purportedly prohibits Spain from paying the Award. *Id.* at 34-35. *Third*, Spain argues that the Award should be denied full faith and credit under 22 U.S.C. § 1650a because Spain's intra-EU objection and its arguments about state aid both purportedly deprived the Tribunal of jurisdiction to issue the Award. *Id.* at 29-33.[2]

On September 13, 2023, this Court stayed proceedings on Spain's motion pending resolution of the three consolidated D.C. Circuit appeals decided in *NextEra*. The Court reasoned that the decision in those appeals "is likely to be dispositive of this case" because the central legal issue in the Spain Appeals is the same which is at issue in this case. Minute Order (Sept. 13, 2023).

The D.C. Circuit has now issued its decision in *NextEra*. The decision expressly rejects Spain's objection to jurisdiction under the FSIA, 112 F.4th at 1100, leaving Spain with only its purported "merits" arguments based on foreign sovereign compulsion and full faith and credit.

After *NextEra* was decided, on September 26, 2024, Judge Contreras issued his decision

---

[2] Spain also argued that the Award is not entitled to full faith and credit because "it is in the process of being rectified." MTD 33. That argument is moot, however, as rectification proceedings concluded in February 2019, resulting in a decision amending compensatory damages specified in the Award from €112 million to €101 million. *See* ECF No. 24, at 2 (notice of supplemental authority); MTD Opp. 42-43.

3

in *JGC*, granting the first summary judgment decision—and later entering the first judgment—in any of the numerous similar arbitration enforcement actions against Spain that are now pending in this District. In doing so, the Court rejected state-aid arguments identical to those that Spain raises here with regard to full faith and credit and the foreign sovereign compulsion doctrine. 2024 WL 4298808, at *8-9, 12-14. Because the arbitration in *JGC* was brought by a Japanese investor, Spain did not raise the intra-EU objection it raises here—*i.e.*, it did not argue that the award should be denied full faith and credit because the arbitral tribunal lacked jurisdiction over intra-EU disputes. But Judge Contreras nonetheless rejected the central premise of that argument in addressing Spain's state-aid arguments, concluding that full faith and credit cannot be denied to an ICSID award based on a "collateral attack" on the tribunal's jurisdiction where the objection to jurisdiction "was actually litigated, or could have been litigated" before the tribunal. *Id.* at *9. The Court thus denied Spain's motion to dismiss, granted summary judgment to Blasket, and ordered the parties to "jointly file a proposed final judgment" within 30 days. *Id*. at *14.

## ARGUMENT

*NextEra* and *JGC* resolve this case. *NextEra* conclusively rejects Spain's objection to subject-matter jurisdiction under the FSIA. And *JGC* rejects Spain's remaining arguments for dismissal. This Court should follow those decisions, deny Spain's motion to dismiss, and enter judgment for Petitioners.

### I.   *NextEra* Conclusively Resolves Spain's Subject-Matter Jurisdiction Argument

*NextEra* involved materially indistinguishable actions to enforce awards issued under the ECT against Spain. *See* 112 F.4th at 1095. Spain contended that the district courts lacked subject-matter jurisdiction under the FSIA, raising the same "intra-EU objection" it raises here—that EU law bars application of the ECT's arbitration provision to intra-EU disputes—and arguing that the arbitration exception to the FSIA thus did not apply. *See id.* at 1102.

The D.C. Circuit rejected Spain's argument and held "that the district courts have jurisdiction under the FSIA's arbitration exception to confirm these arbitration awards against Spain," because the ECT's arbitration provision is itself a "'completed agreement'" between signatory countries to arbitrate disputes for the benefit of private investors, *NextEra*, 112 F.4th at 1094, 1101.  That resolves Spain's argument that this Court lacks jurisdiction.  *See* MTD 19-28.

II.    *JGC* **Correctly Disposes Of Spain's Remaining Arguments**

Just as *NextEra* resolves Spain's identical subject-matter jurisdiction argument, *JGC* disposes of Spain's identical foreign sovereign compulsion and full faith and credit arguments.  Like this case, *see* MTD Opp. 5-9, *JGC* concerned an action to enforce an ICSID award issued against Spain under the ECT for Spain's unlawful retrenchment on renewable energy incentives that had induced investment in its territory.  2024 WL 4298808, at *2-3.  There, as here, *see* MTD Opp. 16-18, 36-38, the petitioner explained in its opposition to Spain's motion to dismiss that because the ICSID award was entitled to full faith and credit, Spain lacked any defense to the enforcement of the award.  *See JGC*, 2024 WL 4298808, at *6.  Spain nevertheless raised the same foreign sovereign compulsion defense it raises here, which *JGC* squarely rejected.  *Id.* at *12; MTD 34-35.  Spain also argued, as here, MTD 32-33, that the petitioner's award was not entitled to full faith and credit because the tribunal did not have "jurisdiction" to award what Spain deemed unlawful state aid, *JGC*, 2024 WL 4298808, at *8.  In a carefully reasoned decision, the Court rejected both arguments.  The identical foreign sovereign compulsion argument and overlapping challenges to the Tribunal's jurisdiction that Spain raises here each rest on the same premises that *JGC* expressly rejected.  This Court should follow *JGC*'s reasoning and reject both defenses.

    A.    **Spain's Foreign Sovereign Compulsion Argument Is Identical To The Argument Rejected In *JGC*, And Fails For The Same Reason**

As here, *see* MTD 32-33, Spain contended in *JGC* that the foreign sovereign compulsion

5

doctrine applied because entering judgment on the award would purportedly compel Spain to violate EU law, *see* 2024 WL 4298808, at *12. As here, *see* MTD Opp. 38-40, Blasket countered that "the foreign sovereign compulsion doctrine does not apply because it is the ICSID Convention, and not a U.S. court, that requires Spain to comply with the Award; the doctrine applies to private parties and not governments; and the doctrine applies only where there is a realistic possibility that the foreign entity will face severe sanctions," *JGC*, 2024 WL 4298808, at *12.

The *JGC* Court "agree[d] with Petitioner," concluding that the "comity principles" underlying the foreign sovereign compulsion doctrine "do not favor barring enforcement of a judgment . . . where Petitioner seeks recognition of an ICSID award." *JGC*, 2024 WL 4298808, at *12-13. To the contrary, "international comity" *favored* "enforcement of the Award" given that the award "resulted from several years of arbitration proceedings in an international forum with its own international legal personality." *Id.* at *13. The structure of the ICSID Convention and its implementing legislation, moreover, "further demonstrate[d] that comity concerns cannot prevent enforcement of an arbitral award." *Id*. Applying a "foreign sovereign compulsion" exception would be at odds with the ICSID Convention's requirement that "final awards are binding and not subject to appeal or any other remedy" and Congress's clear "inten[t] for ICSID awards to be strictly enforced" under § 1650a. *Id.*

The Court recognized that failing to enforce an ICSID award would "place both Spain *and* the United States in conflict with their obligations under the ICSID Convention to 'recognize an award rendered pursuant to th[e] Convention as binding and enforce the pecuniary obligations imposed by that award.'" *JGC*, 2024 WL 4298808, at *13 (alteration in original) (quoting ICSID Convention, art. 54(1)). Thus, applying the foreign sovereign compulsion doctrine to dismiss the enforcement petition based on Spain's EU law concerns made little sense, as it would still result

6

in both Spain and the United States violating their international legal obligations. *See id.* And in any event, the Court noted, Spain had not shown that it would face any negative consequences from following its obligation under the ICSID Convention to pay the award to the petitioner. *See id.* at *14. That the European Commission theoretically could "bring Spain before the [Court of Justice of the European Union] does not mean that it would do so in this case, where Spain is compelled to pay an award under the ICSID Convention." *Id.*

This Court should reject Spain's foreign sovereign compulsion defense for the same reasons. *See* MTD 34-35. In addition, Spain's foreign sovereign compulsion defense fails for numerous additional reasons set forth in Petitioners' opposition brief: (1) The text of § 1650a provides a categorical command requiring that the Court "shall . . . enforc[e]" the award, leaving no room for a foreign sovereign compulsion exception, *see* MTD Opp. 38; (2) the ICSID Convention already requires Spain to pay ("comply with") the Award, ICSID Convention, art. 53(1), so converting the Award into a U.S. judgment would not compel Spain to "do" anything new, let alone do anything "in another state," Restatement (Third) of Foreign Relations Law § 441(1)(a); MTD Opp. 39; and (3) the doctrine applies only to private parties, not governments, MTD Opp. 39. For all of these reasons, Spain's foreign sovereign compulsion defense lacks merit.

B. *JGC* **Explains Why Spain's Challenges To The Tribunal's Jurisdiction Do Not Bear On Full Faith And Credit**

Spain also argued in *JGC*—as it does here—that the award was not entitled to full faith and credit on the ground that the ICSID tribunal "lacked jurisdiction." Here, Spain argues that the Tribunal lacked jurisdiction in two ways: (1) based on EU state-aid principles; and (2) based on Spain's intra-EU objection. MTD 30-33. In *JGC*, Spain only invoked the first of these grounds, arguing that "any arbitral award would itself constitute state aid under EU law, and the tribunal 'did not have competence' to grant 'state aid in violation of EU law.'" 2024 WL 4298808, at *8.

7

But this distinction is of no moment, because *JGC*'s reasoning—that collaterally attacking an arbitral tribunal's jurisdiction is not a basis for denying full faith and credit to and ICSID award—is entirely sound and forecloses both arguments.

*JGC* explained that Congress did not "authorize[] the Court to consider whether the tribunal exceeded its jurisdiction," because Spain "'had an opportunity to litigate the question of subject-matter jurisdiction,'" foreclosing it from "'reopen[ing] that question in a collateral attack.'" 2024 WL 4298808, at *8-9 (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982)). The Court explained that "'[p]reventing relitigation of issues already decided is the keystone of the full faith and credit obligation,'" *id.* at *7 (quoting *Valores*, 87 F.4th at 519), and that "the bar on collaterally attacking a state court's subject matter jurisdiction is particularly strong in cases where the issue was actually litigated, or could have been litigated, in the first action," *id.* at *9. Importantly, the Court observed, the ICSID Convention makes the arbitral tribunal "the judge of its own competence," *id.* (quoting ICSID Convention, art. 41(1)), and requires the tribunal to "consider objections to its jurisdiction," *id.* (citing ICSID Convention, art. 41(2)). So any objection to an ICSID tribunal's jurisdiction could be litigated in that proceeding. *See id.* The Court therefore determined that because ICSID awards are due full faith and credit, the Court could not second guess the tribunal's jurisdiction—even if the "jurisdictional issue was not 'fully litigated,'" Spain "had an opportunity to litigate the question of subject-matter jurisdiction" before the tribunal, and thus the issue was not subject to a collateral attack. *Id.* at *8-9 (quoting *Ins. Corp. of Ireland*, 456 U.S. at 702 n.9).

This Court should follow *JGC* and reject Spain's identical argument here—that the Tribunal "exceed[ed]" its "jurisdiction" because the Award "constitutes unauthorized state aid" MTD 32-33. As in *JGC*, the ICSID Convention required the Tribunal to determine whether it had

8

jurisdiction, *see* ICSID Convention, arts. 25, 41, so Spain "had an opportunity to litigate the question of subject-matter jurisdiction," 2024 WL 4298808, at *9 (quoting *Ins. Corp. of Ireland*, 456 U.S. at 702 n.9). Indeed, not only did Spain have the opportunity to challenge the Tribunal's jurisdiction, it raised before the Tribunal the same state-aid argument it raises in its motion to dismiss, claiming that any compensation awarded by the Tribunal would be "equivalent to an incompatible State Aid" and that "the Commission has sole competence to declare on the compatibility of an aid with [EU] law." ECF No. 23-3, Ex. D ¶¶ 637, 641. Spain cited the same authorities, *see id.* ¶¶ 635, 640-41, it cites in its motion to dismiss, *see* MTD 32. And it claimed on this basis that the Tribunal lacked jurisdiction—or as Spain put it, "could not make a pronouncement" on the dispute. ECF No. 23-3, Ex. E ¶ 97. The Tribunal recognized and rejected these arguments, *see* ECF No. 1-1, Ex. A ¶¶ 176, 423, 433, 657-58, reasoning that Spain had failed to show "the impact of an[y] alleged illegality resulting from EU state aid rules" on Petitioners' claim, *id.* ¶ 658. Thus, "the bar on collaterally attacking a [prior] court's subject matter jurisdiction . . . where the issue was actually litigated, or could have been litigated, in the first action" squarely applies here. *JGC*, 2024 WL 4298808, at *9.

*JGC* also identifies a second reason why Spain's state-aid challenge to the Tribunal's jurisdiction cannot defeat full faith and credit: EU state-aid law is not even relevant to the Tribunal's jurisdiction. In arguing otherwise, Spain "conflates the Tribunal's jurisdiction over the dispute with an error of law [purportedly] committed during the exercise of that jurisdiction." *JGC*, 2024 WL 4298808, at *8. Spain's state-aid argument was not (in *JGC*)—and is not (here)—that "the Arbitral Tribunal was improperly constituted, or that Spain had not submitted to its authority." *Id.* Rather, properly characterized, Spain contended (and contends) that the Tribunal committed "an error of law" in issuing an "unlawful" "pecuniary award" that did not implicate the tribunal's

9

jurisdiction. *Id.* As in *JGC*, therefore, even if Spain could collaterally attack the Tribunal's jurisdiction, EU state-aid law would still be irrelevant because it does not implicate the Tribunal's jurisdiction. *Id.*

Finally, even if Spain's state-aid objection were relevant to full faith and credit, it would fail on the merits for the reasons stated in Blasket's opposition brief. MTD Opp. 40-42. Spain's state-aid theory—that the renewable energy incentives at issue in the underlying arbitration are unlawful state aid, and that the Award is therefore unlawful state aid too—is flawed, as neither the Award nor a U.S. judgment enforcing it falls within the definition of state aid. The Award does not give Petitioners an economic advantage, but rather compensates Petitioners for damages caused by Spain's retrenchments in violation of the ECT. *Id.* at 41. In addition, Spain cites no authority (other than the European Commission's non-authoritative preliminary views) for the proposition that it could be unlawful for an EU member to pay a U.S. court judgment, or for Spain to adhere to its obligations under the ICSID Convention to "abide by" and "comply with" the Award. *Id.*

Because the arbitration in *JGC* was brought by a Japanese investor, Spain did not invoke—and the Court did not consider—Spain's alternative argument that the intra-EU objection deprives the Tribunal of jurisdiction. But *JGC*'s reasoning equally defeats that argument. Just as with its state-aid argument, Spain "had an opportunity to litigate the question of subject-matter jurisdiction," including the question whether the Tribunal had jurisdiction over intra-EU disputes. *JGC*, 2024 WL 4298808, at *9 (quoting *Ins. Corp. of Ireland*, 456 U.S. at 702 n.9). And Spain *did* in fact litigate that argument, both before the Tribunal, which rejected it, *see* ECF No. 1-1, Ex. A ¶¶ 160-73, 212, 224, 748(a); MTD Opp. 17, and before the Annulment Committee, which also rejected it, *see* ECF No. 46-1 ¶¶ 123, 153-160. Under *JGC*'s reasoning, therefore, Spain's intra-EU objection

10

to the Tribunal's jurisdiction cannot deprive the Award of full faith and credit any more than its similar argument based on state-aid. Because Spain "actually litigated" the Tribunal's jurisdiction before the Tribunal, its collateral attack is barred, and the award is due full faith and credit. *JGC*, 2024 WL 4298808, at *9.

And on its own merits, Spain's intra-EU objection fares no better: (1) The scope of the Tribunal's jurisdiction is governed by public international law, not EU law, so Spain cannot invoke the EU's internal law to invalidate its treaty commitments under the ECT, MTD Opp. 28-35; (2) under ordinary treaty interpretation principles, the ECT's arbitration provision plainly applies to intra-EU disputes, *id.* at 22; and (3) contrary to the conclusions of EU courts, the vast majority of the dozens of arbitral decisions that have considered the intra-EU objection have rejected it., ECF No. 63 ¶ 91 & n.63. The Award is therefore entitled to full faith and credit.

## CONCLUSION

For the reasons stated above and in *NextEra* and *JGC*—as well as in Blasket's opposition brief—this Court should deny Spain's motion to dismiss and order the parties within 30 days to jointly file a proposed final judgment enforcing the Award.

Dated: February 10, 2025

Respectfully submitted,

/s/ *Matthew D. McGill*
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2025, I caused a true and correct copy of the foregoing Supplemental Brief to be filed with the Clerk for the U.S. District Court for the District of Columbia through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.

*/s/ Matthew D. McGill*
Matthew D. McGill