IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFRASTRUCTURE SERVICES
LUXEMBOURG S.A.R.L. *et al.*,

        Petitioners,

  v.

KINGDOM OF SPAIN,

        Respondent.

Case No. 1:18-cv-1753-LLA

**REPLY TO PETITIONERS' SUPPLEMENTAL BRIEF RE:**
**THE KINGDOM OF SPAIN'S MOTION TO DISMISS**

Jonathan M. Landy (D.C. Bar No. 467847)
Benjamin W. Graham (D.C. Bar No. 1044724)
Noah C. McCullough (D.C. Bar No. 1672590)
Ayoub Ouederni (D.C. Bar No. 90005248)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC  20024
Tel.:    (202) 434-5000
Fax:    (202) 434-5029
Email:  jlandy@wc.com

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    THE AWARD IS NOT ENTITLED TO FULL FAITH AND CREDIT BECAUSE THE ARBITRATORS LACKED JURISDICTION. ................................................................ 2

    A.    The Lack of Any Arbitration Agreement Between Spain and Petitioners Precludes Enforcement. ................................................................................................. 3

    B.    The Arbitrators Exceeded Any Authority They Did Have by Awarding State Aid. ................................................................................................................. 5

II.    THE FOREIGN SOVEREIGN COMPULSION DOCTRINE BARS ENFORCEMENT OF THE AWARD ................................................................................................... 6

CONCLUSION ....................................................................................................................... 7

**INTRODUCTION**

Petitioners open their supplemental brief with a discussion of subject-matter jurisdiction. *See* ECF No. 104, at 1, 4–5 ("Pet'r's Supp. Br."). Of course, Spain does not dispute that, unless the Supreme Court grants its forthcoming petition for certiorari, the D.C. Circuit's decision in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain* forecloses its Foreign Sovereign Immunities Act ("FSIA") defense. *See* 112 F.4th 1088, 1094, 1105 (D.C. Cir. 2024). But while the D.C. Circuit determined that there was subject-matter jurisdiction under the FSIA, it went out of its way to recognize that the "ultimate enforceability" of these ICSID awards against Spain remained an open question. *Id.* at 1105; *see also, e.g.*, *id.* at 1104 ("[W]e hold only that the district courts have jurisdiction to enforce these arbitration awards. That does not mean they must or should do so."). Indeed, the D.C. Circuit stressed that "whether [the Energy Charter] Treaty's arbitration provision extends to EU nationals and thus whether Spain ultimately entered into legally valid agreements with the companies" was a "merits question" for the district courts to resolve. *Id.*

Spain presents that unanswered "merits question" here. *Id.* Petitioners do not meaningfully dispute the basic tenets of EU law, which should govern the Court's resolution of the merits. Under EU law, Spain did not and could not offer to arbitrate with nationals of an EU Member State. *See, e.g.*, *Slovak Republic v. Achmea B.V.*, ECLI:EU:C:2018:158, ¶¶ 31–33, 62 (holding that the EU's foundational treaties "preclud[ed]" an arbitration "provision in an international agreement concluded between Member States"); *Republic of Moldova v. Komstroy LLC*, ECLI:EU:C:2021:655, ¶ 65 (stressing that "EU law precludes" the Energy Charter Treaty's arbitration provision "from being imposed on Member States as between themselves"). Thus, under binding EU law, the Energy Charter Treaty ("ECT") does not contain a valid offer to arbitrate on the part of Spain. That means the arbitrators here lacked jurisdiction because no

1

arbitration agreement was ever formed.  And regardless, the arbitrators exceeded whatever jurisdiction the ECT provided them by issuing an award of unlawful state aid.

In response, Petitioners ask this Court to brush aside Spain's "EU law concerns" at every turn.  Pet'r's Supp. Br. at 6.  But EU law is inseparable from this case and the underlying dispute between an EU sovereign and EU entities.  EU law plainly controls Spain's capacity to agree to arbitrate with the nationals of other EU member states.  And even if this Court were to interpret the ECT for itself as Petitioners urge, there is a consensus amongst the ECT's signatories that favors Spain.

This Court should not countenance Petitioners' gamesmanship in running to a U.S. court with no connection to this dispute to avoid binding EU law, and should not issue any order that would force Spain to be "caught between the jaws of [a U.S. court] judgment and the operation of [EU] law[]."  Restatement (Third) of Foreign Relations Law § 441 (1987), reporters' note 1 (quotation marks omitted).

## ARGUMENT

**I.     THE AWARD IS NOT ENTITLED TO FULL FAITH AND CREDIT BECAUSE THE ARBITRATORS LACKED JURISDICTION.**

The "pecuniary obligations imposed" by an ICSID award are "given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).  And under "well-established" full faith and credit standards, "want of jurisdiction [i]s an exceptional circumstance in which a judgment may be denied full faith and credit."  *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 519, 521 (D.C. Cir. 2023).  Here, Spain asserts that the arbitrators lacked jurisdiction because:  (1) EU law disabled Spain from agreeing to arbitrate anything with Petitioners and (2) the arbitrators exceeded any authority they supposedly had by awarding state aid in violation of

2

EU law.  *See* ECF No. 18-1 at 19–23, 29–33 ("MTD"); ECF No. 25 at 5–10, 21–22 ("MTD Reply"); ECF No. 105 at 10–19 ("Spain Supp. Br.").

Petitioners do not dispute Spain's account of EU law.  *See* Pet'r's Supp. Br. at 6–11.  Instead, they urge this Court to sidestep "Spain's EU law concerns" in various ways*. Id*. at 6.  This Court should decline that invitation and decide the question that the D.C. Circuit reserved for the district courts.

### A. The Lack of Any Arbitration Agreement Between Spain and Petitioners Precludes Enforcement.

Petitioners contend that *Blasket Renewable Investments, LLC v. Kingdom of Spain*, 2024 WL 4298808 (D.D.C. Sept. 26, 2024) ("*JGC*")[1] "disposes of Spain's . . . full faith and credit arguments."  Pet'r's Supp. Br. at 5.  But, as Petitioners acknowledge, that case was brought by a "Japanese investor" and thus did not consider Spain's primary argument that the Award "should be denied full faith and credit because the arbitral tribunal lacked jurisdiction over intra-EU disputes."  *Id.* at 4, 10.

Still, Petitioners insist that *JGC* stands for the broader proposition that, under the ICSID statute, 22 U.S.C. § 1650a, courts must defer to arbitrators' jurisdictional determinations whenever the jurisdictional question was "actually litigated" or "could have been litigated" in the underlying arbitration.  Pet'r's Supp. Br. at 9 (quoting *JGC*, 2024 WL 4298808, at *9).  Not so.  As Spain has explained, Congress extended "full faith and credit" only to "*pecuniary* obligations imposed by such an award," 22 U.S.C. § 1650a(a) (emphasis added), "*i.e.*, the monetary award itself," Spain Supp. Br. at 11.  The arbitrators' assertion of authority to arbitrate thus gets no special deference.

---

[1] Like Petitioners, Spain refers to this "decision as *JGC* . . . to avoid confusion with other arbitration enforcement cases against Spain in which Blasket is the petitioner."  Pet'r's Supp. Br. at 2.

3

Regardless, it is well established that parties can collaterally attack a court's determination of its jurisdiction—and defeat full faith and credit—when the proceeding "substantially infringed the authority of another tribunal or agency of government." *See id.* at 12 (quoting *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988) (cleaned up)). The arbitrators here "substantially infringed" EU authority by disregarding EU courts' exclusive jurisdiction under EU law, so their jurisdictional rulings are subject to "collateral attack." *Blinder*, 837 F.2d at 1104 (cleaned up); *see* Hindelang Decl. ¶ 50 (explaining that the arbitrators' exercise of jurisdiction "violate[d] core principles of EU law").

Petitioners next suggest that Spain's "intra-EU objection" fails "on its own merits" because the arbitrators' jurisdiction is "governed by public international law." Pet'r's Supp. Br. at 11. But EU law *is* international law: It is the product of "international agreement[s] between the Member States." *Achmea* ¶ 41; *see* Spain Supp. Br. at 3, 16; *see also van Gend & Loos*, ECLI:EU:C:1963:1, ¶ 3 (stressing that the EU "constitutes a new legal order of international law"). By ratifying the EU treaties, EU member states agreed that "relations between the Member States [would] be governed by EU law to the exclusion, if EU law so requires, of any other law." *In re ECHR*, ECLI:EU:C:2014:2454, ¶ 212; *see* Spain Supp. Br. at 3.

Petitioners nonetheless insist that, under "ordinary treaty interpretation principles," the "ECT's arbitration provision plainly applies to intra-EU disputes." Pet'r's Supp. Br. at 11. But, as the Supreme Court has recognized, treaty interpretation is "a matter of determining the parties' intent." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 37 (2014). Petitioners' reading of the ECT is difficult to credit when no ECT signatories accept it and 27 reject it. *See* Spain Supp. Br. at 6, 17 (noting that "Spain, Germany, and twenty-five other ECT signatories have stressed their 'common understanding' that the ECT 'cannot and never could serve as a legal basis for intra-EU arbitration proceedings'") (citation omitted).

4

Petitioners also highlight that the "majority" of "arbitral decisions that have considered the intra-EU objection have rejected it." Pet'r's Supp. Br. at 11. But, as Petitioners concede, the position of these arbitrators is "contrary to the conclusions of EU courts," *id.*, which have repeatedly "set aside" or "invalid[ated] intra-EU awards" like Petitioners' because, without a "valid arbitration agreement," such awards lack a "valid legal basis." Supp. Decl. of Prof. Steffen Hindelang ("Supp. Hindelang Decl.") (Feb. 10, 2025) ¶¶ 36–37 & nn.61–75 (collecting cases).

### B. The Arbitrators Exceeded Any Authority They Did Have by Awarding State Aid.

In any event, the arbitrators here exceeded whatever authority they could have had under Article 26 of the ECT by ordering Spain to pay compensation to Petitioners that constitutes unauthorized state aid. *See* MTD at 32–33; MTD Reply at 22; Spain Supp. Br. at 17–18.

Petitioners resist this conclusion by once again insisting that the arbitrators' jurisdictional determinations are immune from "collateral attack" because Spain litigated this question before the arbitrators. Pet'r's Supp. Br. at 8. That argument falls flat for the reasons explained above. *See supra* pp. 3–4.

Petitioners next contend that "EU state-aid law" is "irrelevant because it does not implicate the Tribunal's jurisdiction." Pet'r's Supp. Br. at 10. But Spain is not asserting that the arbitrators made a mere "error of law" by issuing a "pecuniary award." *Contra* Pet'r's Supp. Br. at 9 (quoting *JGC*, 2024 WL 4298808, at *8). The ECT itself limits the jurisdiction of arbitrators to "decid[ing] the issues in dispute in accordance with . . . applicable rules and principles of international law," ECT, Art. 26(6), which includes EU law, *see Achmea* ¶ 41. The arbitrators here opted to ignore that restriction and exceeded their jurisdiction in a way that encroaches on the European Commission's exclusive authority. *See* Spain Supp. Br. at 17–18.

5

Turning to the "merits" of this jurisdictional challenge, Petitioners claim that Spain has not provided sufficient authority "for the proposition that it could be unlawful for an EU member to pay a U.S. court judgment." Pet'r's Supp. Br. at 10. But that ignores that the European Commission has issued a decision regarding Spain's regulatory regime, which determined that (1) subsidies in the energy sector constitute state aid; (2) Spain's payment of those subsidies without the Commission's approval was "in breach of Article 108(3)" of the TFEU; and (3) "any compensation which an Arbitration Tribunal were to grant to an investor" in respect of the subsidies that were the subject of Spain's regulatory reforms in the energy sector "would constitute in and of itself State aid." Decision 2017/7384 (Nov. 10, 2017) (Hindelang Decl. Ex. 43). Thus, as the D.C. Circuit put it, EU law "prohibit[s] Spain from paying the award[] unless and until the EC grant[s] approval to do so." *NextEra*, 112 F.4th at 1096; *see also* European Commission, Case No. SA.54155 (2021/C) (19 July 2021) (Supp. Hindelang Decl. Ex. 83), ¶ 160 (reiterating that Spain's "obligation not to pay" unauthorized state aid "applies irrespective of . . . the ICSID Convention" given the "primacy" of EU law).

## II.    THE FOREIGN SOVEREIGN COMPULSION DOCTRINE BARS ENFORCEMENT OF THE AWARD.

Even setting the arbitrators' jurisdiction aside, the Award should not be enforced under the foreign sovereign compulsion doctrine because doing so would compel Spain to act in violation of EU law. *See* MTD at 34–35; MTD Reply at 22–24; Spain Supp. Br. at 19–20.

Petitioners insist that the "comity principles" underlying the foreign sovereign compulsion doctrine "do not favor barring enforcement of a judgment where Petitioners seek recognition of an ICSID award." Pet'r's Supp. Br. at 6 (quoting *JGC*, 2024 WL 4298808, at *12–13 (cleaned up)); *see also, e.g.*, *id.* at 7 (insisting the ICSID statute "leav[es] no room for a foreign sovereign compulsion exception"). But that position presumes that "Spain is breaching

the commitments it made to the Netherlands and Luxembourg in the Energy Charter Treaty and the ICSID Convention to arbitrate disputes with their nationals before an ICSID tribunal." *NextEra*, 112 F.4th at 1110. But "those countries do not understand the agreement they made with Spain to obligate Spain to arbitrate with their nationals." *Id.*; *see* Spain Supp. Br. at 17. Because the Award is "based on an interpretation of an international treaty that the treaty signers reject," *NextEra*, 112 F.4th at 1110, applying the foreign sovereign compulsion doctrine to bar enforcement here would not undermine the "efficacy of [the ICSID] framework,"[2] *JGC*, 2024 WL 4298808, at *13 (citation omitted).

Petitioners also urge the Court to reject this defense on the grounds that "converting the award into a U.S. judgment would not compel Spain to 'do' anything new." Pet'r's Supp. Br. at 7. That is a curious argument since the Petition certainly seeks to make Spain do something, namely, "pay EUR 112 million" to Petitioners. ECF No. 1 at 5, 9.

Finally, Petitioners claim that the foreign sovereign compulsion doctrine "applies only to private parties, not governments." Pet'r's Supp. Br. at 7. *JGC* did not embrace this theory, *see* 2024 WL 4298808, at *12, and for good reason: This distinction exists to prevent a foreign sovereign from passing *post hoc* laws to avoid its own obligations and here Spain is bound by its EU law obligations not laws of its own making.

## CONCLUSION

For the foregoing reasons, Spain respectfully requests the Court enter judgment for Spain and dismiss the Petition with prejudice.

---

[2] As Petitioners acknowledge, the Award in *JGC* did not implicate "the intra-EU objection," Pet'r's Supp. Br. at 4, so the Court in *JGC* had no occasion to consider whether the foreign sovereign compulsion doctrine should apply where the relevant sovereigns agree that an ICSID award should not be enforced.

Dated:  February 24, 2025

Respectfully submitted,

*/s/ Jonathan Landy*

Jonathan M. Landy (D.C. Bar No. 467847)
Benjamin W. Graham (D.C. Bar No. 1044724)
Noah C. McCullough (D.C. Bar No. 1672590)
Ayoub Ouederni (D.C. Bar No. 90005248)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC  20024
Tel.:     (202) 434-5000
Fax:     (202) 434-5029
Email:   jlandy@wc.com