IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., <br><br> *Petitioners*, <br><br> v. <br><br> Kingdom of Spain, <br><br> *Respondent*. | Civil Action No. 1:18-cv-01753-LLA |

### Petitioners' Response to Spain's Notice of Supplemental Authority

Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. ("Petitioners") write in response to the notice of supplemental authority filed by the Kingdom of Spain ("Spain") on February 27, 2025. *See* ECF No. 110. Spain's submission concerns a European Union ("EU") Member State domestic court decision addressing a different arbitral award issued against Spain and in favor of a different investor. In the decision, the court determined that Spain's payment of that award would constitute "unlawful state aid" under EU law. ECF No. 110-1, at 36 ¶ 8.3. Spain argues that under the decision, it likewise cannot lawfully pay the award at issue here (the "Award") or a judgment enforcing that Award. ECF No. 110, at 1-2.

Spain's argument is its latest effort to inject complex and irrelevant issues of EU law into this litigation to distract this Court from its straightforward obligation to enforce the Award. As Petitioners have previously explained, 22 U.S.C. § 1650a permits no defenses to enforcement of an ICSID award, and EU state-aid law does not bear on the full faith and credit due to the Award. ECF No. 104 ("Pet'rs Suppl. Br."), at 7-9; ECF No. 23 ("MTD Opp."), at 36-38. *See also Blasket Renewable Investments, LLC v. Kingdom of Spain*, 2024 WL 4298808, at *8-10 (D.D.C. Sept. 26, 2024) ("*JGC*") (rejecting Spain's identical state-aid argument).

1

In any event, the Dutch court's decision in *Koninkrijk Spanje v. AES Solar Energy Coöperatief U.A. et al.*, C/13/728512 / HA ZA 23-64 (Rechtbank Amsterdam Feb. 5, 2025) (Neth.), is wrong.  The arbitral award at issue in the Dutch court's decision (like the Award in this case) does not meet the settled definition of "state aid" because it does not give the award holder an economic advantage; rather, it compensates that party for damages caused by Spain's violation of the Energy Charter Treaty ("ECT").  *See* MTD Opp. 40-41.  The Dutch lower court apparently disagreed, but its view of EU law is not entitled to any special deference from this Court.  The only decisions of an EU court that *might* be "binding on the federal courts" would be those of the EU's "highest court"—the EU Court of Justice.  *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 44 (2018).  Just as "the decrees of 'lower state courts'" are "'not controlling'" in diversity cases "where the highest court of the State has not spoken," *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967), a Dutch lower court's views of EU law do not bind this Court.

Further, the Dutch court's decision mainly addressed the lawfulness of paying an arbitral award, not a U.S. court judgment enforcing that award.  Courts "have long recognized the conceptual difference between arbitral awards and foreign court judgments on arbitral awards." *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 330 (D.C. Cir. 2014).  The Dutch court suggested in passing that its conclusion might apply equally to the payment of obligations imposed by a national court judgment, but the court offered no analysis in support of that position.  ECF No. 110-1, at 15-16 ¶¶ 6.6-6.8.  And the notion that EU law could prohibit EU members from paying a judgment issued by a U.S. court ignores longstanding principles of comity, under which "'final judgments of foreign courts of competent jurisdiction are reciprocally carried into execution.'"  *Hilton v. Guyot*, 159 U.S. 113, 166 (1895).

Even if both the Award and a judgment enforcing it somehow constituted state aid, moreover, that would not prevent Spain from eventually paying those obligations in the future. Contrary to Spain's misleading characterization of the decision as "setting aside" the award, ECF No. 110, at 2, the Dutch court held only that Spain cannot pay the award *temporarily*—until the European Commission determines whether the award constitutes state aid that is "incompatible" with the EU "internal market," ECF No. 110-1, at 36, ¶ 8.6. Neither the European Commission nor the Dutch court determined that the award in that case is incompatible with the EU market, which is the only determination that could plausibly render the award substantively unpayable under EU state-aid law. *See id.* ¶¶ 8.1-8.6. And the Commission is likely to eventually find the Award compatible with the EU internal market—and thus to authorize payment even if the Award were state aid—given that it has previously decided that subsidy schemes similar to those at issue in the arbitration were compatible state aid. MTD Opp. 42; ECF No. 22, ¶ 21.

Either way, the Dutch court decision falls short of satisfying the requirements of the foreign sovereign compulsion doctrine—which is not a defense to enforcement of an ICSID anyway. *See* MTD Opp. 38-39. At a minimum, that doctrine requires Spain to show there is a "realistic possibility" that it will face severe sanctions for complying with a U.S. court order. *United States v. Brodie*, 174 F. Supp. 2d 294, 301 (E.D. Pa. 2001); *see also* MTD Opp. 40. But Spain has not made that showing. "[J]ust because the European Commission 'would be able' to bring Spain before the CJEU does not mean that it would do so in this case, where Spain is compelled to pay an award under the ICSID Convention." *JGC*, 2024 WL 4298808, at *14. Indeed, if Spain really believed that complying with a judgment enforcing the award could result in sanctions, it would have actively advocated to the Commission to authorize payment of the award. Instead, it took the opposite position before both the Commission and the Dutch court. It "submitted" to the

3

Commission "that the award is incompatible State aid," thereby attempting to establish its own liability under EU law. *See* SA.54155 (2021/NN), 2021 O.J. (C450), at 2, https://tinyurl.com/ytv95y7u. And it "argue[d]" to the Dutch court that its "payment obligation from the arbitration award is state aid." *See* ECF No. 110-1, at 6 ¶ 4.2. If anything, the Dutch court's decision shows that Spain will *not* be sanctioned, because EU state-aid law merely requires Spain to pursue any remedies it may have under its "national law." *Id.* at 30 ¶ 7.49; *see also id.* at 36 ¶¶ 8.4-8.6. The foreign sovereign compulsion doctrine thus does not apply.

Dated: March 10, 2025                                                Respectfully submitted,

/s/ *Matthew D. McGill*
Matthew D. McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V.*

4

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I caused a true and correct copy of the foregoing Response to Spain's Notice of Supplemental Authority to be filed with the Clerk for the U.S. District Court for the District of Columbia through the ECF system. Participants in the case who are registered ECF users will be served through the ECF system, as identified by the Notice of Electronic Filing.



*/s/ Matthew D. McGill*
Matthew D. McGill