UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFRASTRUCTURE SERVICES LUXEMBOURG S.A.R.L., *et al.*,<br><br>*Petitioners*,<br><br>v.<br><br>KINGDOM OF SPAIN,<br><br>*Respondent*. | Civil Action No. 18-1753 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., Luxembourg- and Netherlands-based companies, respectively, bring this action seeking to confirm an arbitral award entered in their favor against Respondent, the Kingdom of Spain ("Spain"). ECF No. 1. Pending before the court is Spain's motion to dismiss, ECF No. 18, which is fully briefed, ECF Nos. 18, 19, 23, 25, 104, 105, 108, 109. For the following reasons, the court will deny the motion to dismiss.

     **I. FACTUAL BACKGROUND**

  **A. The Energy Charter Treaty and the ICSID Convention**

The Energy Charter Treaty ("ECT") is a multinational treaty that "establishes a legal framework in order to promote long-term cooperation in the energy field, based on complementarities and mutual benefits." ECT Art. 2. Spain, Luxembourg, and the Netherlands

are all among the ECT's signatories.[1]  As relevant here, the ECT provides that when disputes between signatories related to an energy investment arise, "each Contracting Party . . . gives its unconditional consent to the submission of a dispute to international arbitration."  ECT Art. 26(3)(a).  And where "the Contracting Party of the Investor and the Contracting Party . . . to the dispute are both parties to the ICSID Convention," arbitration must occur under that framework.  *Id.* Art. 26(4)(a)(i).

The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States ("ICSID Convention"), in turn, provides facilities and processes for "conciliation and arbitration of investment disputes between Contracting States and nationals of other Contracting States," ICSID Convention Art. 1, including through adjudication by arbitration tribunals, *id.* Sec. 2.  When arbitration is appropriate, signatories to the ICSID Convention consent to "arbitration to the exclusion of any other remedy," *id.* Art. 26, and agree that "award[s] shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in th[e] Convention," *id.* Art. 53(1).  Parties to the Convention "may enforce . . . [ICSID arbitration] award[s] in or through [their] federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state."  *Id.* Art. 54(1).

The United States, Spain, Netherlands, and Luxembourg are all parties to the Convention.  ECF No. 1 ¶¶ 11, 20.  In the United States, the obligation to enforce ICSID awards is codified at 22 U.S.C. § 1650a, which provides that "pecuniary obligations imposed by [an ICSID] award shall

---

[1] *See* International Energy Charter, *Contracting Parties and Signatories of the Energy Charter Treaty*, https://perma.cc/K6D3-WEQN.

be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."

### B.     The Present Dispute

After Spain enacted legislation that aimed to attract investments in renewable energy production through various financial incentives, Petitioners invested roughly 139.5 million euros in solar power projects in Spain.  ECF No. 1 ¶ 7.  Spain later walked back the legislation, eliminating the financial incentives that had led Petitioners to invest in the Spanish solar energy projects.  *Id.*  Because these investments were protected under the ECT, *id.* ¶ 8, Petitioners requested arbitration by an ICSID tribunal, "contend[ing] that Spain's legislative actions that resulted in the devaluation of Petitioners' investments constituted a breach of Spain's obligations under the ECT," *id.* ¶ 12.  Spain argued that the tribunal lacked jurisdiction because "Article 26 of the ECT does not apply to investors from other [European Union ("EU")] Member States and is limited to investors from states that are *not* members of the EU."  ECF No. 18-1, at 9.

In June 2018, the ICSID tribunal issued an award in Petitioners' favor, determining that Spain had breached its duty to Petitioners under Article 10 of the ECT and ordering Spain to pay 112 million euros in damages plus interest and costs.  ECF No. 1 ¶¶ 14-15.  The next month, Spain submitted a Request for Rectification of the Award based on clerical errors in the tribunal's calculation.  *Id.* ¶ 17.  In February 2019, the panel ruled on this request, amending the award to 101 million euros.  ECF No. 104, at 3 n.2.  In May 2019, Spain applied for annulment of the award, *see* ECF No. 35-1, and in July 2021, an ICSID committee denied the application, *see* ECF Nos. 46, 46-1.

While the ICSID proceedings were ongoing, Petitioners sought confirmation of the arbitration award in this court.  In July 2018, Petitioners filed a petition to confirm the award.  ECF

3

No. 1. Spain moved to dismiss the petition for lack of jurisdiction and failure to state a claim, and it additionally moved for a stay pending the outcome of annulment proceedings. ECF No. 18. The court (Sullivan, J.) stayed the case, ECF No. 36, and the case remained stayed until January 2022, *see* Jan. 28, 2022 Minute Order. In September 2022, the case was referred to Magistrate Judge Upadhyaya. *See* Sep. 22, 2022 Minute Order. In September 2023, Magistrate Judge Upadhyaya stayed the case pending the D.C. Circuit's decision in three related cases that would become *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024), *petition for cert. filed*, *Kingdom of Spain v. Blasket Renewable Invs. LLC*, No. 24-1130. *See* Sep. 13, 2023 Minute Order.

The case was directly reassigned to the undersigned in December 2023. *See* Dec. 22, 2023 Minute Order. After the D.C. Circuit issued its decision in *NextEra*, Spain asked the court to continue to stay the case while it sought certiorari, ECF No. 97, but the court denied the request, ECF No. 103.[2] Accordingly, in January 2025, the court vacated its referral to Magistrate Judge Upadhyaya, lifted the stay, and ordered the parties to submit supplemental briefing on the effect of the *NextEra* decision on the present case. *See* Jan. 27, 2025 Minute Order; ECF No. 103. The parties submitted their supplemental briefs, ECF Nos. 104, 105, 108, 109, and several notices of supplemental authority and responses, ECF Nos. 110 to 114. The court also accepted an amicus brief from the European Commission. ECF No. 107. The matter is now fully briefed and ripe for resolution.

---

[2] Spain filed its petition for certiorari in May 2025. *See Kingdom of Spain v. Blasket Renewable Invs. LLC*, No. 24-1130 (U.S. May 1, 2025).

4

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).[3]

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] Spain also argues that the petition should also be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF No. 18-1, at 19, 23. Under the FSIA, "[i]f service of process has been made under [28 U.S.C.] § 1608, personal jurisdiction over a foreign state exists for every claim over which the court has subject matter jurisdiction." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002); *see* 28 U.S.C. § 1330(b). Because the "FSIA collapses subject matter jurisdiction, *in personam* jurisdiction, and sovereign immunity into a single inquiry," *Price*, 294 F.3d at 89 (discussing *Harris v. VAO Intourist, Moscow*, 481 F. Supp. 1056, 1065 (E.D.N.Y. 1979)), subject-matter and personal jurisdiction will be addressed together.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### III. DISCUSSION

Spain makes three main arguments in support of its motion to dismiss. First, it argues that this court lacks subject-matter jurisdiction because the FSIA's arbitration exception does not apply. ECF No. 18-1, at 19-29. Next, it contends that even if this court had jurisdiction, Petitioners' ICSID award is not entitled to full faith and credit. *Id.* at 29-33. Finally, it posits that this court is barred from enforcing the ICSID arbitral award by the foreign sovereign compulsion doctrine. *Id.* at 34-35. The court considers each argument in turn.

### A. Jurisdiction

The court begins, as it must, with jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Petitioners seek to enforce their award under 22 U.S.C. § 1650a, which implements the ICSID Convention. ECF No. 1, at 1. Spain argues that the FSIA's provision that "a foreign state shall be immune from the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, bars Petitioners' suit unless one of the FSIA's exceptions applies, ECF No. 18-1, at 19; *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court[.]"). Petitioners respond that the FSIA's arbitration and waiver exceptions apply, stripping Spain of its sovereign immunity. ECF No. 23, at 11. Guided by the D.C. Circuit's recent precedent in *NextEra*—which presented virtually identical facts and several identical questions of law—the court easily determines that it has jurisdiction under the FSIA's arbitration exception.

The FSIA's arbitration exception applies:

> in any case . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards[.]

28 U.S.C. § 1605(a)(6). To assure itself that it has jurisdiction under this exception, "a district court must find three 'jurisdictional facts': (1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." *NextEra*, 112 F.4th at 1100 (quoting *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 & n.2 (D.C. Cir. 2015)). A burden-shifting framework applies to the evaluation of these facts: first, Petitioners must satisfy a burden of

7

production as to each fact, and then Spain must meet a burden of persuasion that requires it to "establish the absence of the factual basis by a preponderance of the evidence." *Chevron*, 795 F.3d at 204 (internal quotation marks omitted) (quoting *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008)).

Here, Spain contests only whether an arbitration agreement existed. ECF No. 18-1, at 23. As it did in *NextEra*, Spain contends that as a matter of EU law, it could not have formed an arbitration agreement with Petitioners because an opinion of the European Court of Justice, Case C-741/19, *Republic of Moldova v. Komstroy LLC*, ECLI:EU:C:2021:655 (Sep. 2, 2021), bars intra-EU arbitration. ECF No. 105, at 15-16; *see NextEra*, 112 F.4th at 1102. The D.C. Circuit's opinion in *NextEra* soundly forecloses this argument. There, the Court explained that it did not need to determine whether Spain had entered into arbitration agreements with the specific petitioners because it could easily "conclude that [Spain] entered into an arbitration agreement— the Energy Charter Treaty itself." *NextEra*, 112 F.4th at 1102. And, because the ECT "is 'for the benefit' of [Spain's] investors . . . [it] therefore satisfies the FSIA's arbitration exception. *Id.* (quoting 28 U.S.C. § 1605(a)(6)).

In its supplemental briefs, Spain concedes that the D.C. Circuit determined in *NextEra* that the FSIA's arbitration exception applies because the ECT itself is an agreement to arbitrate, ECF No. 105, at 9-10, and it does not argue that *NextEra* is inapposite, *see generally* ECF Nos. 105, 108. Accordingly, this court determines that it has subject-matter jurisdiction to consider the petition to enforce the ICSID's arbitral award. And, because personal jurisdiction in FSIA cases "exists for every claim over which the court has subject matter jurisdiction," *Price v. Socialist*

8

*People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002); *see* 28 U.S.C. § 1330(b), and service is proper,[4] the court also finds that it has personal jurisdiction over Spain.

### B.     Full Faith and Credit

While Spain acknowledges the D.C. Circuit's holding that this court has jurisdiction under the FSIA's arbitration exception to consider the petition, it points out that the D.C. Circuit did not take a "position on the ultimate enforceability of the[] [arbitral] award[]" and declined to "address the merits question whether [the ECT's] arbitration provision extends to EU nationals and thus whether Spain ultimately entered into legally valid agreements with the companies." *NextEra*, 112 F.4th at 1105-06; *see* ECF No. 105, at 9-10.  Spain maintains that the ICSID arbitrators lacked jurisdiction to issue the award because "Spain never agreed to arbitrate anything with Petitioners" and "the arbitrators exceeded any authority they supposedly had by awarding state aid."  ECF No. 105, at 11.  And because the "ICSID arbitrators lack[ed] jurisdiction," Spain contends, "the awards they issue[d] are not owed full faith and credit."  *Id.*  The court disagrees.

Federal law instructs that "pecuniary" awards rendered pursuant to the ICSID Convention "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a). "[T]he full faith and credit obligation owed final judgments 'precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.'"  *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 519 (D.C. Cir. 2023) (quoting *Milliken v. Meyer*, 311 U.S. 457, 462 (1940)).  Accordingly, "a court may not deny a

---

[4] Spain does not argue that it was not properly served.  *See generally* ECF No. 18-1.

judgment full faith and credit because 'it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits.'" *Id*. (quoting *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (per curiam)).  That said, this court must "do more than rubber stamp" the ICSID award: to find that the award merits full faith and credit, the court must assure itself that (1) "that it has subject-matter and personal jurisdiction," (2) "that the award is authentic," and (3) "that its enforcement order tracks the award." *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022).

The court has already determined that it has subject-matter and personal jurisdiction, *see supra* Part III.A, and Spain cannot succeed on the merits by "recycl[ing] a losing jurisdictional argument." *Tethyan*, 590 F. Supp. 3d at 276.  Even if it could, the terms of the ICSID Convention bar a member state's courts from examining "the ICSID tribunal's jurisdiction to render the award."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017).  And, as a general principle, "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."  *Durfee v. Duke*, 375 U.S. 106, 111 (1963).  The ICSID tribunal considered Spain's jurisdictional arguments previously and rejected them.  Award ¶¶ 194, 212-15.  Because that matter was "fully and fairly litigated," *Durfee*, 375 U.S. at 111, and because this court has determined that the FSIA does not bar its jurisdiction, the court is assured that the first prong is satisfied.[5]

---

[5] Spain also briefly argues that 22 U.S.C. § 1650a(a) extends full faith and credit only to "'pecuniary obligations,'" and the ICSID "arbitrators' assertion of their own jurisdiction is a *non-pecuniary* aspect of the award that gets no special deference." ECF No. 105, at 11-12 (quoting 22 U.S.C. § 1650a(a)).  Petitioners respond that Spain forfeited this argument by failing to include it in the motion to dismiss.  ECF No. 109, at 3.  The court agrees.  *See Abdullah v. Obama*, 753

(*continued on next page*)

The parties do not dispute the authenticity of the award or express concerns that the court would not be able to issue an enforcement order that tracks the award. *See* ECF Nos. 18, 19, 25, 104, 105, 108, 109. Having satisfied itself that it has jurisdiction, that the award is authentic, and that the enforcement order can track the award, the court finds that the ICSID's arbitral award is entitled to full faith and credit.

### C.     Foreign Sovereign Compulsion Doctrine

Finally, Spain argues in its motion to dismiss, ECF No. 18-1, at 34-35, and maintains in its supplemental briefing, ECF No. 105, at 19-20, that even if this court has jurisdiction over the petition and finds that the award is entitled to full faith and credit, the court is barred from enforcing it under the foreign sovereign compulsion doctrine and "the principles of comity that underlie it," ECF No. 105, at 19-20. Several courts in this jurisdiction have assessed identical arguments in suits against Spain to enforce ICSID arbitral agreements made pursuant to the ECT—both before and after *NextEra*—and each has determined that the doctrine does not bar enforcement of the arbitration awards. *See Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-CV-2701, 2024 WL 4298808, at *13 (D.D.C. Sep. 26, 2024); *9REN Holding S.À.R.L. v. Kingdom of Spain*, No. 19-CV-1871, 2023 WL 2016933, at *11 (D.D.C. Feb. 15, 2023); *NextEra Energy Glob.*

---

F.3d 193, 199 (D.C. Cir. 2014) (holding that certain arguments were forfeited where they were not addressed until the reply brief). Even if preserved, the argument fails. When a court gives full faith and credit to a pecuniary award, it necessarily gives full faith and credit to the jurisdictional holding that underlies the award. That is why a district court may not consider the merits of the underlying jurisdictional holdings. *See supra* pp. 9-10; *Valores Mundiales*, 87 F.4th at 519.

11

*Holdings B.V. v. Kingdom of Spain*, 656 F. Supp. 3d 201, 219 (D.D.C. 2023).[6]  This court joins in that determination.

The foreign sovereign compulsion doctrine, which typically arises in the context of antitrust litigation, "shields from . . . liability the acts of parties carried out in obedience to the mandate of a foreign government." *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979); *see, e.g.*, *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 37 (2018).  Spain argues that because "the European Commission has not yet authorized payment of this award, . . . granting the petition would compel Spain to violate its EU-law obligations," thereby "subject[ing] Spain to 'litigation in national courts' as well as infringement proceedings brought by the European Commission," which could result in hundreds of millions of euros' worth of sanctions.  ECF No. 105, at 20 (quoting ECF No. 105-1 ¶ 61).

To the court's knowledge, the D.C. Circuit has never applied the foreign sovereign compulsion doctrine by that name, and Spain offers no authority to support the application of the doctrine in this context.  *See generally* ECF Nos. 105, 108.  That said, the D.C. Circuit has on many occasions contemplated principles of international comity in other contexts, noting that it "causes [it] considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987); *see Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 938 (D.C. Cir. 1984) (applying principles of comity in antitrust context).

---

[6] *9REN* and *NextEra* (along with a third case which did not address the foreign sovereign compulsion doctrine) were consolidated into a single appeal before the D.C. Circuit.  *See NextEra*, 112 F.4th at 1088.  The Court affirmed in part and reversed in part *NextEra*, reversed *9REN*, and remanded the cases for further proceedings.  The reversals did not hinge on the foreign sovereign compulsion doctrine.

Nevertheless, the court is not convinced that general principles of international comity bar the enforcement of the arbitral award in the present circumstances—to the contrary, they militate in favor of enforcement.  "[I]t is 'the central precept of comity' that 'the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations.'" *Blasket*, 2024 WL 4298808, at *13 (quoting *Laker Airways*, 731 F.2d at 937).  Here, Spain asks the court to set aside this "central" principle, *id.*, to avoid "enforce[ment of] a decision rendered by a forum for international arbitration to which [Spain] has voluntarily submitted itself," *Micula v. Gov't of Romania*, No. 20-7116, 2022 WL 2281645, at *2 (D.C. Cir. June 24, 2022).  Spain cannot now argue that it is being unfairly compelled to follow the strictures of a treaty that it signed, especially when that treaty expressly provides that final awards are binding and unappealable.  ICSID Convention Art. 53(1).  As the *Blasket* court observed, "comity concerns are essentially 'baked in' to the ICSID Convention and its implementing statute," 2024 WL 4298808, at *13, and the court cannot overlook them.

Finally, while it is true that principles of international comity counsel the court to consider whether "compliance [with its judgment] would impose hardship on [a] party," including possible legal consequences, the court is not persuaded that the "hardships accompanying compliance" here—possible financial penalties—weigh heavily against enforcement of the ICSID award because they are merely "speculative." *In re Sealed Case*, 932 F.3d 915, 932-33 (D.C. Cir. 2019); *see Blasket*, 2024 WL 4298808, at *14.  It is certainly possible that the European Commission will bring enforcement proceedings against Spain for state aid violations that may result in financial penalties, but there is no information before the court that suggests this will be the case.  Indeed, in its amicus brief, the European Commission does not even hint that Spain may be sanctioned as

13

a result of this court's order. *See generally* ECF No. 107. The court therefore declines to withhold judgment based on the foreign sovereign compulsion doctrine or more general principles of international comity.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 18, is **DENIED**. The parties are directed to file a joint status report proposing next steps in this litigation on or before September 9, 2025.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date: August 12, 2025