**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFRASTRUCTURE SERVICES LUXEMBOURG S.A.R.L., *et al.*,<br><br>*Petitioners*,<br><br>v.<br><br>KINGDOM OF SPAIN,<br><br>*Respondent*. | Civil Action No. 18 - 1753 (LLA) |

**MEMORANDUM OPINION**

In September 2025, the court entered judgment in favor of Petitioners Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V., confirming an arbitral award of more than $156 million, plus post-judgment interest, against Respondent, the Kingdom of Spain. ECF No. 117. Spain appealed the judgment to the U.S. Court of Appeals for the D.C. Circuit in October 2025. ECF No. 118. Pending before the court are the parties' post-judgment motions. ECF Nos. 121, 126. Petitioners seek an order pursuant to 28 U.S.C. § 1610(c) permitting them to attach and execute on Spain's assets and an order pursuant to 28 U.S.C. § 1963 permitting them to register the court's judgment in other judicial districts. ECF No. 121. Spain has filed a cross-motion to stay enforcement of the court's judgment without being required to post a supersedeas bond, or, in the alternative, to quash two subpoenas issued by Petitioners to the Clearing House Payments Company ("Clearing House") and the Federal Reserve Bank of New York. ECF No. 126. For the reasons explained below, the court will grant Petitioners' motion and deny Spain's cross-motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioners are Luxembourg- and Netherlands-based companies that invested in solar power projects in Spain, relying on various financial incentives Spain had enacted to promote renewable energy production. ECF No. 115, at 1-3; *see* ECF No. 1 ¶¶ 1, 7. In 2013, Petitioners requested arbitration by the International Centre for Settlement of Investment Disputes ("ICSID") against Spain, alleging that Spain had revoked the financial incentives in violation of the Energy Charter Treaty ("ECT"). ECF No. 115, at 3; *see* ECF No. 1 ¶ 12. In 2018, an ICSID tribunal issued an arbitral award in Petitioners' favor and ordered Spain to pay Petitioners 112 million euros in damages plus interest and costs. ECF No. 115, at 3. Spain sought a correction of the award, and the ICSID tribunal later amended the award to 101 million euros. *Id.* Spain also applied for annulment of the award, *see* ECF No. 35-1, which the ICSID denied, *see* ECF Nos. 46, 46-1.

In July 2018, while the ICSID proceedings were ongoing, Petitioners filed a petition in this court seeking confirmation of the ICSID award. ECF No. 1. Spain moved to dismiss the petition for lack of jurisdiction and for failure to state a claim and additionally moved for a stay pending the outcome of the ICSID annulment proceedings. ECF No. 18. The court (Sullivan, J.) stayed the case, ECF No. 36, and the case remained stayed until January 2022, *see* Jan. 28, 2022 Minute Order. The case was subsequently referred to Magistrate Judge Upadhyaya, who stayed the case again pending the D.C. Circuit's decision in three related cases that would become *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024), *cert. denied sub nom.*, *Spain v. Blasket Investments LLC*, No. 24-1130, 2026 WL 1855038 (U.S. June 29, 2026). *See* Sep. 13, 2023 Minute Order.

The case was directly reassigned to the undersigned in December 2023. *See* Dec. 22, 2023 Minute Order. The D.C. Circuit issued its decision in *NextEra* in August 2024. 112 F.4th 1088. In January 2025, the court vacated its referral to Magistrate Judge Upadhyaya and lifted the stay, Jan. 27, 2025 Minute Order, and it denied Spain's motion to continue to stay this case while Spain sought certiorari, ECF No. 103. The parties then submitted supplemental briefing regarding *NextEra*. *See* ECF Nos. 104, 105, 108 to 114. In August 2025, the court denied Spain's motion to dismiss. ECF No. 115. The parties then filed a joint status report requesting that the court enter final judgment granting the petition to enforce the ICSID award, although the parties took different positions on the appropriate post-judgment interest rate. ECF No. 116.

On September 30, 2025, the court ordered that the ICSID award be enforced "in the same manner as if it were a final judgment of a court of general jurisdiction in one of the several states" and entered judgment in favor of Petitioners in the amount of $156,630,250.85, plus post-judgment interest at the rate specified in 28 U.S.C. § 1961. ECF No. 117, at 1. Spain then timely appealed the court's judgment. ECF No. 118; *see Infrastructure Servs. Luxembourg S.A.R.L. v. Kingdom of Spain*, No. 25-7174 (D.C. Cir. Oct. 31, 2025).

On December 18, 2025, Petitioners issued subpoenas to Clearing House, *see* ECF No. 126-3, and the Federal Reserve Bank of New York, *see* ECF No. 126-4, seeking information about Spain's assets. Petitioners also served Spain with a set of discovery requests. *See* ECF No. 126-5. That same day, Petitioners filed a motion seeking orders under 28 U.S.C. §§ 1610(c) and 1963 authorizing them (1) to attach and execute on Spain's assets to satisfy the court's September 30, 2025 judgment and (2) to register the judgment in other judicial districts. ECF No. 121. On January 2, 2026, Spain filed a cross-motion to "stay all efforts by Petitioners towards enforcement of this Court's September 30, 2025 Order," including a stay of Petitioners' discovery

requests and subpoenas. ECF No. 126, at 1. In the alternative, Spain moved under Federal Rule of Civil Procedure 45 to quash the subpoenas Petitioners issued to Clearing House and the Federal Reserve Bank of New York. *Id.* The cross-motions are fully briefed. ECF Nos. 121, 126, 133, 136 to 139, 141 to 144.

The D.C. Circuit subsequently consolidated the appeal in this case with four others, held the appeals in abeyance pending further order of the court, and ordered the parties to file motions to govern further proceedings within fourteen days of the Supreme Court's disposition of Spain's petition for certiorari in *Spain v. Blasket Renewable Investments LLC*, No. 24-1130. Order, *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 25-7136 (D.C. Cir. Apr. 8, 2026) (per curiam); Order, *Cube*, No. 25-7136 (D.C. Cir. Feb. 4, 2026) (per curiam); Order, *Cube*, No. 25-7136 (D.C. Cir. July 10, 2026) (per curiam). On June 29, 2026, the Supreme Court denied Spain's petition. 2026 WL 1855038. In July, the D.C. Circuit returned the consolidated appeals to its active docket. Order, *Cube*, No. 25-7136 (D.C. Cir. July 10, 2026) (per curiam). On August 3, 2026, the parties filed a joint motion to govern further proceedings in the consolidated cases. Mot., *Cube*, No. 25-7136 (D.C. Cir. Aug. 3, 2026).

## II. DISCUSSION

The court begins by addressing Spain's motion for "a stay of all enforcement activities and discovery in this action," ECF No. 126-1, at 5, or, in the alternative, to quash the subpoenas issued to Clearing House and the Federal Reserve Bank of New York, *id.* at 19-25. The court then turns to Petitioners' motion for orders pursuant to 28 U.S.C. §§ 1610(c) and 1963. ECF No. 121. The court will deny Spain's motion and grant Petitioners' motion.

### A. Spain's Motion

#### 1. Motion to stay enforcement of the judgment

Under Federal Rule of Civil Procedure 62(b), an appellant may obtain a stay of proceedings to enforce a judgment "by providing a bond or other security." Fed. R. Civ. P. 62(b). "The purpose of the supersedeas bond is to secure the appellee from loss resulting from the stay of execution." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980). If the bond is an "amount to satisfy the judgment in full, together with costs, interest, and damages for delay," the appellant is entitled to a stay "as a matter of right." *Id.* at 758-59. In "unusual circumstances," a district court may exercise its discretion to grant an unsecured or partially secured stay of enforcement, as long as the stay would not "unduly endanger the judgment creditor's interest in ultimate recovery." *Id.* at 760-61. Because a stay "operates for the appellant's benefit and deprives the appellee of the immediate benefits of [the] judgment, a full supersedeas bond should be the requirement in normal circumstances, such as where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable." *Id.* at 760 (footnote omitted).

Spain argues that unusual circumstances warrant an unsecured stay because posting a bond would violate European Union law; as support, Spain cites a March 2025 European Commission decision ordering Spain not to pay the underlying arbitral award in this case. ECF No. 126-1, at 8-12, 18; *see* ECF No. 126-12, at 48-50. Spain argues that paying the court's judgment or posting a bond would violate European Union law and "subject Spain to fines levied by the European Commission." ECF No. 126-1, at 12; *see* ECF No. 126-9, at 16-17 (European Commission's amicus brief supporting Spain's certiorari petition). The court is not persuaded that

Spain's conflicting legal mandates render the posting of adequate security impracticable and justify an unbonded stay.

Spain merely recycles arguments the court already rejected in denying Spain's motion to dismiss. While Spain asserts that the court did not previously consider the European Commission's decision, ECF No. 126-1, at 11, the court expressly acknowledged that "'granting the petition would compel Spain to violate its EU-law obligations,' . . . which could result in hundreds of millions of euros' worth of sanctions against Spain," ECF No. 115, at 12 (quoting ECF No. 105, at 20). The court noted that it is "certainly possible that the European Commission will bring enforcement proceedings against Spain for state aid violations that may result in financial penalties, but there is no information before the court that suggests this will be the case." ECF No. 115, at 13-14. The same remains true now. Even assuming that paying the court's judgment would violate European Union law, Spain has not shown that *posting a bond* to secure a stay of enforcement would subject it to enforcement proceedings, let alone that any such enforcement proceedings are likely to occur. Spain also has not indicated that it is seeking approval from the European Commission to pay the judgment or post a bond. Spain counters that it notified the European Commission of the arbitral award "in an effort to obtain payment approval," but that notification occurred in April 2019—more than six years before this court entered judgment. ECF No. 126-1, at 12.

Indeed, another judge in this district recently rejected this same argument by Spain in a virtually identical motion for an unbonded stay of a judgment enforcing an ICSID award. *Blasket Renewable Invs., LLC v. Spain* ("*Blasket I*"), No. 20-CV-1081, 2026 WL 1236125, at *6 (D.D.C. Apr. 10, 2026). As that court observed, "[i]f anything, this legal hurdle posed by Spain to its *voluntary* payment offers good reason that [Petitioners] may wish to establish a priority

interest in Spain's assets held in the United States." *Id.* Accordingly, the court agrees with Petitioners that Spain's reliance on European Union law—here and in related matters—evinces "some reasonable likelihood of [Spain's] inability or unwillingness to satisfy the judgment." *Fed. Prescription Serv.*, 636 F.2d at 760; *see* ECF No. 133, at 11-12. This case thus presents the "normal circumstances" in which a full bond should be required to obtain a stay of execution. *Fed. Prescription Serv.*, 636 F.2d at 760.

Spain also argues that an unsecured stay is "unlikely to unduly endanger" Petitioners' interest in recovery because "the damage award amount is small, especially in comparison to [Spain's] net worth" and because Spain is "a foreign sovereign state" that has appeared in proceedings in this court and other districts in the United States. ECF No. 126-1, at 18-19. But, as the *Blasket I* court noted, Spain's "focus on [its] solvency and capacity to pay the September 2025 Judgment misses the crux of [Petitioners'] concern," since Petitioners are not concerned with Spain's insolvency, but rather their own ability to "establish priority interests over Spain's attachable U.S.-based assets." 2026 WL 1236125, at *6. Indeed, a stay of enforcement here is even more likely to endanger Petitioners' interest in recovery in light of two other courts' recent decisions permitting creditors to attach and execute on Spain's assets. *Id.* at *6-9; *Blasket Renewable Invs., LLC v. Kingdom of Spain* ("*Blasket II*"), No. 20-CV-817, 2026 WL 1298155, at *4 (D.D.C. May 12, 2026) ("Staying enforcement of the Court's judgment would therefore imperil [the petitioner's] place in line and its ultimate recovery."); *see* ECF No. 143, at 3 ("Petitioners' request to continue identifying and attaching Spain's assets in execution of its judgment is more urgent than ever now that a second decision has issued granting another creditor permission to do the same."). Spain has thus failed to meet its burden of showing any "unusual

circumstances" that would justify departure from the default rule requiring the posting of a bond to obtain a stay of enforcement. *Fed. Prescription Serv.*, 636 F.2d at 760.

Spain also seeks a stay of enforcement based on the traditional factors for granting injunctive relief. ECF No. 126-1, at 13-17; *see Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (considering likelihood of success on the merits, irreparable harm, harm to the other party, and the public interest). While the parties do not dispute whether an appellant may obtain an unbonded stay based on the traditional stay factors, *see* ECF No. 126-1, at 13-17; ECF No. 133, at 14-17, there is some uncertainty in this Circuit about whether the four-factor test is an alternative means for obtaining an unsecured stay, *see Blasket I*, 2026 WL 1236125, at *3 n.4 (collecting cases). *Federal Prescription Service* "sets outs the governing standard in this Circuit for an unbonded stay" and does not mention the four-factor test for injunctive relief. *Doraleh Container Terminal SA v. Republic of Djibouti*, No. 20-CV-2571, 2023 WL 12004450, at *2 n.2 (D.D.C. Apr. 24, 2023). Regardless, the court need not resolve this issue because the traditional stay factors cut against Spain. *See, e.g.*, *Stati v. Republic of Kazakhstan*, No. 14-CV-1638, 2018 WL 11409986, at *2 n.3 (D.D.C. Nov. 13, 2018) (finding that the stay applicant failed to meet its burden for a stay of enforcement of the judgment under either standard).

First, Spain is unlikely to prevail on the merits of its appeal, given the unanimity of decisions in this Circuit resolving the issue whether district courts have jurisdiction to confirm foreign arbitral awards under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*. *See* ECF No. 103, at 3 (denying Spain's motion for a stay pending the resolution of three related appeals before the D.C. Circuit); *NextEra Energy Glob. Holdings B.V.*, 112 F.4th at 1105, 1111; *MOL Hungarian Oil & Gas PLC v. Republic of Croatia*, No. 23-CV-218, 2026 WL 621917, at *3-4 (D.D.C. Mar. 5, 2026) (collecting cases in this district concluding that district courts have

jurisdiction to confirm ICSID awards). Likewise, Spain's pending appeal in the D.C. Circuit does not establish that Spain is likely to succeed on the merits of its appeal.[1] *See* ECF No. 137, at 1-2.

Spain also has not shown that it would suffer irreparable harm if its request for an unsecured stay is denied. Spain cites *Philipp v. Federal Republic of Germany*, 436 F. Supp. 3d 61 (D.D.C. 2020), for the proposition that "a foreign sovereign suffers irreparable harm when it is forced 'to incur the time and expenses of litigation' that result from discovery pending *certiorari*." ECF No. 126-1, at 15 (quoting *Philipp*, 436 F. Supp. 3d at 68). But *Philipp*, which concerned a stay of a civil action before final judgment pending a certiorari petition in the same matter, is distinguishable, and the Supreme Court has made clear that foreign sovereigns have no immunity from post-judgment discovery. *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142 (2014) ("There is no [FSIA] provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets."). Likewise, for the reasons stated above, Spain fails to demonstrate that it will be "forced to breach its [European Union] Law obligations by participating in the enforcement of the [judgment] before its enforceability has been finally settled." ECF No. 126-1, at 15; *see supra* pp. 5-6. And because Spain falls short of establishing that Petitioners' interest in recovery would be adequately protected in the event of an unbonded stay, the third stay factor—harm to the opposing party—also cuts against a stay.

### 2. Motion to quash subpoenas

In the alternative, Spain requests that the court quash the subpoenas issued by Petitioners to Clearing House and the Federal Reserve Bank of New York because the subpoenas are

[1] Spain also relies on its certiorari petition in a related case to support a stay of enforcement, *see* ECF No. 126-1, at 14; ECF No. 136, at 8-9, but the Supreme Court has since denied that petition, rendering Spain's argument moot, *see Spain*, 2026 WL 1855038; *see also* ECF No. 144.

overbroad and fail to provide a reasonable time for compliance. ECF No. 126-1, at 19-25; ECF No. 136, at 18-23; *see also* ECF No. 142, at 1 (noting that the *Blasket I* court did not rule on Spain's motion to quash and that "Spain continues to believe that discovery should be stayed in this proceeding"). Rule 69 provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person." Fed. R. Civ. P. 69(a)(2). The rules governing post-judgment discovery "are quite permissive." *NML Cap.*, 573 U.S. at 138. "The general rule in the federal system is that, subject to the district court's discretion, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Id.* at 139 (alteration in original) (quoting Fed. R. Civ. P. 26(b)(1)). As a threshold matter, Petitioners argue that the court lacks authority to quash the subpoenas because only a court in the district where compliance is required—here, the Southern District of New York—may quash or modify a subpoena under Rule 45(d). ECF No. 133, at 21-23. The court agrees.

Under Rule 45, the recipient of a subpoena may move "the court for the district where compliance is required" to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A)-(B). As Petitioners correctly note, prior to 2013, the district court that issued the subpoena had jurisdiction to modify or quash the subpoena. *See* ECF No. 133, at 21. But the 2013 amendments to Rule 45 "replaced 'issuing court' with 'court for the district where compliance is required' as the court responsible for quashing, modifying, or enforcing the subpoena." 9A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2463.1 (3d ed. 2026); *see Guice v. Fed. Trade Comm'n*, No. 20-MC-87, 2021 WL 1340922, at *1 (D.D.C. Apr. 9, 2021).

While Rule 45 does not define "district where compliance is required," judges in this district have "followed the rule that a subpoena '"requires compliance" in the location where it commands that the subpoenaed party produce documents.'" *Petruss Media Grp., LLC v.*

*Advantage Sales & Mktg. LLC*, No. 22-CV-3278, 2026 WL 846693, at *1 (D.D.C. Mar. 27, 2026) (internal quotation marks omitted); *see In re Boeing Co. Aircraft Sec. Litig.*, 344 F.R.D. 281, 282-83 (D.D.C. 2023) ("[A] subpoena's 'place of compliance' is the place set for compliance on the subpoena."). Here, the subpoenas issued to Clearing House and the Federal Reserve Bank of New York require compliance in New York. *See* ECF No. 126-3, at 1 (requiring production to 200 Park Avenue, New York, NY); ECF No. 126-4, at 1 (same). Accordingly, a motion to quash these subpoenas must be filed in the Southern District of New York, where compliance with the subpoena is required. *See Guice*, 2021 WL 1340922, at *1 (denying a motion to quash a subpoena and a related request for a protective order where the recipient was ordered to produce records in California). Indeed, Spain recently filed a motion in the Southern District of New York to quash similar subpoenas to Clearing House and the Federal Reserve Bank of New York arising out of a judgment issued in this court. *See* Mot. to Quash Non-Party Subpoenas, *Kingdom of Spain v. Blasket Renewable Invs. LLC*, No. 25-MC-8 (S.D.N.Y. Jan. 2, 2025), ECF No. 1.[2]

Spain does not meaningfully dispute this, instead arguing that, notwithstanding Rule 45(d), the court retains broad authority to oversee post-judgment discovery and requests that the court issue a protective order pursuant to Rule 26(c). ECF No. 136, at 16-17. Spain asserts that courts in other circuits "have construed motions to quash under Rule 45 . . . generally as motions for a protective order under Rule 26(c) where the party discusses, or at least bases its motion in part on, Rule 26," ECF No. 136, at 17 (quoting *Rullan v. Goden*, No. 17-CV-3741, 2024 WL 1191600, at *6 (D. Md. Mar. 20, 2024)), and argues that it invoked Rule 26 in its motion to quash, *see* ECF

[2] That motion was denied as moot because the subpoenas at issue were "withdrawn in light of Spain's satisfaction of the judgment." June 6, 2026 Minute Order, *Kingdom of Spain*, No. 25-MC-8.

No. 126-1, at 19, 25. But Spain did not request a protective order expressly or in the alternative, and the court declines to construe Spain's motion to quash—which was filed in the wrong district—as a motion seeking effectively the same relief under Rule 26(c).[3]

**B. Petitioners' Motions**

**1. Motion for order pursuant to 28 U.S.C. § 1610(c)**

A party seeking to execute or attach "any property in the United States" of a foreign state must first obtain an order pursuant to 28 U.S.C. § 1610(c). *See Eurofinsa, S.A. v. Gabonese Republic*, No. 23-CV-3013, 2025 WL 1650493, at *1 (D.D.C. June 11, 2025). A court may issue such an order only after determining that "a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c); *see Kapar v. Islamic Republic of Iran*, 105 F. Supp. 3d 99, 108 (D.D.C. 2015).[4] In seeking attachment, the plaintiff need not describe any particular property it wishes to attach, because a Section 1610(c) order "does not authorize the attachment or execution of particular property—or any property at all." *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 798 F. Supp. 2d 260, 270 (D.D.C. 2011) (emphasis omitted). Rather, "[t]he purpose of [Section] 1610(c) is 'to ensure that a foreign power is always given an opportunity to evaluate and respond to any court judgment against it which could subject its property and interests

[3] Indeed, Spain admits that it did not seek a protective order here, stating that it is "willing to file a separate motion for a protective order to address Spain's interest in protecting its sovereignty and its non-commercial information that Petitioners are seeking to obtain from third parties." ECF No. 136, at 17 n.8.

[4] The court must also find that a reasonable period of time has elapsed since "the giving of any notice required under section 1608(e)." 28 U.S.C. § 1610(c). Section 1608(e) concerns service of default judgments against foreign states, *see id.* § 1608(e), and is irrelevant here because the court did not enter a default judgment against Spain.

in the United States to attachment or execution." *Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 101 (D.D.C. 2011) (quoting *Chabad*, 798 F. Supp. 2d at 271).

While Section 1610(c) does not specify what constitutes a "reasonable time," "the sweep of the case law supports [the] contention that even a few months is sufficient to satisfy [Section] 1610(c)'s 'reasonable period of time' requirement, especially when the defendant has offered no evidence that it is making efforts to satisfy the judgment." *TECO Guat. Holdings, LLC v. Republic of Guatemala*, No. 17-CV-102, 2020 WL 2934951, at *2 (D.D.C. June 2, 2020) (collecting cases and noting that the respondent's counsel was unable to find any cases "in which a period of two months was found to be insufficient"); *see, e.g.*, *Eurofinsa, S.A.*, 2025 WL 1650493, at *3 (concluding that "three months fits well within what courts have determined constitutes a reasonable time under [Section] 1610(c)"); *Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 8 (D.D.C. 2015) (finding three months reasonable "[i]n the absence of any evidence that defendants are making efforts to pay the[] judgments voluntarily").

Here, more than ten months have elapsed since the court entered judgment on September 30, 2025. ECF No. 117. That period well exceeds the requirement for a "reasonable period of time" under Section 1610(c). *See TECO Guat. Holdings, LLC*, 2020 WL 2934951, at *2; *Eurofinsa, S.A.*, 2025 WL 1650493, at *3; *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51, 55 (D.D.C. 2019) (noting that "five months is typically longer than periods of time found reasonable by other courts in this district"). Spain argues that an order pursuant to Section 1610(c) is "premature" because (1) Spain's certiorari petition in a related proceeding and its appeal of this court's judgment both remain pending and "raise dispositive sovereign-immunity questions that strongly counsel against permitting enforcement," and (2) European Union law prohibits Spain from paying the arbitral award. ECF No. 126-1, at 5-7. For the same reasons these

arguments do not justify an unbonded stay of enforcement, *see supra* Section II.A.1, they do not support a finding that a reasonable time has not elapsed following the entry of judgment. The Supreme Court has denied Spain's certiorari petition, *see* 2026 WL 1855038, and Spain's pending appeal before the D.C. Circuit does not prohibit Spain from following the typical procedure set forth in Rule 62(b) to obtain a stay of enforcement by posting a bond, *see Blasket I*, 2026 WL 1236125, at *8 ("Spain's view of its legal inability voluntarily to pay the September 2025 Judgment counsels in favor of, not against, a finding that a reasonable period of time has passed."). Accordingly, the court concludes that a reasonable period of time has passed within the meaning of 28 U.S.C. § 1610(c) and will grant Petitioners' motion for an order to authorize attachment and execution.

**2. Motion for order pursuant to 28 U.S.C. § 1963**

Petitioners seek permission to register the court's judgment in "other judicial districts of the United States where Spain may have assets, including the Southern District of New York." ECF No. 121, at 8. "A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown." 28 U.S.C. § 1963. Thus, when an appeal is still pending, leave to register the judgment outside of the issuing district requires "good cause shown." *Id.* "'Good cause' can be established by 'an absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum.'" *Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82, 84 (D.D.C. 2013) (quoting *Cheminova A/S v. Griffin LLC*, 182 F.Supp.2d 68, 80 (D.D.C. 2002)).

Petitioners have established good cause to allow registration of the judgment outside this district. Petitioners have submitted a declaration from their attorney asserting that "Petitioners are unaware of executable assets of Spain in this District sufficient to satisfy [the] judgment" and that "[o]n information and belief, Spain has substantial attachable assets in the State of New York." ECF No. 121-1 ¶¶ 6-7. Petitioners also assert that while they "believe a substantial portion of Spain's assets are presently located in New York, these assets, in addition to others that may be revealed in post-judgment discovery, are 'potentially mobile.'" ECF No. 121, at 10 (quoting *Chevron Corp.*, 987 F. Supp. 2d at 85). Spain offers no meaningful response concerning the absence of assets in this district, so the court will treat that point as conceded. *See* ECF No. 126-1, at 26 (arguing that "Petitioners have [not] established the absence of assets in this district"); *see, e.g.*, *Mwila v. Islamic Republic of Iran*, No. 08-CV-1377, 2019 WL 13134796, at *1 (D.D.C. May 15, 2019). As for the presence of substantial assets in other districts, including the Southern District of New York, Spain argues that Petitioners "base their request on nothing more than speculation and conjecture." ECF No. 126-1, at 27. But "courts have found sufficient declarations containing no more than counsel's assertion, on information and belief, that attachable assets exist in other districts," *Mwila*, 2019 WL 13134796, at *2, and Petitioners' declaration makes the same claim here, ECF No. 121-1 ¶ 7. Additionally, the *Blasket I* court recognized that a virtually identical declaration justified national registration of a judgment against Spain. 2026 WL 1236125, at *8; *see* Decl. of Carson W. Bennett, *Blasket I*, No. 20-CV-1081 (D.D.C. Dec. 8, 2025), ECF No. 117-1; *see also Blasket II*, 2026 WL 1298155, at *6 (granting motion to register judgment where the petitioner "ha[d] reason to believe that Spain's sovereign wealth fund has substantial moveable assets in the Southern District of New York"). The court therefore finds that

good cause exists under 28 U.S.C. § 1963 to permit Petitioners to register the judgment in any other judicial district of the United States.

## III. CONCLUSION

For the foregoing reasons, the court will grant Petitioners' Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, ECF No. 121, and deny Spain's Cross-Motion to Stay Enforcement of the Judgment and Quash Subpoenas, ECF No. 126. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: August 10, 2026